**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>SYLVIA G. ASH,<br>                         Defendant. | Case No. 1:19-cr-00780-LAK |

# MEMORANDUM OF LAW IN SUPPORT
# OF DEFENDANT SYLVIA G. ASH'S
# MOTIONS TO SUPPRESS

MORRISON & FOERSTER LLP

Carrie H. Cohen
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email: CCohen@mofo.com

*Counsel for Defendant*
*Sylvia G. Ash*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGOUND..................................................................................................... 2

    A.    The iPhone ............................................................................................... 3

    B.    The Email Search Warrants ...................................................................... 6

    C.    The April 6, 2018 and June 8, 2018 Interviews........................................ 7

    D.    The July 9, 2018 Proffer and August 16, 2018 Grand Jury Testimony ................ 7

ARGUMENT ........................................................................................................................ 8

I.     THE iPHONE SHOULD BE SUPPRESSED................................................................. 8

    A.    Relevant Legal Standard .......................................................................... 8

    B.    MCU's Actions Are Fairly Attributable to the Government ................................ 9

    C.    In the Alternative, Discovery and a Hearing Should be Granted ....................... 13

II.    EVIDENCE DERIVED FROM THE SEARCH WARRANTS FOR STORED
    ELECTRONIC COMMUNICATIONS MAINTAINED BY OATH AND
    GOOGLE SHOULD BE SUPPRESSED AS FRUITS OF THE POISONOUS
    TREE........................................................................................................ 14

    A.    Relevant Legal Standard ........................................................................ 14

    B.    The Results of the Email Search Warrants Are Fruits of the Poisonous
    Tree ....................................................................................................... 14

III.   STATEMENTS MADE IN THE APRIL 6, 2018 AND JUNE 8, 2018
    IMPERMISSABLE INTERVIEWS SHOULD BE SUPPRESSED ............................. 16

    A.    Relevant Legal Standard ........................................................................ 16

    B.    The Government Instructed Ms. Ash to Retain Counsel But Impermissably
    Continued to Question Her Outside the Presence of Counsel ........................... 17

    C.    The Government's Actions Violated Ms. Ash's Due Process Rights and
    the Statements Made During the April 8 and June 2, 2018 Interviews
    Should Be Suppressed............................................................................. 19

IV.   MS. ASH'S ALLEGED STATEMENTS ON JULY 9, 2018 AND IN THE
    GRAND JURY ON AUGUST 16, 2018 SHOULD  BE SUPPRESSED
    BECAUSE THE GOVERNMENT VIOLATED MS. ASH'S DUE PROCESS
    RIGHTS .................................................................................................. 20

    A.    Relevant Legal Standard ........................................................................ 20

    B.    The Government Knew an Unwaivable Conflict Existed by the Time of
    the July 9, 2018 Proffer and August 16, 2018 Grand Jury Testimony ............... 21

CONCLUSION.................................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Desiderio v. Nat'l Ass'n of Sec .Dealers, Inc.*
  191 F.3d 198 (2d Cir. 1999)............................................................................................9

*Garrity v. State of N.J.*
  385 U.S. 493, 87 S. Ct. 616 (1967).................................................................................9

*United States v. Chin*,
  934 F. 2d 393 (2d Cir. 1991).........................................................................................16

*United States v. Connolly*,
  No. 16 Cr. 0370 (CM), 2019 U.S. Dist. LEXIS 76233, at *3 (S.D.N.Y May 2,
  2019) ..............................................................................................................................12

*United States v. DiGregorio*,
  795 F. Supp. 630 (S.D.N.Y 1992) .................................................................................16

*United States v. Eggers*,
  21 F. Supp. 2d 261 (S.D.N.Y 1998).........................................................................14, 15

*United States v. Fox*,
  721 F.2d 32 (2d Cir. 1983)...............................................................................................9

*United States v. Fulton*,
  5 F.3d 605 (2d Cir. 1993).........................................................................................20, 21

*United States v. Morrison*,
  449 U.S. 361, 101 S. Ct. 665 (1981).........................................................................16, 20

*United States v. Russell*,
  411 U.S. 423, 93 S. Ct. 1637 (1973).........................................................................16, 20

*United States v. Scrushy*,
  366 F. Supp. 2d 1134 (N.D. Ala. 2005).........................................................................12

*United States v. Stein*,
  435 F. Supp. 2d. 330 (S.D.N.Y 2006)............................................................................20

*United States v. Stein*,
  541 F.3d 130 (2d Cir. 2008).......................................................................................9, 11

*United States v. Stringer*,
  535 F.3d 929 (9th Cir. 2008) .........................................................................................13

ii

**Other Authorities**

Unitd States Constituion, Fifth Amendment ........................................................................ *passim*

U.S. Department of Justice Manual § 9-11.151 ............................................................... 19

## PRELIMINARY STATEMENT

Defendant Sylvia G. Ash respectfully submits this Memorandum of Law in support of her pretrial motions to suppress certain evidence.  For the reasons discussed more fully below, the Court should suppress the following:

> (1) All evidence based on or derived from the silver Apple iPhone X (the "iPhone") that Ms. Ash provided to the Municipal Credit Union ("MCU");
>
> (2) All evidence obtained via search warrants for stored electronic communications maintained by Oath, Inc. ("Oath") and Google LLC ("Google") for Ms. Ash's personal email accounts, namely, s███████@aol.com and h██████████@gmail.com, respectively (collectively, the "Email Search Warrants");
>
> (3) All evidence derived from the April 6, 2018 and June 8, 2018 interviews of Ms. Ash by the government; and
>
> (4) All evidence from the July 9, 2018 proffer of Ms. Ash and her August 16, 2018 grand jury testimony.[1]

Items 1 and 2 above should be suppressed because the sufficiently close nexus between the MCU and the government renders the production of the iPhone a violation of Ms. Ash's Fifth Amendment Rights and evidence obtained via the Email Search Warrants are fruits of this poisonous tree.  Ms. Ash also moves, in the alternative, for discovery and an evidentiary hearing related to the government's involvement in the MCU's request for Ms. Ash's iPhone to more fully develop the factual basis to suppress all evidence obtained from the iPhone and, in turn, the Email Search Warrants.

