UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

                         Plaintiff,

            -against-                                                    19-cr-0780 (LAK)


SYLVIA ASH,

                         Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**


            Appearances:

                         Eli J. Mark
                         Daniel C. Richenthal
                         Assistant United States Attorneys
                         Alona Katz
                         Special Assistant United States Attorney
                         GEOFFREY S. BERMAN
                         UNITED STATES ATTORNEY
                         *Attorneys for Plaintiff*

                         Carrie H. Cohen
                         MORRISON & FOERSTER LLP
                         *Attorney for Defendant*


LEWIS A. KAPLAN, *District Judge.*

            Sylvia Ash, a New York State judge, has been charged with conspiring to

obstruct, and obstructing, a federal investigation into the embezzlement and fraud perpetrated by

the chief executive officer and president of the Municipal Credit Union ("MCU"), Kam Wong.[1]

Ash had served on the MCU's board of directors from 2008 until August 2016, the last fifteen

---

[1]

            Complaint [DI 1] [hereinafter "Compl."] ¶¶ 9-10.

months as its chair.[2]   From at least 2012 until 2016, Ash received thousands of dollars in reimbursements and other benefits from the MCU, such as Apple devices, tickets to sporting events, and airfare.[3]   The government alleges that in 2015 alone, the MCU spent approximately $63,408 for the benefit, or at the direction, of Ash, the most of any director that year.[4]   After her resignation, Ash allegedly continued to receive gifts from the MCU and/or Wong, who obtained items from, or charged them to, the MCU.[5]   It further alleges that in 2017, even though she had resigned from the board, the MCU spent approximately $4,284 for Ash's benefit.[6]   Among the items Ash received was an iPhone, in January 2018, from Wong.[7]

The government charges that in January 2018, Ash signed a false and misleading memorandum purporting to justify millions of dollars that Wong had received from the MCU.[8] It alleges also that she later concealed and deleted text messages and emails, wiped the iPhone's contents, and made false and misleading statements to federal investigators.[9]   Based on this alleged conduct, Ash was indicted on one count of conspiracy to obstruct justice and two substantive counts of obstruction.

The matter is before the Court on Ash's motion to suppress: (1) all evidence based on or derived from the iPhone, (2) all evidence obtained by search warrants executed on

---

[2]

[3]        *Id.* ¶ 11(f).

[4]        *Id.* ¶ 12(b).

[5]        *Id.*

[6]        *Id.* ¶¶ 12(b)-(c).

[7]        *Id.* ¶ 12(c).

[8]        *Id.* ¶¶ 21-25, 33(e).

[9]        *Id.* ¶¶ 10, 14-28; *see also* Indictment [DI 9]  ¶¶ 2, 4-5.

Compl. ¶¶ 29-46; *see also* Indictment ¶¶ 2-4, 6.

two of Ash's personal email accounts, (3) statements made in interviews with the government, and (4) her grand jury testimony.  In the alternative, Ash seeks discovery and an evidentiary hearing related to this evidence.  For the reasons set forth below, the motion is denied in its entirety.

*Facts*

I.      *The Government's Investigation and Ash's Alleged False and Misleading Statements*

During his tenure as chief executive officer and president, Wong embezzled approximately $9.9 million dollars from the MCU by submitting requests for various employment benefits to which he was not entitled.[10]  These included reimbursements for dental work, vehicle expenses, and payments in lieu of long-term disability insurance ("LTD Offset Payments").[11]

In January 2018, upon learning of the criminal investigation, Wong sought to obstruct justice by making misleading statements to federal investigators and by creating false documents related to the LTD Offset Payments, one of which Ash signed.[12]  That same month, Wong provided Ash with an Apple iPhone.[13]

The government continued its investigation into Wong throughout 2018.  As part of the investigation, it served Ash with subpoenas on March 13, 2018 and June 18, 2018 that requested various documents related to and communications with Wong.[14]  Ash did not produce

---

[10]

[11]      Declaration of Carrie H. Cohen [DI 37] [hereinafter "Cohen Decl."] Ex. E at ECF 9-10, 39- 40.

[12]      *Id.* at ECF 9-11.

[13]      *Id.* at ECF 10-13; Compl. ¶¶ 4-5.