With respect to items 3 and 4 above, Ms. Ash's statements to the United States Attorney's Office for the Southern District of New York ("USAO"), they too should be suppressed due to government misconduct in connection with those interviews and the grand

---

[1] The above motions to suppress are based on discovery provided to date.  Undersigned counsel was recently retained and has requested but not yet received additional discovery from the government, which may result in supplemental or additional motion practice.

jury testimony that was taken in violation of Ms. Ash's Due Process rights under the Fifth

Amendment.

## FACTUAL BACKGOUND

The charges of obstruction of justice against Ms. Ash derive from an investigation by the

USAO and in the Manhattan District Attorney's Office (collectively, the "government") into

instances of fraud and embezzlement at the MCU by former MCU Chief Executive Officer and

President Kam Wong.  (Indictment ¶ 3.)  Mr. Wong pled guilty to embezzlement from the MCU

on December 2, 2018.  (Declaration of Carrie H. Cohen, dated March 20, 2020, ("Cohen Decl.")

Ex. P, Compl. ¶ 11g.)[2]  Joseph Guagliardo, a member of the Supervisory Committee of the

MCU, also recently pled guilty to embezzlement from the MCU on January 10, 2020.  (*See*

1/10/2020 Minute Entry Case No. 1:20-cr-00023 (DLC).)

Ms. Ash served as Chair of MCU's Board of Directors (the "MCU Board") from May

2015 until August 2016, when she resigned from the Board.  (Ex. P, Compl. ¶ 11f.)  The

government does not allege that Ms. Ash participated in the fraud and embezzlement committed

by Mr. Wong or Mr. Guagliardo and no evidence suggests that she could have been so charged.

Rather, the government charged Ms. Ash with three counts of obstructing its investigation into

Mr. Wong's fraud.

Specifically, Ms. Ash is charged in the Indictment as follows:  (1) in Count One, with

conspiring to obstruct justice by knowingly signing a false document related to Mr. Wong's

compensation and impeding a federal investigation via the concealment and deletion of emails

and text messages, "wiping" of the iPhone, and making false and misleading statements to

---

[2] Hereinafter all citations to exhibits ("Ex.") are citations to exhibits of the Cohen Declaration.

federal law enforcement officers; (2) in Count Two, with knowingly signing a false document related to Mr. Wong's compensation with the intent to obstruct a federal investigation; and (3) in Count Three, with knowingly concealing and deleting text messages and emails, "wiping" the iPhone, and making false and misleading statements to federal law enforcement officers with the intent to obstruct a federal investigation.  Ms. Ash has entered a plea of not guilty to all three Counts and maintains her innocence.

### A.    The iPhone

As alleged by the government, in January 2018, Mr. Wong gave Ms. Ash the iPhone (Ex. P, Compl. ¶ 33e), which she registered to her personal account with Apple. (Ex. P, Compl. ¶ 25.) After Ms. Ash had been interviewed several times by the government, on June 18, 2018, Ms. Ash was served with a grand jury subpoena that called for, among other things, the production of all correspondence with Mr. Wong, all documents regarding any criminal investigation, internal investigation or audit related to Mr. Wong, and all documents regarding any items of value Ms. Ash received from Mr. Wong, the MCU, or "Member-1" (the "June (Second) Subpoena").  (Ex. P, Compl. ¶ 35.)  One day later, on June 19, 2018, the MCU sent Ms. Ash a letter requesting the return of any electronic devices "issued" to her by the MCU or Mr. Wong and instructing her not to "wipe, delete, reset, factory restore" the devices (the "June 19 MCU Letter").  (Ex. P, Compl. ¶ 36; Ex. O, SDNY_00000042.)  Upon information and belief, at the time MCU sent the June 19 MCU Letter to Ms. Ash, it was cooperating with the government. [3]

---

[3] More than one month prior, in May 2018, the New York State Department of Financial Services ("DFS") removed MCU's supervisory committee due to severe deficiencies in its oversight of the management of the affairs of the credit union.  The MCU Board of Directors was removed in June 2018.  DFS then designated an on-premises Administrator to oversee the general management of the credit union.  (Ex. S)  To the extent the government disputes that the MCU was cooperating with the government in its investigation as of June 19, 2018 or earlier, and to the extent this fact is germane to the disposition of these motions, Ms. Ash respectfully requests that the Court order the USAO to produce discovery regarding the chronology of the MCU's cooperation with the government.

3

The June 19 MCU Letter did not inform Ms. Ash that the MCU sought the devices in connection with an investigation by the government or in response to any subpoena served on the MCU.  The letter did not include any warning regarding the possible use of the iPhone or its contents in criminal proceedings.  The letter also did not include any warning or notice regarding Ms. Ash's Fifth Amendment rights.[4]

As alleged by the government in the Complaint, approximately two days following receipt of the June 19 MCU Letter, Ms. Ash made an appointment at the Apple Genius Bar to transfer the contents of the iPhone to another iPhone.  (Ex. P, Compl. ¶ 37.)  Specifically, Apple customer service notes state that "customer came in with two iPhones [and] would like to set one up with iCloud restore and the second to clear completely."  (*Id.*)[5]

On July 13, 2018, the MCU sent Ms. Ash another letter demanding the return of electronic devices in her possession that had be "issued" to her by the MCU and/or Mr. Wong and again instructing her not to "wipe, delete, reset, factory restore" the devices  (the "July 13 MCU Letter").  (*Id.* ¶ 45.)  On or about July 17, 2018, Ms. Ash through her prior counsel, who later withdrew as a result of the conflict of interest discussed below, provided the iPhone and an Apple watch to the MCU via courier service.  (*Id.*)[6]  The iPhone was delivered to Stroz

---

The government to date has confirmed only that the MCU did not enter into any type of non-prosecution or other agreement with the government (Ex. T.)