[14]      Compl. ¶¶ 20-21, 25, 33(e).

        *Id.* ¶¶ 31, 35.

any materials in response to the first subpoena.[15]   On or about July 6, 2018, Ash produced documents responsive to the second subpoena through her then-retained counsel, Roger Archibald.[16]   The government alleges that this production was incomplete.[17]

Between March 1, 2018 and July 9, 2018, the government conducted four interviews of Ash in which she allegedly made false and misleading statements.[18]   She was represented by counsel (Archibald) only for her July 9, 2018 interview.   On August 16, 2018, Ash appeared before the grand jury, again represented by Archibald.[19]

II.    *The MCU's Investigation and Ash's Alleged Destruction of Evidence from the iPhone*

The MCU also investigated Wong's misconduct.[20]   In connection with its internal investigation, the MCU on June 19, 2018 sent Ash a letter requesting the return of any electronic devices issued to her by the MCU, or by any current or former MCU employees, and instructed her not to "wipe, delete, reset, factory restore, image or copy" any such devices.[21]   The letter did not include any information about the MCU's – or government's – possible uses of the iPhone or

---

[15]

   *Id.* ¶¶ 32-34.

[16]

   *Id.* ¶ 39.

[17]

   *Id.*

[18]

   *Id.* ¶¶ 29, 32-33, 42-43.

[19]

   *Id.*

[20]

   Cohen Decl. Ex. E at ECF 40.

[21]

   *Id.* ¶ 36; Cohen Decl. Ex. O.

   The MCU previously had requested that Ash return all MCU-issued devices via an email from the MCU operations manager on May 14, 2018.  Compl. ¶ 36 n.10; Cohen Decl. U.  The following day, the operations manager instructed Ash to disregard the earlier email "since you've had the devices for 3 years or more."  Cohen Decl. U. at ECF 2.  Ash did not inform the operations manager that she had received an iPhone from Wong four months earlier, and instead responded: "No comment!!!"  *Id.*

its contents.[22]

On June 23, 2018, Ash went to an Apple store to have the contents of the iPhone transferred to another device.[23]  According to Apple's customer service notes, "[the] customer came in with two iPhones [and] would like to set one up with iCloud restore and the second to clear completely."[24]

On July 13, 2018, the MCU sent Ash another letter with substantially the same request and instructions as in its June letter.[25]  This time, the letter cited the iPhone explicitly as an example of a "MCU-owned device[]" in Ash's possession.[26]  In response, Ash returned the iPhone and an Apple watch to the MCU through Archibald.[27]  A letter accompanying the electronics stated that Ash "had not wiped, deleted, reset, factory restored, imaged or copied any of MCU's devices."[28]  The government alleges that this statement was false.[29]

Several months later, the MCU's outside counsel delivered the iPhone to a cyber services firm.[30]  On October 30, 2018, the MCU executed a "Consent to Search" form with

---

[22]

[23]    *See* Cohen Decl. Ex. O.

[24]    Compl. ¶ 37.

[25]    *Id*.

[26]    *Id*. ¶ 45; Cohen Decl. Ex. R.

[27]    Cohen Decl. Ex. R.

Compl. ¶ 45.

[28]    Ash, again through Archibald, returned two iPads four months later.  Government's Opposition to the Motion to Suppress [DI 42] [hereinafter "Gov't. Op."] Ex. 3.  The cover letter accompanying the iPads stated that they were previously "delivered to [Archibald's] office by Judge Ash," and "were apparently mislaid and not returned to MCU per their request." *Id*.

[29]    Gov't. Op. Ex. 1.

[30]    Compl. ¶ 46.

*Id*.

respect to the iPhone and other MCU-issued devices.[31]  The government took possession of the iPhone on November 9, 2018 and transferred it to the New York County District Attorney's device laboratory.[32]  A forensic analyst subsequently discovered that the phone had been wiped, precluding the recovery of previously stored text messages or emails.[33]

### III.    Wong's Guilty Plea and the Charges Against Ash

On December 2, 2018, Wong pled guilty to embezzlement from the MCU.[34]  In his plea agreement, he acknowledged "endeavoring to obstruct and impede and obstructing and impeding the administration of justice with respect to the criminal investigation into this matter, and agreeing with one or more others to do the same[.]"[35]

On October 4, 2019, the government filed a criminal complaint against Ash alleging that she was one of the individuals with whom Wong conspired to obstruct justice and that she had committed the substantive offense of obstruction.[36]  She was indicted later that month.[37]

---

[31]     Cohen Decl. Ex G.