[4] The MCU's request for the return of the devices is further suspect as an administrative assistant had sent a prior request to Ms. Ash to return the devices on May 14, 2018 without any instruction regarding deletion and then retracted that request a day later.  (Ex. U.)

[5] Despite the government's claims to the contrary, the alleged facts, as described by the government in the Complaint, do not show that Ms. Ash's actions in "wiping" the iPhone resulted in any destruction of data.  In fact, the notes from Apple customer service indicate that Ms. Ash wanted to *transfer*, not destroy, the data housed on the iPhone, and discovery demonstrates that the data was transferred to a new iPhone.  (Ex. P, Compl. ¶ 37.)  That iPhone (the "iPhone6S") was seized from Ms. Ash at the time of her arrest and then searched pursuant to a Search Warrant.  (Cohen Decl. ¶ 9.)

[6] The government to date has only alleged obstruction as it relates to the iPhone and not to the Apple watch but the rationale for suppression of the iPhone applies with equal force to the Apple watch.

4

Friedberg (presumably the forensic firm hired by the MCU or its outside counsel) the same day. (Ex. Q, SDNY_00032680-32681.)

On October 30, 2018, Stella Mendes, the administrator appointed by DFS to oversee operations at MCU following the removal of the Board and Supervisory Committee of the MCU, executed a "Consent to Search" for the government.  (Ex. G.)  Included on the list of devices Ms. Mendes purportedly consented to be searched by the government is an iPhone identified as "An iPhone X (Sylvia Ash)."  (*Id*.)  Special Agent Jackson took possession of the iPhone on November 9, 2018, and the government processed it into evidence.  (Ex. P, Compl. ¶ 46.)  As alleged by the government, on November 14, 2018, a forensic analyst assigned to the High Technology Analysis Unit of the New York County District Attorney's Office attempted to perform a forensic extraction of the iPhone, but discovered it had been factory reset and user saved contents deleted.  (Ex. P, Compl. ¶ 35.)  The iPhone apparently retained a timeline of powering events, which showed power events on June 23, 2018 and again on July 16, 2018.  (*Id.*)

The facts as they are currently understood based on the discovery provided to date support an inference that the government was directly involved in the June 19 MCU Letter and the July 13 MCU Letter.  On February 20, 2020, undersigned counsel requested that the USAO provide all correspondence between the MCU and the government that relates in any way to the MCU's request that Ms. Ash provide any electronic devices in her possession to which MCU claimed ownership, including the iPhone. (Cohen Decl. ¶ 3.)  The USAO responded that the government did not believe that Ms. Ash was entitled to any such correspondence but produced certain chain of custody records—records that should have been but were not provided in the regular course of the government's discovery disclosures, but in any event, were not responsive to the request.  (*Id.* ¶ 4.)  Thereafter, the undersigned counsel reiterated its request for such

discovery by letter to the government on March 11, 2020. (*Id.* ¶ 5.) The March 11, 2020 letter stated that it was clear from the limited disclosures received from the government to date that the MCU and the government were in contact related to the request to Ms. Ash for the return of electronic devices, including the iPhone. (*Id.*) The letter further asked the USAO to confirm either that the government declined to provide the requested information or that no such communications existed or occurred. (*Id.*) The USAO responded that it would not provide the requested communications but did not deny that such communications existed or had occurred. (*Id.* ¶ 6.)

Undersigned counsel made a similar request for communications between the government and the MCU to outside counsel for MCU who, the USAO told undersigned counsel informed it of the request, and to date has not provided any information. (*Id.* ¶ 7.)

### B.    The Email Search Warrants

On March 18, 2019, approximately four months after the government received the iPhone from the MCU and obtained a forensic analysis of it,[7] the USAO applied for and obtained search warrants for stored electronic communications maintained by Oath and Google on Ms. Ash's personal email accounts. (Ex. E, SDNY_00000474; Ex. F, SDNY_00000496; Ex. H SDNY_00000501; Ex. I, SDNY_00032690). Special Agent Jackson submitted a single affidavit in support of these applications ("SW Affidavit"). (Ex. E.) The USAO relied on evidence derived from its search of the iPhone, which had been obtained from Ms. Ash via the request from the MCU, to support its showing of probable cause for the Search Warrants. (*Id.* ¶¶ 37, 46.)

---

[7] No later than November 9, 2018, the USAO had possession of the iPhone, and only a few days later had information regarding the results of forensic analysis of the iPhone, which purportedly showed that the iPhone had been factory reset and the user saved contents deleted. (Ex. E, SW Affidavit ¶ 35.)

### C.  The April 6, 2018 and June 8, 2018 Interviews

The USAO first interviewed Ms. Ash on March 1, 2018 at the offices of the U.S. Attorney in Manhattan.  (Ex. P, Compl. ¶ 29.)  AUSA Eli Mark and Special Agent Jackson were present on behalf of the government.  Ms. Ash was not represented by counsel at this interview. At this conclusion of the interview, AUSA Mark advised Ms. Ash to retain counsel.