[32]     Compl. ¶ 46.

[33]     *Id.*

[34]     *Id.* ¶ 11(g).

[35]     *Id.*

[36]     DI 1.

[37]     DI 9.

*Discussion*

I.      *The iPhone*

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."[38]  This privilege against self-incrimination extends to the production of records when the act of production – independent of the record's contents – is "(1) compelled, (2) testimonial, and (3) incriminating."[39]  The individual claiming a violation of the privilege by compulsory production must demonstrate that the production was the result of coercion by or attributable to the government.[40]

Ash contends that any evidence based on or derived from the iPhone should be suppressed because it was obtained in violation of her Fifth Amendment right against self-incrimination.  Her argument is premised on the assertion that government was directly involved in the MCU's June 19, 2018 and July 13, 2018 letters requesting the iPhone's return.  She would have the Court infer this based on the premise that the government – and not the MCU – would have had an interest in her iPhone data as of June 2018, as Ash no longer was an MCU board member and the device had been used for personal, rather than business, purposes.  She contends that this inference is bolstered by the "near[] simultaneous[]" timing of the letters and the June 18, 2018 subpoena requesting communications between Ash and Wong, that the MCU's internal investigation would have "long been completed" by June 2018, and that the government did not explicitly deny that it was involved with the request and is otherwise unwilling to provide its

---

38

        U.S. Const. amend. V.

39

        *In re Three Grand Jury Subpoenas Duces Tecum Dated January 29, 1999*, 191 F.3d 173, 176 (2d Cir. 1999).

40

        *United States v. Stein*, 541 F.3d 130, 146-47 (2d Cir. 2008).

communications with the MCU regarding the return of the iPhone.[41]  Taken together, Ash argues that the MCU's actions were attributable to the government.

The government responds that "it informed the defendant .  .  . that .  .  . the Government did not ask or direct MCU to request the defendant to return the iPhoneX (or any other device) to MCU."[42]  This arguably falls short of an unambiguous assertion that the government was not involved, even indirectly, with the MCU's request for the phone.  Just the same, the facts relied on by Ash to support an inference of government involvement are far from compelling.

First, it seems quite reasonable that the MCU, when investigating Wong's fraudulent spending and reimbursements, would have been interested in Ash's MCU-issued devices.  Ash had received thousands of dollars in gifts and benefits from the organization, often at Wong's behest, both before and after her resignation from the board of directors.[43]

Second, while the June subpoena and June MCU letter were sent one day apart, Ash's argument ignores the fact that the first subpoena was sent three months prior to the MCU's June letter.[44]

Third, the MCU's June 13, 2018 press release in which it announced that it was "conducting its own internal investigation led by outside counsel" undermines Ash's claim that

---

[41]     Defendant's Memorandum in Support of the Motion to Suppress [DI 36] [hereinafter "Def.'s Mem."] at 10-11.

[42]     Gov't. Op. at 15.

[43]     *See* Compl. ¶ 12.

[44]     *Id.* ¶ 31.

the internal investigation had "long" been completed by the time the MCU sent its June 19, 2018 letter requesting the return of Ash's MCU-issued devices.[45]

Finally, Ash overlooks the fact that the government did not gain possession of her phone until November 2018, approximately four months after the MCU had received it, an unlikely delay if the government had directed the MCU's request.[46]

In the last analysis, however, it is unnecessary to resolve the question whether there was "a sufficiently close nexus between the State and the challenged action of the [MCU] so that the action of the latter may be 'fairly treated' as that of the State itself,"[47] or even to hold a hearing. Ash's argument fails regardless of whether the government somehow instigated the MCU's request.