Despite the conclusion by the USAO that Ms. Ash was a target of the investigation and AUSA Mark's advice to Ms. Ash to retain counsel, Special Agent Jackson impermissibly interviewed Ms. Ash on two additional occasions thereafter—April 6, 2018 and June 8, 2018— both by telephone with AUSAs Mark and Daniel Richenthal present for the June 8, 2018 telephone interview.  During both interviews, Ms. Ash was not represented by counsel and the government failed to advise her that she was a target of the investigation and had a right to counsel.  Nevertheless, during both the April 6, 2018 and June 8, 2018 telephone interviews, Special Agent Jackson questioned Ms. Ash about her response to the First Subpoena. (Ex. P, Compl. ¶¶ 31-32) and her responses form part of the bases for the allegations charged in Counts One and Three of the Indictment.  (Ex. P, Compl. ¶ 33.)

### D.  The July 9, 2018 Proffer and August 16, 2018 Grand Jury Testimony

At the November 4, 2019 appearance following Ms. Ash's Indictment, the government notified the Court that it believed Ms. Ash's then counsel, Roger Archibald, had a conflict of interest because he was either a witness to or participant in at least three overt acts listed in the Indictment, specifically overt acts e, f, and g.  (ECF No. 15, 11/4/2019 Hr'g Tr. at 8:21-9:4.) The government thus requested a *Curcio* hearing.  (*Id*. at 11:11-12.)

The facts, as they are currently understood to be, show that the government waited more than a year from when it first had knowledge that Mr. Archibald had an unwaivable conflict of

7

interest because he was either a witness to or participant in suspected criminal activity to raise the conflict issue with Mr. Archibald and request a *Curcio* hearing.  Specifically, based on its access to documents from other sources, the government had knowledge prior to the July 9, 2018 proffer, at which Mr. Archibald represented Ms. Ash, that Mr. Archibald was a witness to or participant in the allegedly incomplete production Ms. Ash provided in response to the June (Second) Subpoena.

The government also had knowledge prior to Ms. Ash's August 16, 2018 grand jury testimony, for which Mr. Archibald again represented her, that Mr. Archibald had an unwaivable conflict of interest.  At the time of Ms. Ash's August 16, 2018 grand jury testimony, the government already had knowledge that it believed Ms. Ash's July 6, 2018 production was allegedly incomplete *and* knew that Mr. Archibald was a witness or participant in Ms. Ash's allegedly false statements made at the July 9, 2018 proffer, including the allegedly false statement that Ms. Ash discussed MCU CEO Kam Wong's interest in receiving monetary payments in lieu of long-term disability insurance with MCU's General Counsel and the General Counsel advised that such payments were permissible, but not advisable.  (Indictment ¶ 4f.)

## ARGUMENT

### I.      THE iPHONE SHOULD BE SUPPRESSED

Evidence of and derived from the iPhone should be suppressed because it was obtained by the government in violation of Ms. Ash's right against self-incrimination as protected by the Fifth Amendment.

#### A.      Relevant Legal Standard

The Fifth Amendment provides that "No person…shall be compelled in any criminal case to be a witnesses against himself. " U.S. Const., amend. V  It is well established that the Fifth

Amendment privilege against self-incrimination applies to the act of production. *See United States v. Fox,* 721 F.2d 32, 36 (2d Cir. 1983). To claim a violation of the privilege, an individual must prove that the statements were the product of coercion and attributable to the government. *See Garrity v. State of N.J.* 385 U.S. 493, 497, 87 S. Ct. 616, 618-19 (1967). Private conduct is attributed to the government when "there is a sufficiently close nexus between the state and the challenged action." *United States v. Stein*, 541 F.3d 130, 152 n.11 (2d Cir. 2008). A close nexus of state action exists between a private entity and the state when a governmental actor: (i) exercises coercive power; (ii) is entwined in the management or control of the private actor: (iii) provides the private actor with significant encouragement, either overt or covert; (iv) engages in a joint activity in which the private actor is a willful participant; (v) delegates a public function to the private actor; or (vi) entwines the private actor in governmental policies. *Stein* 541 F.3d at 147. Private action is attributable to the state if the state influences the specific conduct of which the individual complains. *See Desiderio v. Nat'l Ass'n of Sec .Dealers*, *Inc.* 191 F.3d 198, 206-207 (2d Cir. 1999).

### B.      MCU's Actions Are Fairly Attributable to the Government

The circumstances that give rise to the MCU's demand that Ms. Ash provide to it any electronics given to her by the MCU,[8] including by Kam Wong, are fairly attributable to the government. Although the USAO has thus far refused to provide any discovery regarding its communications with the MCU regarding the request to Ms. Ash from the MCU, the facts strongly support a reasonable inference that the MCU's actions are fairly attributed to the

---

[8]Although Ms. Ash provided the iPhone to MCU in response to this request, Ms. Ash does not concede that the iPhone was, in fact, issued to her by the MCU or that the iPhone is the MCU's property. Rather, the iPhone is the personal property of Ms. Ash, to which the MCU had no claim of ownership. Thus, the MCU did not have the authority to consent to a search of the iPhone.

government, thereby violating Ms. Ash's Fifth Amendment rights and requiring suppression of the iPhone.