Suppression is unwarranted where, as here, a defendant is unable to demonstrate that the production was compelled.  In the context of records production, the Second Circuit has held that the compulsion element was met in a case in which the defendant was ordered to sign a consent form after he had refused to do so.[48]  In contrast, there is no evidence to suggest that the MCU exerted any pressure on Ash, much less pressure sufficient to "deprive[] [Ash] of [her] free choice" to return the phone.[49]  Rather, Ash simply complied with the organization's request to return the phone.

---

[45]

Press Release, MCU, *Municipal Credit Union Board Terminates Kam Wong* (Jun. 13, 2018), https://www.nymcu.org/aboutmcu/mcu-board-terminates-kam-wong.aspx.

[46]

Compl. ¶ 46.

[47]

*Stein*, 541 F.3d at 146 (citation omitted).

[48]

*In re Grand Jury Subpoena,* 826 F.2d 1166, 1168-69 (2d Cir. 1987)**.**

[49]

*See Garrity v. State of New Jersey,* 385 U.S. 493, 496 (1967) (internal quotation marks and citation omitted).

Ash nevertheless argues that she was coerced into turning over the iPhone.  The coercion is said to have consisted of the failure to inform her that the government would search her phone or that it could be used against her in a criminal prosecution.  By failing to do so, she contends that the government "engaged in . . . duplicity [by] hiding the true nature and intended purpose of the MCU's request"[50]

Ash's theory of coercion by deception is unavailing, and would be so even if the government put the MCU up to asking for the iPhone.  "Inculpatory statements are not involuntary when they result from a desire to cooperate, or from a defendant's ignorance of, or inattention to, his right to remain silent."[51]  The privilege against self-incrimination is not violated where the individual responds to a request without knowledge that he or she is the subject of an ongoing criminal investigation.[52]  Nor is it violated by duplicitous conduct – whether that conduct is  "false, misleading, or intended to trick" – unless the defendant's will was "overborne" by the deception.[53]

Ash has failed to adduce evidence from which it might be inferred that her will was overborne. As the government observes,

> "At the time when the defendant—an experienced lawyer and judge—returned the iPhone X, among other things, (a) Wong had been arrested, and the Government had publicly stated that its investigation was ongoing; (b) MCU had publicly announced that it was cooperating in that investigation; (c) the defendant had been served with two grand jury subpoenas, each of which called for communications with Wong; and (d) the defendant had been questioned by the

---

[50] Def.'s Mem. at 12.

[51] *United States v. Mitchell*, 966 F.2d 92, 100 (2d Cir. 1992).

[52] *See United States v. Okwumabua*, 828 F.2d 950, 953-54 (2d Cir. 1987) (finding that there was "no legal or moral duty to inform the defendant that [a special agent of the Inspector General's Office] was conducting a criminal investigation" when he interviewed the defendant).

[53] *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991) (citations omitted); *see also United States v. Haak*, 884 F.3d 400, 409 (2d Cir. 2018).

> Government about those communications and her receipt of the iPhone X from Wong. . . . She also failed to return all devices [requested in the MCU's letter], further belying any suggestion that she felt coerced."[54]

In the totality of the circumstances, the evidence that Ash was compelled to produce the iPhone is insufficient to warrant a hearing, much less to suppress the phone.

*United States v. Scrushy*[55] – which Ash claims involved "similar circumstances"– does not warrant a different result. There, the government gave the SEC "advice or 'preferences' regarding the content of [an SEC] deposition and its location" in an attempt to gather evidence for its criminal investigation, of which the deponent unknowingly was a target.[56] The court excluded the deposition testimony as evidence of the defendant's alleged perjury because the government "manipulated the simultaneous [criminal and civil] investigations for its own purposes" in order to procure it.[57] But that ruling rested on the contours of the bounds of the "proper administration of justice," not on the Fifth Amendment.[58] Though, as in *Scrushy*, Ash was not advised of the potential use of her iPhone, unlike in *Scrushy*, her claim rests upon whether the production as compelled. For the reasons above, it was not. As Ash's privilege against self-incrimination therefore was not violated, suppression of the iPhone would be unwarranted.

---

[54]    Gov't. Op. at 20 (citing Exs. 2-3).

[55]    366 F. Supp. 2d 1134 (N.D. Ala. 2005).

[56]    *Id*. at 1137.

[57]    *Id*. at 1140.

[58]    *Id*. at 1137.