First, the MCU specifically requested that any "returned" products not be wiped and/or factory reset.  The iPhone was given to Ms. Ash by Mr. Wong in January 2018 when Ms. Ash no longer served on the MCU Board and was used by her as her personal phone with cellular service paid for and provided by Ms. Ash.  (Cohen Decl, ¶ 8.)  The situation thus is remarkably different from when an employer requests the return of its electronic devices from an employee. The MCU had no conceivable interest in Ms. Ash's personal data on the iPhone, thus strongly supporting the inference that the only reason for the strong warning by the MCU in its letter not to "wipe, delete, reset, factory restore, image or copy" the devices was because the government wanted access to such data for its investigation.  The government has produced no evidence that the MCU made any similar requests in prior years even though, upon information and belief, the MCU and/or Mr. Wong provided upgraded Apple and other electronic devices and/or computers on an annual basis to Board members (past and present).

Accordingly, absent the government's desire for access to the iPhone data and the MCU's strong desire to cooperate with the government in an attempt to avoid any corporate criminal charges against it, the MCU would not have had an interest in the preservation of data on the iPhone.  Indeed, by the time of the June 19 MCU Letter (and the July 13 MCU Letter), the DFS had taken possession and control of the MCU thus any internal investigation conducted by the MCU would have been long been completed by then.  In fact, it was the DFS-appointed administrator, Stella Mendes, who purportedly provided consent for the government to search the iPhone, further illustrating that the government's access to the iPhone was the result of state action.

10

Second, the MCU's request for return of the devices occurred nearly simultaneously with the service of a grand jury subpoena on Ms. Ash requesting, among other things, all communications between Ms. Ash and Mr. Wong.  Finally, despite repeated opportunities to do so, and an explicit request from undersigned counsel, the USAO has never denied the existence or occurrences of correspondence and communications between the government and the MCU regarding the request to Ms. Ash for the devices.  Tellingly, the USAO instead refused to provide such communications or correspondence because the USAO took the unsupported position that Ms. Ash was not entitled to such information.

The inferences from these facts show a sufficiently close nexus between the government and the MCU to attribute the MCU's request that Ms. Ash provide her electronics to the MCU to the government.  *Stein,* 541 F.3d at 152 n.11.  The facts further support that the government, which at the time was in the midst of an investigation regarding financial irregularities, fraud, and embezzlement at the MCU, used its coercive power, including any implied threat that less than total cooperation by the MCU could result in criminal prosecution of it, to cause the MCU to issue the request for electronics to Ms. Ash.   This is sufficient to attribute MCU's actions to the state.  *See Stein* 541 F.3d at 147.  Additionally, and in the alternative, the facts show that, at a minimum, the government offered significant encouragement to the MCU to cooperate with the government's investigation and specifically seek access to the iPhone and Ms. Ash's other electronics, including the preservation of data on any such devices.  This alone is enough to attribute MCU's action to the state, *id.*, and require suppression of the iPhone.

Moreover, rather than seek access to Ms. Ash's electronics directly—for example, by asking for her voluntary consent to search and, if refused, applying for a search warrant—the government used its power to cause a private party to gain access to the device and wrongfully

11

failed to alert Ms. Ash to the potential use of the iPhone against her in a criminal case.  Further, Ms. Ash was not provided with notice of the Fifth Amendment privileges applicable in the context of production of the iPhone.

Evidence provided to the government has been excluded in similar circumstances.  In *United States v. Scrushy*, the United States Attorney's Office, without advising the defendant at the time that he was a target of investigation and without providing any notice to the defendant regarding the potential use of his testimony or his Fifth Amendment privileges, covertly interceded in a civil investigation by the United States Securities and Exchange Commission ("SEC"), including by causing the SEC to change the location of the defendant's deposition for venue purposes.  366 F. Supp. 2d 1134 (N.D. Ala. 2005).  The Court excluded evidence of the defendant's perjury, which derived only from the deposition the United States Attorney's Office manipulated.  *Id.* at 1140.  The government has engaged in similar duplicity here, hiding the true nature and intended purpose of the MCU's request to Ms. Ash, and, by outsourcing its investigation of Ms. Ash to the MCU, has engaged in the type of conduct Chief Judge McMahon found "deeply troubl[ing]" in *United States v. Connolly*, No. 16 Cr. 0370 (CM), 2019 U.S. Dist. LEXIS 76233, at *3 (S.D.N.Y May 2, 2019).

Further, just as in *Scrushy*, Ms. Ash was not advised of the potential use of her response to the request against her in a criminal investigation or prosecution and  of the Fifth Amendment privilege against self-incrimination that may (and in fact did) apply to her response thereto.  That the MCU signed a consent to search the iPhone is irrelevant because the MCU's possession of the iPhone was the result of a violation of the Fifth Amendment.  Further, the MCU's consent, executed by the DFS-appointed administrator of the MCU, is invalid, as the MCU did not own the iPhone or its contents.  Rather, the iPhone had been given to Ms. Ash and used for her

12

personal use with her own cellular service and thus belonged to her and only she could consent to its search.  Her provision of the iPhone to the MCU does not invalidate in any way her right to object to the search of that iPhone by the government.

Thus, because Ms. Ash's production of the iPhone was the result of state action and she was not properly informed of her rights or the potential use of her production in a criminal investigation, the iPhone, and any evidence derived from the iPhone, must be suppressed.  *Cf. United States v. Stringer*, 535 F.3d 929 (9th Cir. 2008) (order suppressing evidence obtained in civil SEC investigation reversed when the government fully disclosed the possibility that information received during the civil investigation could be used for criminal proceeding, there was no deceit by the government, and the government advised the defendants of their Fifth Amendment rights).

### C.   In the Alternative, Discovery and a Hearing Should be Granted

In the alternative, discovery regarding the government's involvement in the June 19 and July 13 MCU Letters should be granted in order to permit the development of a more complete factual record on this issue.  Further, the Court should grant an evidentiary hearing regarding the circumstances that led to the June 19 and July 13 MCU Letters, including the involvement, if any, of the government in the MCU's conduct.  The Court should order the government to disclose all correspondence and communications between the MCU and the government regarding the June 19 and July 13 MCU Letters, as well as disclose information regarding the date when the MCU began to cooperate with the government in its investigation.