II.     *The Emails*

The government concedes that the search warrants for Ash's personal email addresses were predicated, at least in some part, on the forensic analysis of the iPhone.[59]  Ash argues that, because the iPhone should be suppressed, so too should any evidence obtained through these search warrants.  However, since the procurement of the iPhone did not infringe upon Ash's privilege against self-incrimination, there was no "poisonous tree" of which any evidence was fruit. The motion to suppress insofar as it relates to evidence obtained by the search warrants therefore is denied.

III.    *Interview Statements and Grand Jury Testimony*

   A.    *Statements Made Prior to Retaining Counsel: April 6, 2018 and June 8, 2018 Interviews*

Evidence obtained in violation of a defendant's right to substantive due process may be suppressed.  That right is violated when government misconduct is so egregious that it "shocks the conscience." [60]

The boundaries of this standard are "necessarily imprecise."[61]  As this Court has explained, "'liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process' while 'conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.'"[62]   Examples of behavior falling within this range include: six days of intense

---

[59]    Cohen Decl. Ex E.

[60]    *Rochin v. California*, 342 U.S. 165, 172 (1952); *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005).

[61]    *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005).

[62]    *United States v. Stein*, 495 F. Supp. 2d 390, 415 (S.D.N.Y. 2007) (quoting *County of Sacramento*

interrogation,[63] forcible extraction of capsules from a suspect's mouth followed by pumping his stomach against his will,[64] and undue governmental pressure that caused an employer to cease payment of its employees' legal fees and thus impairing their right to counsel.[65]  "In short, to shock the conscience and trigger a violation of substantive due process, official conduct must not only be wrong; it must be extremely so, truly brutal and offensive to human dignity."[66]

   Ash argues that the two voluntary interviews conducted while she allegedly was an unknowing "target" of the government's investigation were "outrageous" government misconduct.[67]  That argument is unpersuasive, especially when taken in the full factual context.

   Prior to the these two interviews, which occurred on April 6, 2018 and June 8, 2018, Ash had met with an Assistant United States Attorney ("AUSA") and a special agent with the office on March 1, 2018.[68]  During that meeting, Ash discussed her tenure as the chair of the MCU board and information related to Wong, including the January 2018 memorandum that she had signed regarding payments that he had received from the MCU.[69]  At the end of that March meeting, the AUSA informed Ash that it would be advisable to retain counsel.[70]  Two weeks later, on March 13, 2018, Ash was served with a grand jury subpoena requesting, among other

---

[63]   *v. Lewis*, 523 U.S. 833, 849 (1998)).

[64]   *Watts v. Indiana*, 338 U.S. 49, 52-55 (1949).

[65]   *Rochin*, 342 U.S. at 172.

[66]   *Stein*, 495 F. Supp. 2d at 413-15.

[67]   *Mara v. Rilling*, 921 F.3d 48, 78-79 (2d Cir. 2019) (internal quotation marks and citation omitted).

  "A 'target' is a person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." UNITED STATES DEPARTMENT OF JUSTICE MANUAL § 9-11.151.

[68]   Compl. ¶ 29.

[69]   *Id*.

[70]   Cohen Decl. Ex. K at ECF 4.

items, all documents related to Wong's compensation, long-term disability payments, and any communications with Wong.[71]  Ash did not produce any materials in response.[72]

On April 6, 2018, the AUSA interviewed Ash by telephone.[73]  The government alleges that Ash then stated falsely that she did not have any documents responsive to the March subpoena.[74]  She was not represented by counsel on the call and the government did not inform her as to whether she was a target of an investigation.

On June 8, 2018, Ash (unrepresented by counsel), two AUSAs, and the special agent spoke again by phone.[75]  And again, Ash allegedly made false and misleading statements.[76] The government did not inform her as to whether she was a target of an investigation.

Ash argues that she was a target of the investigation when the April 6 and June 8 interviews were conducted, that she should have been told that she was a target, and that failure to do so violated guidance from the Department of Justice ("DOJ") Manual to "advise witnesses who are known 'targets' of the investigation that their conduct is being investigated for possible violation of Federal criminal law."[77]  She claims also that the government acted "unfairly" by questioning her outside the presence of counsel after she had become a target.  The government denies that Ash was a target as of the April and June 2018 phone interviews.  But even if she were, the statements made during these interviews need not be suppressed.