13

II.     **EVIDENCE DERIVED FROM THE SEARCH WARRANTS FOR STORED ELECTRONIC COMMUNICATIONS MAINTAINED BY OATH AND GOOGLE SHOULD BE SUPPRESSED AS FRUITS OF THE POISONOUS TREE**

Because the evidence obtained from the iPhone should be suppressed, the evidence obtained through the Email Search Warrants should be suppressed as the applications for those warrants relied on the iPhone and information derived from the iPhone to establish probable cause and thus are impermissible fruits of the poisonous tree.

A.     **Relevant Legal Standard**

The "fruit of the poisonous tree" doctrine forbids the use of evidence obtained as a result of a constitutional violation. *See United States v. Eggers*, 21 F. Supp. 2d 261, 266 (S.D.N.Y 1998) (Kaplan, J.)  Derivative evidence is suppressed when the Fifth Amendment itself is violated. *Id.*  Thus, if the Court finds that the Ms. Ash's Fifth Amendment right against self-incrimination was violated regarding the production of the iPhone, as outlined in § I, *supra*, then evidence derived from this violation must be suppressed.

B.     **The Results of the Email Search Warrants Are Fruits of the Poisonous Tree**

The government cannot deny that it had access to, analyzed, and relied on evidence derived from the iPhone in its application for the Email Search Warrants.  (*See, e.g.,* Ex. E, SW Affidavit ¶ 35.)  Among other things, Special Agent Jackson's Affidavit cites and relies on the results of the forensic analysis of the iPhone to justify probable cause for the Email Search Warrants.[9]  In his affidavit, Special Agent Jackson relies on the factory reset of the iPhone to

---

[9] On November 14, 2018, a forensic analyst assigned to the High Technology Analysis Unit of the New York County District Attorney's Office attempted to perform a forensic extraction of the iPhone and purportedly discovered that the device had been factory reset and saved contents deleted from the devices.  (Ex. E, SW Affidavit ¶ 35.)

justify searching stored electronic communications maintained by Oath and Google for Ms. Ash's personal email accounts.  (Ex. E, SW Affidavit ¶ 46 (Ms. Ash "directed Apple factory reset her iPhone X to seek to destroy and/or conceal evidence being sought pursuant to a grand jury subpoena.  I believe the Subject Accounts will contain records of communications between ASH, WONG, GUAGLIARDO, and/or other members of the Credit Union that were intentionally deleted or not produced by ASH"); ¶ 47b (Special Agent Jackson further states that he believes the subject accounts will contain "Apple deletion and restore logs, records, communications, and correspondence with Apple relating to the factory reset of the iPhone X.").)  Because the basis for probable cause for the Email Search Warrants relied, at least in large part, on information illegally obtained from the iPhone, the evidence derived from the Email Search Warrants should be suppressed.  *See Eggers*, 21 F. Supp. at 266.

Significant portions of the Indictment rely on evidence derived from the Email Search Warrants.  All such evidence should be suppressed, including but not limited to, the following evidence specifically relied upon by the government in the Complaint:

- Any evidence of the Internet Protocol logs for the Ash Gmail Account (Ex. P, Compl. ¶ 40c);

- Any evidence regarding emails deleted from the Ash Gmail account, including the deletions subsequent to the first preservation notice to Gmail and subsequent to the second grand jury subpoena served on Ms. Ash (Ex. P, Compl. ¶  41);

- The contents of any emails allegedly deleted from the Gmail account, including but not limited to emails regarding the federal investigation, the MCU's internal investigation, allegations of misconduct against MCU board members and the MCU general counsel (Ex. P, Compl. ¶¶ 41a-b);

15

- Analysis of the rate or number of emails deleted from the Gmail account (Ex. P, Compl. ¶ 41c); and

- The contents of any specific emails found in the Gmail account, including but not limited to the contents purportedly disclosed in the Complaint.  (Ex. P, Compl. ¶¶ 41c(i)-(iv).)

### III.   STATEMENTS MADE IN THE APRIL 6, 2018 AND JUNE 8, 2018 IMPERMISSABLE INTERVIEWS SHOULD BE SUPPRESSED

The USAO violated Ms. Ash's due process rights by continuing to interview Ms. Ash outside the presence of counsel, despite informing her immediately following her March 1, 2018 interview that she should retain counsel, presumably because the government believed she made misrepresentations to the government during that interview and had become a target of its investigation.  Because the interviews on April 6, 2018 and June 8, 2018 generated evidence as a result of a violation of Ms. Ash's due process rights, any evidence derived from them must be suppressed, including alleged misrepresentations to the government made by Ms. Ash on April 6, 2018 and June 8, 2018 that form the bases of Counts One and Three of the Indictment.

#### A.    Relevant Legal Standard

The Court may suppress evidence obtained as the result of a violation of the defendant's due process rights.  *See United States v. DiGregorio*, 795 F. Supp. 630, 635 (S.D.N.Y 1992); *United States v. Morrison*, 449 U.S. 361, 101 S. Ct. 665 (1981).  The right to due process is violated where "the governmental conduct, standing alone, is so offensive that it shocks the conscience." *United States v. Chin*, 934 F. 2d 393, 398 (2d Cir. 1991) (quoting *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205 (1952)).  Government conduct is outrageous when it violates "that 'fundamental fairness, shocking to the universal sense of justice," mandated by the Due Process Clause of the Fifth Amendment.  *United States v. Russell*, 411 U.S. 423, 432, 93 S.