---

[71]

[72]    Compl. ¶ 31.

[73]    *Id.* ¶¶ 32-33.

[74]    *Id.* ¶ 32.

[75]    *Id.*

[76]    *Id.* ¶ 33.

[77]    *Id.*

United States Department of Justice Manual § 9-11.151.

The Supreme Court has rejected the argument that it is "fundamentally unfair to elicit incriminating testimony from a potential defendant without first informing him of his target status."[78]   The DOJ Manual – which "provides internal DOJ guidance" and "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law"[79] – acknowledges this.[80]   At most, Ash alleges that the government did not adhere to a DOJ policy that provided "supplemental advice" of a grand jury witness's status.[81]   Yet, government action that is merely "incorrect or ill-advised" does not violate an individual's substantive due process right.[82]   Failure to adhere to this DOJ policy does not rise to the level of governmental misconduct that is "so outrageous that common notions of fairness and decency would be offended were judicial process invoked to obtain a conviction."[83]   That is particularly so here, given the fact that Ash is a lawyer and a judge, had several contacts with the government about the Wong investigation, and had even been advised by the AUSA to retain counsel.  She could have been under no illusion that she was not at some risk of criminal exposure.

---

[78]    *United States v. Washington*, 431 U.S. 181, 190 n.6 (1977); *see also Okwumabua,* 828 F.2d at 953.

[79]    UNITED STATES DEPARTMENT OF JUSTICE MANUAL § 1-1.200.

[80]    *Id.* § 9-11.151 ("Although the Court in *Washington*, supra, held that 'targets' of the grand jury's investigation are entitled to no special warnings relative to their status as 'potential defendant(s),' the Department of Justice continues its longstanding policy to advise witnesses" of their target status.).

[81]    *Id.*

[82]    *See Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (citation omitted).

[83]    *United States v. Al-Kassar*, 660 F.3d 108, 121 (2d Cir. 2011) (internal quotation marks and citation omitted).

B.      *Statements Made After Retaining Counsel: July 9, 2018 Interview and August 16, 2018 Grand Jury Testimony*

The Sixth Amendment ensures that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[84]   "[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him."[85]   The government must "honor" this right."[86]   Yet, there may be a sufficient reason to inquire into or even disturb a defendant's choice of counsel if there is an actual or potential conflict of interest. In a case of potential conflict, "the choice as to which right is to take precedence must generally be left to the defendant and not be dictated by the government. The district court, however, must ensure that this choice is made knowingly and intelligently." [87] To do so, the court first must conduct a "*Curcio* hearing" to determine "whether the attorney has an actual conflict, a potential conflict, or no conflict at all."[88]

As the government stated to this Court at the November 4, 2019 pretrial conference, Archibald had an actual or potential conflict because he appeared to have been involved in the conduct charged to Ash.  The involvement was as follows: On July 6, 2018 Ash, through Archibald, made an allegedly incomplete production in response to the June 18, 2018 subpoena, which had required that she produce, among other items, all correspondence with Wong and all documents regarding any items of value received from Wong or the MCU.[89]

---

[84]   U.S. Const. amend. VI.

[85]   *United States v. Gonzalez–Lopez*, 548 U.S. 140, 144 (2006).

[86]   *Stein*, 541 F.3d at 154.

[87]   *United States v. Stein*, 410 F.Supp.2d 316, 323 (S.D.N.Y. 2006) (internal quotation marks and citations omitted).

[88]   *Id*. at 323-24 (internal quotation marks and citations omitted).

[89]   Compl. ¶¶ 35, 39.

Among other records, the production did not contain certain text messages between Ash and Wong.[90]  The incomplete production is charged as an overt act in furtherance of the alleged conspiracy to obstruct justice.[91]  During a July 9, 2018 interview with the government, at which Archibald was present, Ash allegedly made false or misleading statements, conduct charged as an overt act in furtherance of the alleged conspiracy to obstruct justice and which underlie one charge of obstruction of justice.[92]  On August 16, 2018, Ash testified in front of the grand jury. According to the government's papers, Ash answered certain questions but generally invoked the Fifth Amendment.[93]  Archibald represented her for this testimony.