16

Ct. 1637, 1643 (1973) (*quoting Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246, 80S. Ct. 297, 304 (1960)).

### B.      The Government Instructed Ms. Ash to Retain Counsel But Impermissibly Continued to Question Her Outside the Presence of Counsel

On March 1, 2018, Special Agent Jackson and AUSA Mark interviewed Ms. Ash.  Ms. Ash agreed to answer questions from the USAO on a voluntary basis and without counsel present, although at time the USAO had not informed her that she needed an attorney or that she was a target of its investigation.  (Ex. P, Compl. ¶ 29; Ex. K, March 1, 2018 Interview Mem.)[10] According to the Complaint, during that interview, Ms. Ash provided information regarding her tenure as Chair of the MCU Board, information regarding Kam Wong's employment contract, including information regarding payments to Mr. Wong in lieu of long-term disability insurance, and information regarding a January 2018 memorandum prepared by Mr. Wong regarding the payments made to Mr. Wong and which Ms. Ash signed.  (Ex. P, Compl. ¶ 29a-i.)  Although omitted from the Complaint, the March 1, 2018 Interview Memorandum discloses that at the end of the interview, AUSA Mark specifically advised Ms. Ash to retain counsel.  (Ex. K, March 1, 2018 Interview Mem. at SDNY_0000003.)

Despite advising Ms. Ash to retain counsel, and despite knowing that Ms. Ash was a target of the USAO's investigation presumably based, at least in part, on her alleged statements during the March 1, 2018 interview, the government continued to question Ms. Ash outside the presence of counsel, in violation of Department of Justice policy and Ms. Ash's due process rights.  Specifically, on April 6, 2018, Special Agent Jackson interviewed Ms. Ash by telephone

---

[10] Depending on the outcome of this motion, Ms. Ash may request discovery as to when she became a target of the investigation and make any appropriate motions based on such discovery.

ny-1885522

regarding her response to the grand jury subpoena dated March 13, 2018 (the "March Subpoena").  (Ex. P, Compl. ¶ 32.)  Allegedly, Ms. Ash represented to Special Agent Jackson that she did not have any records responsive to the March Subpoena.  (*Id.*)  Ms. Ash's statements to Special Agent Jackson during the April 6, 2018 interview are specifically cited as overt acts in furtherance of the alleged conspiracy to obstruct justice as charged in Count One of the Indictment.  (Indictment ¶ 4c).  Further, the alleged misrepresentations underlie Count Three of the Indictment, which alleges that Ms. Ash "made false and misleading statements to federal law enforcement officers in connection with a federal investigation of the CEO [of MCU] and others." (*Id.* ¶ 6.)

The government violated Ms. Ash's due process rights on June 8, 2018 by interviewing Ms. Ash *again* outside the presence of counsel and without informing her that she had become a target of its investigation.  Special Agent Jackson and AUSAs Mark and Richenthal conducted the June 8, 2018 telephonic interview. (Ex. L, June 8, 2018 Interview Mem. at SDNY_00000004.)  Misleadingly, the Complaint does not refer to this "interview" and represents that the USAO only interviewed Ms. Ash twice – on March 1, 2018 and July 9, 2018. (*See* Ex. P, Compl. at page. 23 describing the July 9, 2018 interview as the "second" interview.) However, the June 8, 2018 Interview Memorandum prepared by Special Agent Jackson clearly states that AUSAs Mark and Richenthal and he "conducted a telephonic *interview*" of Ms. Ash. (Ex. L, June 8, 2018 Interview Mem.) (emphasis added.)

During the June 8, 2018 interview, Ms. Ash allegedly stated that she did not have any records responsive to the March Subpoena.  She allegedly made further statements that she had deleted text messages between herself and Mr. Wong after she had been served with the March Subpoena.  She also allegedly made statements surrounding her receipt of the iPhone and

discussed the January memorandum regarding cash payments to Mr. Wong in lieu of long-term

insurance.  (Ex. P, Compl. ¶¶ 33a-g.)  Ms. Ash's alleged misrepresentations in this June 8

interview underlie, at a minimum, Count Three of the Indictment, which charges that Ms. Ash

"made false and misleading statements to federal law enforcement officers in connection with a

federal investigation of the CEO [of MCU] and others." (Indictment ¶ 6.)

### C.   The Government's Actions Violated Ms. Ash's Due Process Rights and the Statements Made During the April 8 and June 2, 2018 Interviews Should Be Suppressed

As described above, the government had affirmatively instructed Ms. Ash to retain

counsel as it had identified her as a target, not merely a witness or subject of investigation, at

least as early as March 1, 2018.  In violation of Department of Justice policy, the USAO

continued to interview Ms. Ash outside the presence of counsel in an effort to lull Ms. Ash into a

false sense of security regarding her status in the investigation and obtain potentially

incriminating statements from her.  (*See*  United States Department of Justice Manual § 9-11.151

("The Department of Justice continues its longstanding policy to advise witnesses who are

known "targets" of the investigation that their conduct is being investigated for possible violation

of Federal criminal law.").)  Here, by failing to properly inform Ms. Ash of her status as a target

of investigation, the USAO tacitly convinced Ms. Ash that she was safe and secure and that she

was merely cooperating with the investigation into Mr. Wong and others at MCU when, in truth

and in fact, she had become a target of its investigation.  Further, the USAO elicited answers to

its questions during the April 6, 2018 and June 8, 2018 interviews without an attorney present

and without any proffer protection.

The government acted unfairly and in violation of Department of Justice policy when it

continued to question Ms. Ash outside the presence of counsel, despite affirmatively advising her

ny-1885522

to retain counsel and determining that she had become a target of its investigation.  Such conduct violated Ms. Ash's due process rights under the Fifth Amendment and all evidence derived from the April 6, 2018 and June 8, 2018 interviews should be suppressed.