Ash argues that because Wong's cell phone had been seized in May, the government knew as of July 6, 2018 that her production was incomplete and thus that Archibald was implicated in a crime later charged to his client, an unwaivable conflict.[94]  Accordingly, she contends that the government violated her due process rights by failing both to inform her about the potential conflict and to ask for a *Curcio* hearing prior to the July 9, 2018 interview.[95]  She

---

[90]

*Id.* ¶ 39.

[91]

Indictment ¶ 4(e).

[92]

*Id.* ¶¶ 4(f), 6**.**

[93]

Gov't. Op. at 27.

[94]

*See United States v. Fulton*, 5 F.3d 605, 609, 613 (2d Cir. 1993) ("It is well-settled in this circuit that an actual conflict of interest exists when an attorney engages in wrongful conduct related to the charge for which the client is on trial. . . . [In this situation,] the resultant conflict so permeates the defense that no meaningful waiver can be obtained.").

[95]

The government argues that it could not have sought a *Curcio* hearing before Ash was indicted, at which point the Sixth Amendment right to counsel attaches.  *See Rothgery v. Gillespie County*, 554 U.S. 191, 198 (2008) (internal quotation marks omitted). Yet, the government's hands were not tied.  The Court is not aware of any reason, nor does the government cite any, as to why the government would have been prohibited from informing the defendant of a potential or actual conflict, had it believed one existed.  However, the government's ability to request a *Curcio* hearing is ultimately irrelevant here.  Ash's argument is  based on an alleged violation of substantive due process, and for the reasons below, her claim fails under the "shock the conscious standard," irrespective of whether the Sixth Amendment right to counsel had attached.

argues also that the government should have requested a *Curcio* hearing prior to her August 16, 2018 grand jury testimony because the government knew that Archibald was a witness or participant to the allegedly false or misleading statements made during the July 9 interview.. The government's failure to do so, she argues, further violated her due process rights.

Ash's argument hinges on the dubious contention that the government must have known of the actual or potential conflict prior to the July interview and the August grand jury testimony.  As Ash explains, this would have required that the government have known that "Archibald was either a witness to or a participant" in the conduct underlying the charges against her.[96]  But knowledge that a production may have been incomplete does not necessarily equate to a conclusion that the producing party was conspiring to or had obstructed justice.  Nor does knowledge that a statement may have been untrue, though it is not readily apparent to the Court at what point the government came to the belief that the statements made during the July interview were false.  But these factual issues need not be resolved.  Even if the government was aware of a potential or actual conflict, its failure to alert Ash to this or to request a *Curcio* hearing would not "shock the conscious" such that due process mandates suppression. Accordingly, there is no basis on which to suppress Ash's statements made during her July 9, 2018 interview or during her August 16, 2018 grand jury testimony.

IV.     *Alternative Relief: Discovery and Evidentiary Hearing*

As an alternative to suppression, Ash requests discovery and an evidentiary hearing on the following: (1) the government's involvement, if any, with the MCU's internal investigation and request for the iPhone, (2) information regarding Ash's status during the government's investigation, including any decisions as to whether to designate her as a target of

---

[96]     Def.'s Mem. at 7, 21-22.

investigation, and whether to inform her of such a designation, and (3) information regarding when the government became aware of Archibald's potential or actual conflict.

This request is denied. As to the first request, the court's denial of the motion to suppress evidence based on or derived from the iPhone does not depend on whether the MCU's actions were attributable to the government. The court's decision would remain unchanged irrespective of any information gleaned through discovery or a hearing. Nor would the relief sought rescue Ash's remaining motions. As explained above, even if Ash was a target of an investigation during the April 6 and June 8 interviews, and even if the government was aware of a potential conflict between her and Archibald, the government's conduct did not "shock the conscious." The resolution of any genuine factual questions therefore would not alter the court's conclusions, rendering discovery and an evidentiary hearing unnecessary.

*Conclusion*

Defendant's motion to suppress [DI 35] is denied.

SO ORDERED.

Dated:      June 2, 2020

                                                                    Lewis A. Kaplan
                                                              United States District Judge