### IV.    MS. ASH'S ALLEGED STATEMENTS ON JULY 9, 2018 AND IN THE GRAND JURY ON AUGUST 16, 2018 SHOULD  BE SUPPRESSED BECAUSE THE GOVERNMENT VIOLATED MS. ASH'S DUE PROCESS RIGHTS

Any alleged statements by Judge Ash made at the July 9, 2018 proffer or in her August 16, 2018 grand jury testimony should be suppressed because the government knew that Ms. Ash was represented by counsel that had an unwaivable conflict of interest, yet failed to seek a *Curcio* hearing.  This conduct by the government violated Ms. Ash's due process rights, the remedy for which is suppression of the evidence obtained as a result of such violation.

### A.    Relevant Legal Standard

As discussed in Section III.A, *supra*, the Court may suppress evidence obtained as the *Morrison*, 449 U.S. at 361, 101 S. Ct. at 665.  Such violation may be found if the government engages in conduct that violates the fundamental sense of fairness mandated by the Due Process Clause of the Fifth Amendment.  *Russell*, 411 U.S. at 432, 93 S. Ct. at 1643 (*quoting Kinsell*, 361 U.S. at 432, 80 S. Ct. at 304).  As this Court has held, structural defects in the administration of justice exist—and prejudice to the defendant may be presumed—when defense counsel is burdened by an actual conflict of interest.  *See United States v. Stein*, 435 F. Supp. 2d 330, 371 (S.D.N.Y 2006) (Kaplan, J.)

"It is well-settled in this circuit that an actual conflict of interest exists when an attorney engages in wrongful conduct related to the charge for which the client is on trial." *United States v. Fulton*, 5 F.3d 605, 609 (2d Cir. 1993).  Moreover, a conflict arises from the accusation of wrongful conduct even if the attorney is demonstrably innocent of the wrongful conduct.  *Id*. at

610.  When defense counsel is implicated in a related crime, "the resultant conflict so permeates the defense that no meaningful waiver can be obtained."  *Id.* at 613.

> ### B.    The Government Knew an Unwaivable Conflict Existed by the Time of  the July 9, 2018 Proffer and August 16, 2018 Grand Jury Testimony

The government knew that Ms. Ash's then attorney Roger Archibald had an unwaivable conflict of interest by July 6, 2018—the date Ms. Ash, through her attorney Mr. Archibald, made an allegedly incomplete production in response to the First Subpoena.  The government alleges that this production was incomplete because, among other things, it did not contain any text messages, of which the government was aware based on its review of text messages from Mr, Wong and "Member-1's" cellphones.  (Ex. P, Compl. ¶ 37b.)  The government obtained a search warrant for Mr. Wong's cellphone on May 7, 2018 and seized Mr. Wong's cellphone on May 8, 2018—nearly two months before Ms. Ash's production.  (Ex. M, May 8, 2018 Search Warrant Inventory at SDNY_00004941.)  Shortly thereafter, on May 22, 2018, the government obtained a search warrant for Mr. Guagliardo's devices and seized them.  (Ex. N, May 23, 2018 Search Warrant Inventory at SDNY_00004912-4913.)

Accordingly, as soon as the production was made by Ms. Ash via Mr. Archibald on July 6, 2018, which the government alleges was incomplete and an overt act in furtherance of a conspiracy to obstruct justice (Indictment ¶ 4e), the government knew that Mr. Archibald was either a witness to or a participant in the precise conduct that forms the basis of the charges against Ms. Ash.  The government, as soon as it was made aware that Mr. Archibald was planning to represent Ms. Ash at the July 9, 2018 proffer, should have so informed Mr. Archibald and asked for a *Curcio* hearing and should not have gone forward with the proffer session unless and until Ms. Ash, at a minimum, consulted with independent counsel regarding

Mr. Archibald's conflict of interest.  The government's failure to do so violated Ms. Ash's due process rights.

The government violated Ms. Ash's due process rights a second time when it yet again failed to request a *Curcio* hearing and permitted Ms. Ash to testify to the grand jury represented only by Mr. Archibald.  At this point, in addition to its knowledge regarding Mr. Archibald's witnessing of or participation in the allegedly incomplete production, the government also had knowledge that Mr. Archibald was witness to or participant in the alleged misrepresentations Ms. Ash made to the USAO at the July 9, 2018 proffer.  The Indictment charges that in furtherance of a conspiracy to obstruct justice, Ms. Ash, at the July 9, 2018 proffer, falsely stated that she had discussed Mr. Wong's interest in receiving monetary payments in lieu of any long-term disability insurance policy, and the MCU General Counsel advised that such payments were permissible, though not advisable.  (Indictment ¶ 4f.)  It is undisputed that Mr. Archibald attended that proffer in his capacity as Ms. Ash's attorney.  But again, the government failed to request a *Curcio* hearing (or even raise the issue with Mr. Archibald) and permitted Ms. Ash to testify while represented by an attorney with a serious, unwaivable, and disqualifying conflict of interest of which it had undisputed knowledge.  Based on this violation of Ms. Ash's due process rights, Ms. Ash's statements during her July 8, 2018 and in the grand jury on August 16, 2018 should be suppressed.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Sylvia G. Ash respectfully requests that the Court grant the

relief requested herein.

Dated: New York, New York           MORRISON & FOERSTER LLP
March 20, 2020


By: <u>s/ Carrie H. Cohen</u>
Carrie H. Cohen
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email: CCohen@mofo.com

*Counsel for Defendant*
*Sylvia G. Ash*

23