UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                                         :
    UNITED STATES OF AMERICA                             :
                                                         :
              - v. -                                     :            S1 19 Cr. 780 (LAK)
                                                         :
    SYLVIA ASH,                                          :
                                                         :
                        Defendant.                       :
                                                         :
------------------------------------------------------- x


## THE GOVERNMENT'S MOTIONS *IN LIMINE*


                          DAMIAN WILLIAMS
                          United States Attorney
                          Southern District of New York


Eli J. Mark
Daniel C. Richenthal
Jonathan E. Rebold
Assistant United States Attorneys

Alona Katz
Special Assistant United States Attorney

- Of Counsel -

# TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................................................ 2

ARGUMENT ..................................................................................................................... 8

I.   EVIDENCE OF THE DEFENDANT'S RECEIPT OF BENEFITS FROM MCU AND WONG IS ADMISSIBLE.................................................................................................. 8

    A.   The Proffered Evidence ...................................................................................... 8

    B.   Applicable Law ................................................................................................ 10

        1.   Direct Evidence ........................................................................................ 10

        2.   Evidence of Other Acts ........................................................................... 10

    C.   Discussion ........................................................................................................ 12

II.  EVIDENCE OF THE DEFENDANT'S CONCEALMENT OF BENEFITS SHE RECEIVED FROM MCU ON HER ANNUAL JUDICIAL FINANCIAL DISCLOSURE FORMS IS ADMISSIBLE .............................................................................................. 15

    A.   The Proffered Evidence .................................................................................... 15

    B.   Discussion ........................................................................................................ 15

III. EVIDENCE THAT THE DEFENDANT WAS ADVISED TO RESIGN HER BOARD POSITION AT MCU AND THAT A JUDICIAL MISCONDUCT COMPLAINT WAS FILED AGAINST HER ARISING FROM HER SERVICE ON MCU'S BOARD IS ADMISSIBLE.................................................................................................................. 17

    A.   The Proffered Evidence .................................................................................... 17

    B.   Discussion ........................................................................................................ 19

IV.  EVIDENCE THAT THE DEFENDANT SOUGHT TO EVADE PERSONAL INCOME TAXES ON THE COMPENSATION SHE RECEIVED FROM MCU IS ADMISSIBLE ................................................................................................................. 20

    A.   The Proffered Evidence .................................................................................... 20

    B.   Discussion ........................................................................................................ 21

V.   EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANT'S FAMILY BACKGROUND, MARITAL STATUS, ANCESTRY, HEALTH CONDITION, AGE, OR ANY OTHER PERSONAL FACTOR UNCONNECTED TO GUILT SHOULD BE PRECLUDED .................................................................................................................. 22

VI.  EVIDENCE OR ARGUMENT CONCERNING THE POTENTIAL PUNISHMENT OR CONSEQUENCES, INCLUDING DISBARMENT, THAT THE DEFENDANT FACES IF CONVICTED SHOULD BE PRECLUDED .................................................................. 22

VII. EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANT'S OR MCU'S PRIOR COMMISSION OF "GOOD ACTS" WHILE SHE WAS A BOARD MEMBER (OR OTHERWISE) OR NON-COMMISSION OF OTHER BAD ACTS SHOULD BE PRECLUDED .................................................................................................................. 23

VIII.   EVIDENCE OR ARGUMENT CONCERNING WHETHER OTHER MCU BOARD MEMBERS AND SUPERVISORY COMMITTEE MEMBERS SIMILARLY MISAPPROPRIATED MONEY FROM MCU SHOULD BE PRECLUDED ............... 24

IX.   EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANT'S PRIOR ALLEGATION THAT THE GOVERNMENT ENGAGED IN "OUTRAGEOUS" MISCONDUCT THAT VIOLATED THE CONSTITUTION, THE LAW, AND/OR THE JUSTICE MANUAL SHOULD BE PRECLUDED ................................................ 26

X.   EVIDENCE OR ARGUMENT CONCERNING THE GOVERNMENT'S CHARGING DECISIONS SHOULD BE PRECLUDED .................................................................... 27

XI.   EVIDENCE OR ARGUMENT CONCERNING ANY ALLEGED RELIANCE ON ADVICE OR APPROVAL OF COUNSEL IN ENGAGING IN THE CHARGED CONDUCT SHOULD BE PRECLUDED, UNLESS AND UNTIL THE DEFENDANT ESTABLISHES AN ADMISSIBLE FACTUAL BASIS ................................................ 28

    A.   Relevant Background ............................................................................ 28

    B.   Applicable Law .................................................................................... 28

    C.   Notice of and Discovery Concerning an Advice-of-Counsel Defense ................. 30

    D.   Federal Rule of Evidence 104 ............................................................... 31

    E.   Discussion ........................................................................................... 33

        1.   The Defendant Should Be Ordered Promptly to Provide Written Notice and Discovery Concerning Any Alleged Advice-of-Counsel Defense .... 33

        2.   The Defendant Should Be Precluded From Offering Argument—Including in Her Opening Statement, If Any—Concerning an Alleged Advice-of-Counsel Defense Unless and Until She Establishes an Admissible Factual Basis for the Elements of the Defense ...................................................... 33

        3.   The Defendant Should Be Precluded From Otherwise Offering Argument—Including in Her Opening Statement, If Any—Or Evidence Suggesting She Is Not Guilty Because Mr. Archibald or Any Other Attorney Purportedly "Approved" of the Lawfulness of the Defendant's Conduct or Did Not Warn Her Against Certain Conduct ......................... 34

CONCLUSION ..................................................................................................... 36

# **TABLE OF AUTHORITIES**

## **Cases**

*Bourjaily v. United States*, 483 U.S. 171 (1987) ..................................................... 31, 32

*Lurie v. Wittner*, 228 F.3d 113 (2d Cir. 2000) ............................................................ 30

*Rogers v. United States*, 422 U.S. 35 (1975) ............................................................. 23

*S.E.C. v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013)........................................... 35, 36

*Shannon v. United States*, 512 U.S. 573 (1994)........................................................ 23

*United States v. Armstrong*, 517 U.S. 456 (1996) ...................................................... 28

*United States v. Atias*, No. 14 Cr. 403 (DRH), 2017 WL 563978 (E.D.N.Y. Feb. 10, 2017) 30, 33, 35, 36

*United States v. Battaglia*, No. S9 05 Cr. 774, 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008) ....... 22

*United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181 (2d Cir. 1989)......................... 29, 33

*United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978) ............................................ 24

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991)............................................. 30, 31

*United States v. Blagojevich*, 794 F.3d 729 (7th Cir. 2015) .......................................... 35

*United States v. Brady*, 26 F.3d 282 (2d Cir. 1994).................................................... 12

*United States v. Brik*, No. 15 Cr. 78 (SRN), 2016 WL 3753080 (D. Minn. July 11, 2016) ......... 32

*United States v. Brooks*, No. 08 Cr. 35 (PKL), 2008 WL 2332371 (S.D.N.Y. June 4, 2008)...... 31

*United States v. Camacho*, 353 F. Supp. 2d 524 (S.D.N.Y. 2005)................................... 32

*United States v. Carboni*, 204 F.3d 39 (2d Cir. 2000)...................................... 10, 12, 15

*United States v. Colasuonno*, 697 F.3d 164 (2d Cir. 2012)..................................... 29, 34

*United States v. Colon*, 880 F.2d 650 (2d Cir. 1989)................................................... 11

*United States v. Crowder*, 325 F. Supp. 3d 131 (D.D.C. 2018)...................................... 31

*United States v. DeJesus*, 806 F.2d 31 (2d Cir. 1986)................................................. 32

*United States v. Evangelista*, 122 F.3d 112 (2d Cir. 1997) ........................................................ 29

*United States v. Fazio*, No. S2 11 CR 873, 2012 WL 1203943 (S.D.N.Y. Apr. 11, 2012).......... 24

*United States v. Gatto*, 986 F.3d 104 (2d Cir. 2021) ................................................................ 25

*United States v. Gonzalez*, 110 F.3d 936 (2d Cir. 1997) .......................................................... 10

*United States v. Greenspan*, 923 F.3d 138 (3d Cir. 2019)........................................................ 28

*United States v. Harris*, 491 F.3d 440 (D.C. Cir. 2007) ............................................................ 22

*United States v. Hatfield*, No. 06 Cr. 550 (JS), 2010 WL 183522 (E.D.N.Y. Jan. 8, 2010)... 30, 33

*United States v. Hsu*, 669 F.3d 112 (2d Cir. 2012) .................................................................. 10

*United States v. Knox*, 687 F. App'x 51 (2d Cir. 2017)............................................................. 26

*United States v. Mercado*, 573 F.3d 138 (2d Cir. 2009) .......................................................... 11

*United States v. Meyerson*, 18 F.3d 153 (2d Cir. 1994)............................................................ 10

*United States v. Muse*, No. 06 Cr. 600 (DLC), 2007 WL 1989313 (S.D.N.Y. July 3, 2017)....... 27

*United States v. Oldbear*, 568 F.3d 814 (10th Cir. 2009) ......................................................... 25

*United States v. Oliviere*, 740 F. Supp. 2d 414 (S.D.N.Y. 2010) .............................................. 13

*United States v. Paccione*, 949 F.2d 1183 (2d Cir. 1991) ......................................................... 22

*United States v. Pascarella*, 84 F.3d 61 (2d Cir. 1996)............................................................. 11

*United States v. Paul*, 110 F.3d 869 (2d Cir. 1997).................................................................. 32

*United States v. Paulino*, 445 F.3d 211 (2d Cir. 2006).............................................................. 10

*United States v. Pipola*, 83 F.3d 556 (2d Cir. 1996)............................................................ 11, 12

*United States v. Quinones*, 417 F. App'x 65 (2d Cir. 2011).................................................. 29, 34

*United States v. Ramirez*, 894 F.2d 565 (2d Cir. 1990) ............................................................ 11

*United States v. Re*, 401 F.3d 828 (7th Cir. 2005) ................................................................... 27

*United States v. Regan*, 103 F.3d 1072 (2d Cir. 1997) ............................................................. 27

*United States v. Rivera*, No. 13 Cr. 149, 2015 WL 1725991 (E.D.N.Y. Apr. 15, 2015)............. 24

*United States v. Roldan-Zapata*, 916 F.2d 795 (2d Cir. 1990) ................................... 14

*United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993) ...................................................... 12

*United States v. Sabir*, No. S4 05 Cr. 673 (LAP), 2007 WL 1373184 (S.D.N.Y. May 10, 2007) 31

*United States v. Saldarriaga*, 204 F.3d 50 (2d Cir. 2000) ........................................... 26

*United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441 (S.D.N.Y. Jan. 18, 2018). 30, 32, 33

*United States v. Scarpa*, 897 F.2d 63 (2d Cir. 1990) .................................................... 23

*United States v. Scully*, 877 F.3d 464 (2d Cir. 2017)............................................. 29, 34

*United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506 (S.D.N.Y. Jan. 26, 2004) .. 27

*United States v. Thomas*, 54 F.3d 73 (2d Cir. 1995)............................................... 10

*United States v. Valencia*, 826 F2d 169 (2d Cir. 1987) ............................................. 31

*United States v. Van Allen*, 524 F.3d 814 (7th Cir. 2008) ......................................... 28

*United States v. Villegas*, 899 F.2d 1324 (2d Cir. 1990) ........................................... 32

*United States v. Wells Fargo Bank N.A.*, No. 12 Civ. 7527 (JMF), 2015 WL 3999074 (S.D.N.Y. June 20, 2015)................................................................................................ 31

*United States v. William*s, 205 F.3d 23 (2d Cir. 2000) ........................................ 11, 14

*United States v. Willoughby*, 860 F.2d 15 (2d Cir. 1988) ........................................... 13

*United States v. Zackson*, 12 F.3d 1178 (2d Cir. 1993) ........................................ 11, 12

*Williamson v. United States*, 207 U.S. 425 (1908) ................................................... 29

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------- x
                                                    :
UNITED STATES OF AMERICA                            :
                                                    :
            - v. -                                  :            S1 19 Cr. 780 (LAK)
                                                    :
SYLVIA ASH,                                         :
                                                    :
                     Defendant.                     :
                                                    :
----------------------------------------------------- x

## THE GOVERNMENT'S MOTIONS *IN LIMINE*

The Government respectfully seeks rulings on several issues prior to trial.

*First*, the Government seeks pretrial rulings that certain categories of evidence are admissible as direct evidence or, in the alternative, under Federal Rule of Evidence 404(b), namely:

- evidence of the defendant's receipt of benefits from Municipal Credit Union ("MCU") and its former Chief Executive Officer Kam Wong ("Wong");

- evidence of the defendant's concealment of benefits she received from MCU on her annual state judicial financial disclosure forms;

- evidence that the defendant was told to resign her MCU board position, declined to do so, and that a judicial misconduct complaint was thereafter filed against her arising from her service on MCU's board, only after which she resigned; and

- evidence that the defendant sought to evade personal income taxes on compensation she received from MCU.

*Second*, the Government seeks to preclude certain evidence or argument that is wholly irrelevant to the issues at trial, and/or for which any conceivable probative value is substantially outweighed by the risk of juror confusion, distraction from the evidence, unnecessary lengthening of the trial, and/or unfair prejudice to the Government.  Specifically, the Government moves to preclude evidence or argument concerning:

- the defendant's family background, marital status, ancestry, health condition, age, or any other personal factor unconnected to guilt;

- the potential punishment or consequences, including disbarment, that the defendant faces if convicted;

- the defendant's or MCU's prior commission of "good acts" while the defendant was a board member (or otherwise) or non-commission of other bad acts;

- whether other MCU board members and supervisory committee members allegedly similarly misappropriated money from or engaged in misconduct at MCU;

- the defendant's prior allegation that the Government engaged in "outrageous" misconduct that violated the Constitution, the law, and/or the Department of Justice Manual; and

- the Government's charging decisions in or related to this matter.

*Third*, the Government moves (1) for an order that the defendant promptly provide written notice and discovery concerning any purported advice-of-counsel defense and (2) to preclude the defendant from offering argument—including in her opening statement, if any—concerning alleged reliance on the advice or approval of counsel in engaging in the charged conduct, unless and until the defendant establishes an admissible factual basis for the required elements of an advice-of-counsel defense.

## **FACTUAL BACKGROUND**

The factual allegations against the defendant are set forth in detail in Complaint 19 Mag. 9341 (the "Complaint" or "Compl."), described in the Superseding Indictment, and described in prior submissions to the Court.

In sum, the defendant, Sylvia Ash, a now-suspended New York State Supreme Court Justice and former MCU board of directors' chair, is charged in a multiple-count superseding indictment (the "Indictment") with obstructing the government's investigation into misconduct by MCU's former chief executive officer Kam Wong and others at MCU, and making a false statement to federal investigators. Wong was charged with embezzlement, wire fraud, and other

federal crimes in May 2018, pled guilty to embezzlement in December 2018, and was sentenced to 66 months' imprisonment and ordered to pay more than $9 million in restitution. *See United States v. Wong*, 18 Cr. 737 (JGK).

As alleged, beginning in January 2018 and continuing until at least July 2018, the defendant agreed with one or more others to and did engage in a course of conduct to obstruct the government's investigation. During this time, the government interviewed the defendant four times (none pursuant to a proffer agreement) and served her with two federal grand jury subpoenas. As alleged in the Complaint and the Indictment, the defendant obstructed justice in a number of ways, including by signing a false and misleading memorandum about money Wong received (which he later admitted he embezzled), concealing and deleting emails and text messages, and making false statements to federal officials.

First, in January 2018, the defendant agreed to and did assist Wong in signing a false and misleading memorandum that was provided to law enforcement. After law enforcement first approached Wong about millions of dollars he had received by numerous hand-written checks from MCU, which he falsely told investigators he was entitled to under his employment contract, Wong turned to the defendant for assistance. At Wong's request, the defendant signed a false and misleading memorandum (which Wong referred to as an "affidavit") that purported to justify payments he received from MCU. The memorandum recounted a supposed meeting between the defendant and Wong in June 2015—when the defendant was chair of MCU's board of directors— at which the defendant purportedly approved more than $3.7 million in payments to Wong to cancel or moot a provision in his employment contract that had provided him long-term disability insurance (the "LTD Offset Payments"). After the defendant signed the false and misleading memorandum, Wong provided it to law enforcement in an (unsuccessful) attempt to hinder the

3

federal investigation. MCU also provided the memorandum to state and federal financial regulators.[1]

Next, on March 1, 2018, shortly after Wong was placed on administrative leave from his position at MCU, the defendant attended her first voluntary interview with the Government. At the interview, the defendant was questioned regarding her service as an MCU board member, Wong's compensation and contract, and the memorandum she signed for Wong. During that interview, she falsely stated that MCU's then-current general counsel had told her that Wong's employment contract gave him the option of receiving the LTD Offset Payments. The defendant conceded, however, in response to questioning, that the memorandum that she had signed for Wong about the LTD Offset Payments was not an accurate reflection of her meeting and discussion with Wong about long term disability insurance, any payments to him in lieu of the insurance, and his contract. During the interview, the defendant also misleadingly stated that she stepped down from her position at MCU after she was appointed as a judge for the state supreme court commercial division because MCU had foreclosures before that court.

Subsequently, the defendant sought to destroy and impair evidence—including evidence sought from her by federal grand jury subpoenas—by concealing and deleting emails and text messages with Wong and others and wiping an Apple iPhone that Wong had provided her at or around the time that he asked her to sign the false and misleading memorandum described above. The defendant concealed and deleted emails and text messages about MCU's internal investigation, the government's investigation, and her expressed sympathy and loyalty to Wong.

---

[1]     Wong also obtained false and misleading memoranda from two other individuals, MCU's then-Treasurer and MCU's then-chair of the supervisory committee. The supervisory committee of a credit union is generally responsible for oversight of the credit union's board of directors and management.

On March 13, 2018, the defendant was served with her first federal grand jury subpoena (the "First Subpoena"), which requested the production of documents related to various matters, including long term disability insurance for Wong, Wong's compensation, and any communications with Wong through the date of the First Subpoena. On April 6, 2018, during a telephonic interview with federal officials, she falsely told the Government that she did not have any materials responsive to the First Subpoena.

On June 8, 2018—after Wong was charged with embezzlement from MCU and the government had executed a search warrant of the residence of Joseph Guagliardo, a member of MCU's supervisory committee (who later was also charged and convicted of embezzlement from MCU)—the defendant was interviewed, by telephone, again by the Government about the First Subpoena. During that interview, the defendant again falsely stated that she had no materials responsive to the First Subpoena. During the interview, the defendant further stated, among other things, that, since her departure from MCU, her communications with Wong did not involve MCU business, apart from her inquiring whether she could host her birthday at MCU Park, a minor league baseball stadium that MCU then-sponsored.

On June 18, 2018, the defendant was served with a second federal grand jury subpoena (the "Second Subpoena"), which requested the production of documents related to various matters, including all correspondence with Wong, Guagliardo, and multiple other individuals; all documents regarding any criminal investigation, internal investigation, or audit related to Wong; and all documents regarding any items of value received from MCU, Wong, or Guagliardo. Shortly afterward, the defendant went to an Apple store and caused an Apple employee to "clear completely" the iPhone X that Wong had recently provided her from MCU. In addition, the defendant deleted emails from her Gmail account, including all of her emails with Guagliardo,

many of which concerned Wong, the federal investigation, MCU's internal investigation, and allegations of misconduct against Board members and MCU's former general counsel, none of which she ultimately produced in response to either of the federal grand jury subpoenas directed to her.

On July 6, 2018, on the defendant's behalf, her then-counsel, Roger Archibald, Esq., produced materials to the Government in response to the Second Subpoena. This production was, the investigation revealed, incomplete, concealing text messages, emails, and other documents the defendant possessed or had under her custody or control that were responsive to the Second Subpoena. Among other things, the production did not include correspondence with Wong, Guagliardo, and others; documents regarding the criminal investigation and internal investigation related to Wong; and documents regarding items of value received from MCU, Wong, and Guagliardo.

On July 9, 2018, the defendant attended her final voluntary interview with the Government. During this interview, while accompanied by her then-counsel, the defendant made multiple false statements, including: she repeated false statements regarding her purported conversation with MCU's former general counsel about his supposed approval of Wong's receipt of cash payments in lieu of long-term disability insurance; she repeated her false claim about the reason for her resignation from MCU's board of directors; she falsely claimed that she deleted the contents of the iPhone X she received from Wong in preparation to return the phone to MCU, but that she did not return it because MCU was no longer seeking to retrieve any devices from her; and she falsely claimed she and her aunt took a trip to Las Vegas for an MCU event after she resigned because all of her travel arrangements were paid for by MCU before she resigned. In addition, the defendant

also repeated her false and misleading claim that she resigned from the board of MCU because she was elevated to be the presiding judge of the commercial division.

After the defendant's final interview, Mr. Archibald, her then-counsel, on her behalf, sent a letter, dated July 17, 2018, to MCU that falsely stated that the defendant had not wiped any MCU-issued devices when returning two of them, the iPhone X and an Apple watch, to MCU.  In the July 17 letter, Archibald wrote that the defendant had "advised" Archibald that she had not "wiped, deleted, reset, factory restored, imaged or copied any of [MCU's] electronic devices." The letter also stated that the iPhone X and Apple watch were "the only two MCU electronic devices" possessed by the defendant at the time the letter was sent.  Subsequently, the iPhone X was forensically examined and determined that the phone had been reset.

On or about October 10, 2019, the defendant's residence was searched, pursuant to a judicially-authorized search warrant, during which law enforcement officers located, among other things, additional MCU-issued devices.  The next day, the defendant was arrested and her cellphone was seized incident to arrest.  After obtaining a judicially-authorized search warrant, the defendant's phone was searched, which revealed, among other things, numerous text messages that were concealed in response to the subpoenas as well as evidence that the defendant had also deleted relevant text messages.

After the defendant was indicted, the defendant's new counsel provided to the Government two additional MCU-issued devices that had previously been concealed.  Similar to the iPhone X and Apple Watch, upon analysis, these devices had also been reset.

## ARGUMENT

**I.     EVIDENCE OF THE DEFENDANT'S RECEIPT OF BENEFITS FROM MCU AND WONG IS ADMISSIBLE**

### A.  The Proffered Evidence

As described in the Complaint, the Indictment, and above, the defendant is charged with obstructing the federal investigation of Wong and others at or connected to MCU, including her own conduct, and conspiring to do so.  The Government expects that the evidence will show that Wong and the defendant had a close—and, in relevant ways, corrupt—relationship that began and developed over the years when the defendant was serving as an MCU board member, and continued after she resigned from MCU.

As explained in the Complaint, although the defendant's position on MCU's board of directors was ostensibly a volunteer and unpaid one, she sought and obtained significant personal benefits from that position.  (Compl. ¶ 12.)  The evidence, in both the form of documentary evidence and testimony, is expected to show that the defendant received tens of thousands of dollars annually in reimbursements and other benefits from MCU (*id.* at ¶ 12(b)), some of which were personally authorized by Wong.  Specifically, the Government expects to offer evidence that the defendant sought and received reimbursement for, and had MCU and/or Wong pay for, domestic and foreign trips (including airfare, lodging, meals, and entertainment), use of MCU Park (including food and beverages), personal expenses (including cellphone, cable, and internet service), Apple devices, sporting event tickets, contributions to organizations, and transportation to meetings (or money in the guise of reimbursement for such transportation), both during and after the defendant's service as an MCU board member (*id.* at ¶¶ 12, 44).

8

In addition, the Government intends to offer evidence that the defendant's receipt of many of the above payments and items violated MCU policy and/or were fraudulently obtained. This evidence is expected to include, among other things, MCU's policy manual (which the defendant was sent), expense reports and reimbursement requests for personal expenses for cable and phone charges (including requests that involved double-billing, as described in prior briefing, and expenses for the defendant's son's phone), and unsupported travel expenses for meetings. (*Id.* at ¶¶ 12, 44.)

In emails and text messages, at times, the defendant acknowledged the personal nature of these benefits. For example, in reference to an August 2015 ten-day cruise to the Mediterranean for a purported conference that MCU paid for her and a guest, costing more than approximately $14,000, the defendant emailed a friend, "I was in Rome on a Mediterranean cruise as part of my Birthday celebration." Similarly, in regard to MCU Park, the defendant repeatedly referred to hosting her birthday party there. For example, in 2015, she emailed an invitation to friends to MCU Park for "Sylvia's Annual Baseball Birthday Celebration," and for the event she requested a cake, paid for by MCU, saying "Happy Birthday." Wong continued to authorize the defendant's use of MCU's suite at MCU Park (including food and beverage service) for her birthday even after she resigned from MCU. After she resigned, she also took trips paid for by MCU to Las Vegas and to Cuba. (*Id.* at ¶¶ 12(c)(i), 44.)

Notably, the Second Subpoena called for the production of all documents regarding any items of value received from Wong and MCU. (*Id.* at ¶ 35.) But the defendant's production in response to that subpoena did not include numerous documents regarding items of value she received from Wong and MCU and expense reimbursements she submitted, including pertaining

to trips (with a few exceptions), the Apple devices she received, and her receipt of sporting tickets. (*Id.* at ¶ 39.)

## B. Applicable Law

### 1. Direct Evidence

Direct evidence of a crime is not limited to "that which directly establishes an element of the crime." *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997). Rather, direct evidence also includes evidence that is "inextricably intertwined with the evidence regarding the charged offense," and/or "necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (internal quotation marks omitted); *see also United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2012).

### 2. Evidence of Other Acts

Rule 404(b) allows for the admission of uncharged crimes, wrongs, or other acts for purposes other than proving criminal propensity, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Second Circuit "has long adopted an 'inclusionary' approach to the admission of uncharged crime evidence, under which evidence of prior crimes, wrongs, or acts is admissible for any purpose other than to show a defendant's criminal propensity." *United States v. Paulino*, 445 F.3d 211, 221 (2d Cir. 2006) (internal quotation marks omitted). Applying this approach, the Second Circuit has routinely approved of the admission of "other acts" evidence with respect to the issues of knowledge, intent, and/or motive. *See, e.g.*, *United States v. Thomas*, 54 F.3d 73, 81-82 (2d Cir. 1995); *United States v. Meyerson*, 18 F.3d 153, 166-67 (2d Cir. 1994). Where the defendant claims his or her conduct has an innocent explanation, the admission of such evidence of prior acts is particularly appropriate. *See, e.g.*, *United States v. Zackson*, 12 F.3d 1178, 1182

(2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.").

The defendant's knowledge and intent are in issue unless the defendant has unequivocally conceded that element of the offenses with which he or she is charged. *See, e.g.*, *United States v. Colon*, 880 F.2d 650, 656-57 (2d Cir. 1989); *see also United States v. Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990) (when the defendant "disavows awareness that a crime was being perpetrated" and the Government bears the burden of proving knowledge "as an element of the crime, knowledge is properly put in issue").

Evidence of uncharged acts also is admissible as background evidence where it is used to (i) explain the development of the illegal relationship between co-conspirators; (ii) explain the mutual criminal trust that existed between co-conspirators; and/or (iii) complete the story of the crime charged. *See United States v. Mercado*, 573 F.3d 138, 141-42 (2d Cir. 2009); *United States v. William*s, 205 F.3d 23, 33-34 (2d Cir. 2000) (affirming admission of prior act evidence involving co-conspirators "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed" (internal quotation marks omitted)); *United States v. Pascarella*, 84 F.3d 61, 73 (2d Cir. 1996) (other act evidence admissible "to show the background of a conspiracy or the development of a relationship of trust between the participants"); *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case.").

11

The Court has broad latitude in determining whether to admit evidence under Rule 404(b). *United States v. Brady*, 26 F.3d 282, 286 (2d Cir. 1994) ("A trial court's decision regarding the admissibility of evidence will be overturned only upon a showing of abuse of discretion."). Where evidence is offered for a proper purpose under Rule 404(b), it may only be excluded if the probative value of the evidence is "substantially outweighed" by the danger of unfair prejudice. *Zackson*, 12 F.3d at 1182; Fed. R. Evid. 403. The Second Circuit has repeatedly held that evidence properly admissible under Rule 404(b) is not unduly prejudicial so long as the court gives a limiting instruction to the jury explaining the purpose for the evidence. *See Pipola*, 83 F.3d at 566; *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993).

### C. Discussion

The above-proffered evidence is admissible for multiple reasons.

*First*, much of it is admissible as direct evidence because it is, at least in large part, "inextricably intertwined with the evidence regarding the charged offense," and/or "necessary to complete the story of the crime on trial. *Carboni*, 204 F.3d at 44 (internal quotation marks omitted). Indeed, much of the evidence, which concerns benefits, gifts, and other items of value that were provided by MCU, generally, and Wong, in particular, to the defendant, was concealed by the defendant in furtherance of the charged obstruction scheme. For example, the Second Subpoena demanded all documents regarding items of value the defendant received from MCU and Wong. (Compl. ¶ 35.) Her response to that subpoena concealed numerous responsive documents, including bank records, credit card records, expense reports, emails, and cable and phone bills, reflecting the receipt of tens of thousands of dollars of benefits.

*Second*, with respect to much of this evidence, it is admissible as background evidence to show the development and nature of the relationship between Wong and the defendant.

12

*See, e.g.*, *United States v. Oliviere*, 740 F. Supp. 2d 414, 422 (S.D.N.Y. 2010) ("It is well established in the Second Circuit that uncharged evidence of other acts is admissible to show the background of a conspiracy or a relationship of trust."). Among other things, this evidence, including of other benefits Wong offered to the defendant after Wong was approached in the federal investigation—including an Apple iPhone, a $25,000 contribution to an organization of which the defendant served on the board, and Nets tickets—helps to demonstrate why Wong expected that the defendant would be willing to assist him to obstruct the investigation (and thus why he would ask her to do so), and why she would agree to do so.

*Third*, and in any event, the evidence is admissible under Rule 404(b) to prove both the defendant's intent and absence of mistake or accident. The Government expects that the central disputed issue at trial is likely to be not whether the memorandum the defendant signed was false, or whether she deleted and/or failed to produce to the Government materials demanded by grand jury subpoenas, or whether she made misstatements to the Government, but whether she did these things with the requisite intent. The proffered evidence shows that the defendant received significant benefits from Wong, in particular, and from MCU, generally, under his leadership, both during her board service and after, such that the defendant had a motive to assist Wong to avoid scrutiny and potential prosecution. Similarly, the proffered evidence shows that the defendant had her own, independent motive to conceal the significant benefits she received from Wong and MCU—because some of them violated MCU policy, were obtained fraudulently, had no business purpose for MCU, and/or involved a misappropriation of MCU assets—to avoid scrutiny and potential prosecution herself. *See United States v. Willoughby*, 860 F.2d 15, 24 (2d Cir. 1988) ("When a defendant has been charged with attempted or actual obstruction of justice with respect to a given crime, evidence of the underlying crime and the defendant's part in it is admissible to

show the motive for [her] efforts to interfere with the judicial process."). Furthermore, this evidence is probative of the defendant's knowledge and/or absence of mistake or accident in obstructing the investigation and making a false statement as charged. Contrary to what the Government expects the defendant to assert at trial, it was no accident or mere coincidence that she concealed evidence of the benefits described above. The proffered evidence helps demonstrate why that is so, because it demonstrates that the defendant's receipt of these benefits was wrongful, and she knew that.

Nor is there a basis to preclude this evidence under Rule 403. The evidence is straightforward, non-sensational, and highly probative of the defendant's motive, intent, knowledge, and absence of mistake. There is no risk that this evidence will elicit a separate, heightened response from the jury that would prevent the jury's fair assessment of the evidence, particularly if an appropriate limiting instruction is given. *See, e.g.*, *Williams*, 205 F.3d at 34 (perceiving "no undue prejudice under Rule 403 [where] the evidence did not involve conduct more serious than the charged crime"); *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (evidence not unfairly prejudicial because it "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged").

Finally, the proffered evidence would not materially lengthen or complicate the trial, and much of the evidence the Government will seek to present in summary fashion, including through the use of summary charts, where possible.

14

## II.    EVIDENCE OF THE DEFENDANT'S CONCEALMENT OF BENEFITS SHE RECEIVED FROM MCU ON HER ANNUAL JUDICIAL FINANCIAL DISCLOSURE FORMS IS ADMISSIBLE

As outlined in the Complaint, the defendant failed to disclose the benefits she received from MCU on her annual judicial financial disclosure forms that she filed with New York State. This evidence is admissible as direct evidence, or in the alternative under Rule 404(b).

### A.  The Proffered Evidence

All New York State judges are required to file annual financial disclosure forms that identify, among other things, any directorship held by the reporting individual, whether compensated or not; any gifts, in excess of $1,000, received during the reporting period; and any reimbursements for expenditures, in excess of $1,000, received during the reporting period. (Compl. ¶ 13(a).)  The financial disclosure forms are available to the public upon request.  (*Id.*)  In each form since 2012 (which is the earliest year for which the court system maintained records) through 2018, the defendant filed an annual financial disclosure statement that failed to disclose any directorships held, including MCU, and did not disclose any expenses reimbursed or gifts received, including from MCU, as required.  (*Id.* at ¶ 13(b).)  However, as noted above, the defendant received compensation, expenses reimbursed, and gifts received that far exceeded the reporting threshold during each of those years.

### B.  Discussion

The above-proffered evidence is admissible for multiple reasons.

*First*, similar to evidence of the benefits themselves, the evidence is admissible as direct evidence because it is "inextricably intertwined with the evidence regarding the charged offense," and/or "necessary to complete the story of the crime on trial."  *Carboni*, 204 F.3d at 44 (internal quotation marks omitted).

15

The defendant's concealment on her judicial disclosure forms of gifts, benefits, and items of value she received from Wong and MCU is relevant to show that the defendant—at the time she received them—wanted to hide the benefits, strongly suggesting that she understood that they were, at a minimum, inappropriate. Evidence that helps to show that she thought the gifts, benefits, and items of value she received from Wong and MCU were inappropriate both sheds light on the relationship she had with Wong and provides relevant background to her efforts to conceal these gifts from the federal investigation.

*Second*, and in any event, the evidence is admissible under Rule 404(b). As discussed above, the Government expects the defendant will argue that there was nothing inappropriate that she received from Wong and MCU, and thus she had no motive to conceal gifts, benefits, and items of value she received from Wong and MCU from the federal grand jury investigation. Evidence that the defendant already had hidden these same things directly rebuts that claim and demonstrates why the defendant would want to continue to hide what she received. Indeed, this evidence demonstrates that even if the defendant did *not* think that the benefits were in any way improper, she still had a motive to hide them, because she had failed repeatedly to disclose them in the past.

Lastly, there is no basis to preclude this evidence under Rule 403. This evidence is not sensational or inflammatory or complicated, and it is highly probative of the defendant's motive and intent. There is nothing unfair about the admission of this straightforward evidence.

III.    **EVIDENCE THAT THE DEFENDANT WAS ADVISED TO RESIGN HER BOARD POSITION AT MCU AND THAT A JUDICIAL MISCONDUCT COMPLAINT WAS FILED AGAINST HER ARISING FROM HER SERVICE ON MCU'S BOARD IS ADMISSIBLE**

As outlined in the Complaint, the defendant was told to resign her position on MCU's board, committed to resign upon being so told, but then continued to serve on the board until a judicial misconduct complaint was filed against her in August 2016.  This evidence is admissible as direct evidence, or in the alternative under Rule 404(b).

**A.  The Proffered Evidence**

In or about April 2015, prior to becoming the chair of MCU's board, the defendant submitted an inquiry to the New York State Advisory Committee on Judicial Ethics (the "Committee") as to whether she could serve as the chair of the board.[2]  (Compl. ¶ 11(f) n.2.)  Her request was considered and denied, because it violated the rules governing judicial conduct for her to serve on MCU's board.  Apparently not content with the Committee's determination, she sought reconsideration and also reached out to MCU's then-chair, Mark Brantley, who was stepping down, for assistance with responding.[3]  Despite the Committee's decision that she was not permitted to serve as MCU's chair—and while she was attempting to seek reconsideration—she went forward anyway in assuming the chair position in May 2015.

---

[2]    The Advisory Committee on Judicial Ethics provides ethics advice to judges, justices, and quasi-judicial officials of the New York State Unified Court System about their own conduct, and helps judges comply with the Rules Governing Judicial Conduct.  A judge who takes any action in accordance with a formal written advisory opinion of the Advisory Committee on Judicial Ethics is "presumed proper" for purposes of any subsequent investigation by the New York State Commission on Judicial Conduct.  *See* New York State Judiciary Law § 212(2)(l).

[3]    The defendant concealed this email, along with many others, in response to the Second Subpoena, which had requested all correspondence with Brantley.

On or about July 1, 2015, after being told by a judge on the Committee and its chief counsel that the Committee would not reconsider its decision and the defendant should resign from MCU's board, she informed the Committee that she would resign and withdraw her inquiry to avoid a formal written decision on the matter.  The defendant, however, did not do as she said.

On the contrary, the defendant did not resign until more than a year later, and then only after the New York State Commission on Judicial Conduct (the "Judicial Commission") filed a complaint against her.  (*Id.*)  In particular, on or about June 24, 2016, the Judicial Commission's Administrator met with the defendant, who was then herself serving as a member of the Judicial Commission, to discuss concerns about the defendant's service on MCU's board as a result of MCU regularly being engaged in adversary proceedings in New York courts.[4]

The defendant, however, still did not step down, and on August 9, 2016, the Judicial Commission's Administrator informed her that her continued service on the MCU board would compel him to recommend to the Judicial Commission that it investigate the matter.  The defendant still did not resign from the MCU board, but instead requested a thirty-day leave of absence from her position at the Judicial Commission, and then resigned from the Judicial Commission on August 11, 2016.

On August 11, 2016, the same day the defendant resigned from the Judicial Commission, the Judicial Commission instituted a complaint that she chaired MCU's board notwithstanding that MCU was engaged regularly in adversary proceedings in New York courts.  Only after the

---

[4]    The defendant provided the Administrator an advisory opinion she received from the Committee in 2008, which stated that she could serve as long as MCU was not regularly engaged in adversary proceedings (which it was, and thus precluded her service).  The defendant did not inform the Judicial Commission that, more recently, the Committee had advised her that she had to resign from MCU's board or that she had in 2015 withdrawn her request for a written opinion after learning that her continued service would be prohibited.

complaint was filed did the defendant, finally, resign from MCU's board, on August 16, 2016.  As a result, the Judicial Commission dismissed the complaint. (*Id.* at ¶ 29(a) n.9.)

As discussed above, the defendant was questioned during multiple interviews by the Government about her service on MCU's board and during those interviews, she stated that she resigned because she was appointed as the presiding judge of the commercial division.  (*Id.* at ¶¶ 29(a), 42(a).)

### B.  Discussion

The above-proffered evidence is admissible both as direct evidence and under Rule 404(b).

*First*, the evidence is direct evidence of the crimes charged because, as discussed above, in the course of the defendant's ongoing obstruction, among the multiple false and misleading statements she made to federal officials, she made false and misleading statements about the basis for her resignation from MCU's board.  As such, the proffered evidence is necessary to prove that certain statements made were in fact false or misleading.[5]

*Second*, the evidence assists in demonstrating the defendant's understanding of the wrongfulness of the benefits she received from Wong and MCU after the defendant resigned.

*Third*, the evidence helps in demonstrating how close she was to Wong and vice-versa— so close that even after she was forced resign for serving on the board, she continued to seek and request benefits, gifts, and items of value from Wong, and that Wong continued to authorize them, notwithstanding that the resignation was prompted by a conflict of interest and that MCU continued to appear in state courts.

---

[5]    Similarly, the evidence provides context for why the defendant sought to conceal the email with Brantley requesting his help in convincing the Committee not to bar her from continued service on MCU's board.

*Finally*, and in any event, the evidence is admissible under Rule 404(b), because it shows that the defendant had a motive to obstruct the federal investigation. The fact that she went to such great lengths to maintain her position on MCU's board, and her ability to receive gifts, benefits, and items of value from MCU in connection with that position, helps to demonstrate why she would agree to assist Wong, and in particular, to seek to frustrate the investigation of MCU and Wong, so that investigation would not uncover both Wong's misconduct and her own. Similarly, the evidence helps to demonstrate that it was not a mistake or accident that the defendant concealed evidence of her gifts, benefits, and items of value she had received.

Lastly, there is no basis to preclude this straightforward evidence under Rule 403, as it is highly probative of the defendant's motive and intent, and not sensational or inflammatory or complicated.

## IV. EVIDENCE THAT THE DEFENDANT SOUGHT TO EVADE PERSONAL INCOME TAXES ON THE COMPENSATION SHE RECEIVED FROM MCU IS ADMISSIBLE

As detailed in the Complaint and above, the defendant received significant benefits from MCU. For some of those benefits, MCU provided the defendant annually with an IRS Form 1099 reporting a portion of those benefits as taxable income. The defendant disclosed that income on her federal tax returns, but then evaded taxes by falsely claiming expenses against that compensation on the Schedule C to her IRS Form 1040 personal income tax return. This evidence is admissible as direct evidence or in the alternative under Rule 404(b).

### A. The Proffered Evidence

Every year while the defendant served as an MCU board member, she received a Form 1099 reporting a portion of the benefits she received as taxable income. That income generally related to certain domestic and foreign travel of the defendant's guests on trips paid for by MCU.

The defendant's practice, it appears, was to report that income as compensation from her service as a board member on the Schedule C to her Form 1040 personal income tax returns. However, instead of paying income tax on that compensation, as she should have, she falsely declared expenses for travel against that income—even though MCU paid for all of her travel, and thus she had no such expenses—in order to declare falsely no net income.

As noted above, the Second Subpoena requested all documents regarding any items of value the defendant received from MCU. In response to that subpoena, the defendant produced one email pertaining to a Form 1099. However, she did not produce any of her Form 1099s or her personal income tax returns that reflected the money she received from MCU, including the Schedule Cs that falsely claimed expenses.

### B. Discussion

The above-proffered evidence is admissible both as direct evidence and under Rule 404(b).

*First*, the evidence is direct evidence of the crimes charged because, as discussed above, the defendant concealed her tax returns in response to a federal grand jury subpoena. As such, the tax returns that reflect compensation she received from MCU are necessary to prove that she concealed certain materials.

*Second*, and in any event, the evidence is admissible under Rule 404(b), because it shows that the defendant had a motive to obstruct the federal investigation, because she had already engaged in wrongdoing—and done so federally—in connection with certain of the same subjects about which she was being asked and from which documents were being sought from her.

Lastly, there is no basis to preclude this evidence under Rule 403. The evidence is straightforward, non-sensational, and highly probative of the defendant's motive, intent, knowledge, and absence of mistake. As with the evidence described above, there is no risk that

this evidence will elicit a separate, heightened response from the jury that would prevent the jury's fair assessment of the evidence. The defendant can also request an appropriate limiting instruction, to which the Government has no objection, that she is not on trial for tax or any other uncharged crimes.

## V.    EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANT'S FAMILY BACKGROUND, MARITAL STATUS, ANCESTRY, HEALTH CONDITION, AGE, OR ANY OTHER PERSONAL FACTOR UNCONNECTED TO GUILT SHOULD BE PRECLUDED

The Government is unaware of any lawful basis for the defendant to offer evidence or argument concerning her family background, marital status, ancestry, health, age, or any other similar factors. She should be precluded from doing so, and from mentioning such subjects in her opening statement, absent a showing that such a factor bears on her guilt. *See, e.g.*, *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy whom defendant had devoted his life to care for); *United States v. Battaglia*, No. S9 05 Cr. 774, 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); *United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

## VI.    EVIDENCE OR ARGUMENT CONCERNING THE POTENTIAL PUNISHMENT OR CONSEQUENCES, INCLUDING DISBARMENT, THAT THE DEFENDANT FACES IF CONVICTED SHOULD BE PRECLUDED

The defendant should also be precluded from offering evidence or argument concerning the potential punishment or consequences, including disbarment or loss of her judicial position, that she faces if convicted. Where the jury has no role at sentencing—such as in this case—it

"should be admonished to 'reach its verdict without regard to what sentence might be imposed.'"
*Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)).  This is so for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.*  There is no proper basis for the defendant to put these issues before the jury in any form, and the defendant should not be permitted to offer evidence or argument inviting the jury to consider them.

Similarly, the defendant should be precluded from offering evidence or argument that she could have been, or will be, separately punished or sanctioned by state, local, bar, or judicial authorities for the conduct at issue in this case.  Any such evidence or argument has no connection to her guilt and is improper.

## VII.    EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANT'S OR MCU'S PRIOR COMMISSION OF "GOOD ACTS" WHILE SHE WAS A BOARD MEMBER (OR OTHERWISE) OR NON-COMMISSION OF OTHER BAD ACTS SHOULD BE PRECLUDED

To the extent that the defendant may seek to present evidence or argument concerning her or MCU's prior commission of "good acts" while she was a board member or otherwise, including any philanthropic giving or other good deeds, or to offer evidence of her non-criminal activities to seek to disprove her guilt of the crimes charged, she should be precluded from doing so.  Specific-act propensity evidence is no more admissible to refute a criminal charge than it is to establish one.

It is settled law that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990).  Similarly, while a defendant may offer general testimony from a character witness about her reputation for a "pertinent trait of character," or the witness's opinion

of the defendant as regards that trait, *see* Fed. R. Evid. 404(a)(2)(A) & 405(a), a defendant can neither testify nor offer other proof to establish specific acts in conformity with that trait that are not an element of the offense. *See, e.g.*, *United States v. Benedetto*, 571 F.2d 1246, 1249-1250 (2d Cir. 1978) (evidence of defendant's specific acts improperly admitted because "character evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts"); *United States v. Fazio*, No. S2 11 CR 873, 2012 WL 1203943, at *5 (S.D.N.Y. Apr. 11, 2012) ("a defendant may not affirmatively try to prove his innocence by reference to specific instances of good conduct; character is to be proven by reputation or opinion evidence."), *aff'd*, 770 F.3d 160 (2d Cir. 2014); *United States v. Rivera*, No. 13 Cr. 149, 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) (precluding evidence of charitable giving).   The defendant should accordingly be precluded from offering evidence or argument, including in her opening statement, concerning any charity, philanthropy, or any other specific instance or instances of her prior good acts, or the lack of commission of other bad acts.

For the same reasons, the defendant should be precluded from offering this type of evidence or argument insofar as it relates to MCU, as any prior good acts by that or any other entity similarly have no bearing on the defendant's guilt.   Nor should the defendant be permitted to suggest that her alleged prior achievements, whether in the judiciary or otherwise, make it less likely that she committed the charged crimes.

## VIII.   EVIDENCE OR ARGUMENT CONCERNING WHETHER OTHER MCU BOARD MEMBERS AND SUPERVISORY COMMITTEE MEMBERS SIMILARLY MISAPPROPRIATED MONEY FROM MCU SHOULD BE PRECLUDED

As noted above, the defendant is free to argue that the reimbursements, benefits, and gifts that she obtained from MCU were appropriate based on admissible evidence probative of her intent at the time she received the items of value.   However, she should not be permitted to offer evidence

in support of an argument that because other board members or supervisory committee members may have received payments or other benefits similar to those she received, hers must have been appropriate, any more than the Government would be permitted to offer evidence in support of an argument that because others may have committed embezzlement, she too must have engaged in embezzlement. *See, e.g.*, *United States v. Oldbear*, 568 F.3d 814, 821 (10th Cir. 2009) (affirming preclusion of evidence in embezzlement case as to how persons other than the defendant used funds because "only [the defendant's] actions and state of mind were material to her guilt"); *United States v. Gatto*, 986 F.3d 104, 129 (2d Cir. 2021) ("[T]hat others are engaging in improper behavior does not make it lawful.")

Moreover, even were such evidence and argument relevant (and it is not), it should be barred under Rule 403. Evidence and argument of other board members receipt of benefits from MCU would necessarily lead to a trial within a trial as to whether the payments to others to which the defendant points were or were not analogous to those made by the defendant, and would be very likely both to confuse and distract the jury and unduly and materially lengthen the trial. Indeed, were the defendant to offer evidence suggesting that other board members received similar benefits, the Government would expect to offer evidence regarding, among other things, whether or not those payments also violated MCU policy, whether or not others committed fraud or instead merely accepted benefits, and whether or not others hid what they received, all of which would lengthen the trial, require additional documentary and likely testimonial evidence, and distract from the relevant issues. In such a circumstance, the Government also would expect to offer evidence about the comparative size and nature of the benefits received by the defendant, which would have the same effect.

## IX.   EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANT'S PRIOR ALLEGATION THAT THE GOVERNMENT ENGAGED IN "OUTRAGEOUS" MISCONDUCT THAT VIOLATED THE CONSTITUTION, THE LAW, AND/OR THE JUSTICE MANUAL SHOULD BE PRECLUDED

As the Court is aware, in her motion to suppress, the defendant asserted that the Government engaged in "outrageous" government misconduct in conducting voluntary interviews with her on April 6, 2018 and June 8, 2018, prior to her retaining counsel, because it failed to inform her that she was allegedly a "target" of the investigation, and that this conduct continued after her retention of counsel, because the Government failed to apprise her of a conflict with her then-counsel, all of which warranted the suppression of all of her statements to investigators.  (Dkt. No. 34.)   Whatever the merits of those assertions—and they were both factually and legally meritless—they were for this Court in weighing the defendant's motion, which was denied.  They are not for the jury in weighing the defendant's guilt.  The sole question before the jury is the guilt of the defendant, not the decisions of federal prosecutors or the conformity of them with the Constitution, the law, or the Department of Justice Manual.  Any evidence or argument concerning the Government's supposed violation of the Constitution, the law, or the Justice Manual, including regarding advice that, in the defendant's view, should be provided to witnesses or others, would serve no purpose other than to seek to distract the jury from evidence of the defendant's guilt or to seek to encourage jury nullification.  It therefore should be precluded.  *See, e.g.*, *United States v. Knox*, 687 F. App'x 51, 54-55 (2d Cir. 2017) (instructing jury that the "government is not on trial" is "appropriate" (internal quotation marks omitted)); *United States v. Saldarriaga*, 204 F.3d 50, 52 (2d Cir. 2000) ("The Court properly charged the jury to base its decision on the evidence or lack of evidence that had been presented at trial, and to focus solely on whether, in light of that evidence

or lack of evidence, the jury was convinced beyond a reasonable doubt that the defendant was guilty of the crimes with which he was charged.").

## X.   EVIDENCE OR ARGUMENT CONCERNING THE GOVERNMENT'S CHARGING DECISIONS SHOULD BE PRECLUDED

Juries are routinely and properly instructed that they should not consider persons not on trial. *See, e.g.*, *United States v. Muse*, No. 06 Cr. 600 (DLC), 2007 WL 1989313, at *22 (S.D.N.Y. July 3, 2017). That instruction should be given here. In addition, the defendant should be precluded from offering argument about what charges were brought or not brought against other MCU board members or others. *See United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting [the defendant]"); *see also United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997) (a "selective prosecution defense is an issue for the court rather than the jury"). A prosecuting authority's motives or views underlying its "charging decisions are not proper subjects for cross-examination and argument." *United States v. Re*, 401 F.3d 828, 833 (7th Cir. 2005). Those subjects have nothing to do with the defendant's guilt, and introducing them would only serve to confuse or distract the jury.

Similarly, the defendant should be precluded from offering argument that the Government's decision to not charge her with embezzlement or other crimes means she did not engage in other misconduct, or that such misconduct must not have been serious, much less criminal. The Government's decision not to prosecute someone else, or not to bring certain charges against a defendant, is just as irrelevant to guilt as the Government's decision to bring certain charges against the defendant. *See generally United States v. Armstrong*, 517 U.S. 456,

464 (1996). The Government's charging decisions are irrelevant to the issues at trial, and introducing them would serve no purpose other than to confuse or distract the jury, or inappropriately suggest nullification.

**XI.  EVIDENCE OR ARGUMENT CONCERNING ANY ALLEGED RELIANCE ON ADVICE OR APPROVAL OF COUNSEL IN ENGAGING IN THE CHARGED CONDUCT SHOULD BE PRECLUDED, UNLESS AND UNTIL THE DEFENDANT ESTABLISHES AN ADMISSIBLE FACTUAL BASIS**

The Government also moves (1) for an order that the defendant promptly provide written notice and discovery concerning any purported advice-of-counsel defense and (2) to preclude the defendant from offering argument—including in her opening statement, if any—concerning alleged reliance on the advice or approval of counsel in engaging in the charged conduct, unless and until the defendant establishes an admissible factual basis for the required elements of an advice-of-counsel defense.

**A.  Relevant Background**

The Government previously inquired on multiple occasions whether the defendant intended to advance an advice-of-counsel defense, and the defendant failed to answer definitively that inquiry.

**B.  Applicable Law**

The advice-of-counsel (or reliance-on-counsel) defense is a more specific form of the defense of good faith, available in limited circumstances in which a good faith instruction may otherwise be applicable. *See, e.g.*, *United States v. Greenspan*, 923 F.3d 138, 146 (3d Cir. 2019); *see also* Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 8-04. Advice-of-counsel "is not a free-standing defense." *United States v. Van Allen*, 524 F.3d 814, 823 (7th Cir. 2008) (internal quotation marks omitted).

To establish a colorable advice-of-counsel defense, and thus be entitled to a jury instruction with respect to those offenses to which it may apply, the defendant must be able to identify admissible evidence that:

> 1. Before taking action, [she] in good faith sought the advice of an attorney whom he considered competent to advise him on the matter; and
>
> 2. [She] consulted this attorney for the purpose of securing advice on the lawfulness of his possible future conduct; and
>
> 3. [She] made a full and accurate report to his attorney of all material facts that he knew; and
>
> 4. [She] then acted strictly in accordance with the advice of this attorney.

*United States v. Scully*, 877 F.3d 464, 478 (2d Cir. 2017) (In addition to the model instruction in Sand *et al.*, *Modern Federal Jury Instructions*, "[w]e also refer district courts to the model instructions drafted by our sister circuits, particularly the Seventh Circuit's model, which reads [as set forth above]."); *see also Williamson v. United States*, 207 U.S. 425, 453 (1908); *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012); *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997); *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989).

"Each requirement must be satisfied." *Colasuonno*, 697 F.3d at 181. Where the defendant fails to meet one or more requirement, she is not entitled to a jury instruction. *Id.*; *see also, e.g.*, *Greenspan*, 923 F.3d at 146-47; *Scully*, 877 F.3d at 476; *Evangelista*, 122 F.3d at 117. Nor is she entitled to argue, directly or indirectly, that she has such a defense. *See, e.g.*, *United States v. Quinones*, 417 F. App'x 65, 67 (2d Cir. 2011) (affirming denial of instruction and order precluding defense from arguing advice of counsel; "defendants are not entitled to such an instruction unless there are sufficient facts in the record to support the defense," and "the defendants [in this case] have not shown the required factual predicate for an advice-of-counsel defense"); *United States v.*

*Atias*, No. 14 Cr. 403 (DRH), 2017 WL 563978, at *3 (E.D.N.Y. Feb. 10, 2017) ("All available information indicates that the [pertinent] attorney represented [another], not defendants. Accordingly, the term 'advice of counsel' should not be employed in referring to [the attorney]. Doing so would be legally inappropriate and likely to mislead the jury.").

In short, the "situations in which the advice-of-counsel defense may be employed are severely limited." *Lurie v. Wittner*, 228 F.3d 113, 134 (2d Cir. 2000).

### C. Notice of and Discovery Concerning an Advice-of-Counsel Defense

Given the complexity and potential issues concerning an advice-of-counsel defense, courts routinely order defendants to provide notice of whether they intend to advance such a defense in advance of trial, and, if so, to provide discovery concerning the defense. *See, e.g.*, *United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441, at *8 (S.D.N.Y. Jan. 18, 2018). That "disclosure should include not only those documents which support [the] defense, but also all documents (including attorney-client and attorney work product documents) that might impeach or undermine such a defense." *United States v. Hatfield*, No. 06 Cr. 550 (JS), 2010 WL 183522, at *13 (E.D.N.Y. Jan. 8, 2010).

When a defendant asserts a defense based on her reliance on the advice of counsel, she waives any attorney-client privilege over her communications with the counsel. *See, e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes"). As a result, defendants asserting such a defense must disclose to the government "any communications or evidence defendants intend to use to establish the defense" and "even otherwise-privileged communications that defendants do *not* intend to use at trial, but that are relevant to proving or undermining the advice-of-counsel defense, are subject to disclosure in their

30

entirety." *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018) (internal quotation marks omitted; emphasis in original) (collecting cases).  Failure to make such a disclosure results in forfeiture of the defense.  *See Bilzerian*, 926 F.2d at 1291 (affirming refusal to let the defendant testify about his "good faith regarding the legality" of the charged conduct unless he was also subject to cross-examination regarding communications with his attorney); *see also United States v. Wells Fargo Bank N.A.*, No. 12 Civ. 7527 (JMF), 2015 WL 3999074, at *1 (S.D.N.Y. June 20, 2015) (civil defendant asserting advice-of-counsel must "make a full disclosure during discovery and the failure to do so constitutes a waiver of that defense" (internal quotation marks omitted)).

### D.  Federal Rule of Evidence 104

Preliminary questions concerning the admissibility of evidence, including whether evidence is relevant or a privilege exists, are to be determined by the Court.  Fed. R. Evid. 104(a).  The Court has discretion to order a hearing to assist it in resolving such questions.  Fed. R. Evid. 104(c)(3) (the court "must conduct a[] hearing" when "justice so requires").  The Court's authority to resolve such questions is rooted in its "inherent authority to manage the course of trials."  *United States v. Valencia*, 826 F.2d 169, 171 (2d Cir. 1987) (internal quotation marks omitted).  At such a hearing, and more generally, the proponent of evidence bears the burden of demonstrating its admissibility by a preponderance of the evidence.  *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *see also United States v. Brooks*, No. 08 Cr. 35 (PKL), 2008 WL 2332371, at *1 (S.D.N.Y. June 4, 2008) ("As the proponent of the proposed testimony, defendant has the burden of establishing admissibility by a preponderance of the evidence."); *United States v. Sabir*, No. S4 05 Cr. 673 (LAP), 2007 WL 1373184, at *6 (S.D.N.Y. May 10, 2007) (the "burden of showing that proffered testimony is offered to negate the *mens rea* element of a crime and not in support of some improper defense theory falls squarely on the defendant" (internal quotation

marks omitted)); *United States v. Camacho*, 353 F. Supp. 2d 524, 536 (S.D.N.Y. 2005) ("defendants as proponents of the evidence bear the burden of [admissibility]").

The Federal Rules of Evidence, other than with respect to privileges, do not apply at a preliminary hearing. Fed. R. Evid. 104(a); Fed. R. Evid. 1101(d)(1). Accordingly, statements that would be inadmissible hearsay at trial are admissible at such a hearing. *See, e.g.*, *Bourjaily*, 483 U.S. at 178; *United States v. DeJesus*, 806 F.2d 31, 34 (2d Cir. 1986). One circumstance in which a preliminary hearing may be ordered is to determine the propriety of a proffered defense. *See, e.g.*, *United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997) ("[I]t is appropriate for a court to hold a pretrial evidentiary hearing to determine whether a defense fails as a matter of law."). This is so for good reason: "no proper interest of the defendant would be served by permitting his legally insufficient evidence to be aired at trial, and interests of judicial economy suggest that the jury should not be burdened with the matter." *United States v. Villegas*, 899 F.2d 1324, 1343 (2d Cir. 1990); *see also* Fed. R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."). A preliminary hearing may be ordered to consider a proffered advice-of-counsel defense just as it may be ordered to consider any other defense. *See also Scali*, 2018 WL 461441, at *8 n.4 ("Guided by efficiency and judicial economy, it behooves the Court to address [advice of counsel] before trial.").

Alternatively, a court may order a defendant not to offer evidence in front of the jury in support of a proffered advice-of-counsel defense until such time as there is a sufficient basis in the record. *See, e.g.*, *United States v. Brik*, No. 15 Cr. 78 (SRN), 2016 WL 3753080, at *4 (D. Minn. July 11, 2016) ("Only after hearing witness testimony will the Court be in a position to determine whether such evidence is admissible. Defense counsel shall request a sidebar or hearing outside

the presence of the jury prior to eliciting any testimony that concerns legal communications . . . .").

### E.  Discussion

#### 1.  The Defendant Should Be Ordered Promptly to Provide Written Notice and Discovery Concerning Any Alleged Advice-of-Counsel Defense

As noted above, the defendant has failed to say firmly whether she plans to assert an advice-of-counsel defense.  She has, however, suggested at times, through counsel, that her conduct may have been informed in some, unspecified way, by her then-counsel, Mr. Archibald.  Accordingly— and particularly since there appears to be no valid basis for the defense—the defendant should be ordered promptly to provide (i) written notice of any alleged advice-of-counsel defense, including its bases, scope, and to which specific counts she believes it applies, and (ii) any discovery materials in support of this defense, to the extent not already in the Government's possession. *See Scali*, 2018 WL 461441, at *8; *Hatfield*, 2010 WL 183522, at *13.

#### 2.  The Defendant Should Be Precluded From Offering Argument—Including in Her Opening Statement, If Any—Concerning an Alleged Advice-of-Counsel Defense Unless and Until She Establishes an Admissible Factual Basis for the Elements of the Defense

The Government is unaware of any basis for the defendant to offer an advice-of-counsel defense.  Indeed, the defendant appears unable to meet a single part of the rigorous four-part test.  As an initial matter, Mr. Archibald was not retained until after the defendant was served with the Second Subpoena, and after she had already participated in obstruction of justice over the course of five months.  That alone warrants preclusion.  *See Atias*, 2017 WL 563978, at *3

In any event, "the thrust of [the advice-of-counsel defense] is that the defendant, on the basis of counsel's advice, believed h[er] conduct to be lawful and thus could not be found to have had unlawful intent."  *Beech-Nut Nutrition Corp.*, 871 F.2d at 1194; *see also Scully*, 877 F.3d at

478 (defense requires that, "[b]efore taking action, he in good faith sought the advice of an attorney").  Here, the Government is unaware of any factual basis to find that, prior to engaging in the charged conduct, the defendant spoke with Mr. Archibald or any other attorney for the "purpose of securing advice on the lawfulness of [the defendant's] possible future conduct," *id.*  Nor is there any factual basis of which the Government is aware to find that, before acting, the defendant "made a full and accurate report" to Mr. Archibald or any other attorney of all "material facts," *id.*  And in any event, no lawyer, acting properly, would advise a client to withhold documents called for by a federal grand jury subpoena or to make false statement to federal officials.

In short, the defendant cannot come close to establishing a basis in admissible evidence for an advice-of-counsel defense.  Until such time as she does so, any argument in support of such a defense—including in the defendant's opening statement, if any—should be precluded.  *See, e.g.*, *Quinones*, 417 F. App'x at 67.  For the same reasons, the defendant should be precluded from offering evidence for the purported purpose of attempting to satisfy any of the requirements of an advice-of-counsel defense, unless she first establishes, either in a preliminary hearing before or during trial, or by relying on evidence otherwise admissible at trial, that she has sufficient admissible evidence to satisfy all the defense's requirements.  *See, e.g.*, *Colasuonno*, 697 F.3d at *4.

> **3. The Defendant Should Be Precluded From Otherwise Offering Argument—Including in Her Opening Statement, If Any—Or Evidence Suggesting She Is Not Guilty Because Mr. Archibald or Any Other Attorney Purportedly "Approved" of the Lawfulness of the Defendant's Conduct or Did Not Warn Her Against Certain Conduct**

The defendant should not be permitted to advance through the back door what would amount to a quasi-advice-of-counsel defense—that is, having failed to meet the requirements for the defense, to argue nonetheless that she should not be found guilty because another lawyer

purportedly "approved" of, did not object to, or was involved in some way in the defendant's conduct—when she cannot advance an advice-of-counsel defense. That is precisely the kind of argument that is "likely to mislead the jury," *Atias*, 2017 WL 563978, at *3, into thinking that the defendant has a defense that the law says, in no uncertain terms, she does not have. The advice-of-counsel defense is subject to multiple and meaningful restrictions—including that a defendant seek the advice of lawyer acting as her lawyer, communicate all material facts to her lawyer, and strictly follow the advice of her lawyer—because a defense based on alleged legal advice or approval that does not meet these strictures is ripe for abuse. The defendant should not be permitted to engage in an end-run around the defense's requirements. *Cf. S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013) (The defendant "argues that the presence of lawyers is relevant to the overall context of the transaction, but that is such a fine-grained distinction from a reliance on counsel defense, that it would likely confuse the jury. A lay jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly 'blessed' the legality of all aspects of a transaction. . . . This misunderstanding would give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense."); *see United States v. Blagojevich*, 794 F.3d 729, 738 (7th Cir. 2015) (There is no "advice-of-counsel defense without demonstrating advice of counsel.").

To be sure, the defendant, if she elects to testify, and within the bounds of the Federal Rules of Evidence, may talk about whether she believed herself to be acting wrongfully. But that this subject is generally proper does not mean that all testimony (or other evidence, if any exists) purportedly offered on this subject is admissible, or that the defendant may argue that evidence means something that, as a matter of law, it does not. On the contrary, as discussed above, a

defendant is not permitted to offer evidence of the involvement of lawyers or to suggest that she should be acquitted because they purportedly approved of or did not warn against certain conduct unless the defendant can satisfy each of the several requirements of an advice-of-counsel defense. Accordingly, before the defendant offers any purported such evidence, to the extent not otherwise admissible, or argument in the presence of the jury, the Court should order a hearing under Rule 104. At a minimum, the defendant should have to describe such evidence or argument fully to the Court and the Government, before it is heard by the jury, so that it may be cabined, as is likely to be necessary, and the jury instructed appropriately. And under no circumstance should the defendant be permitted to offer evidence or argument suggesting that the defendant relied on the "assistance" or "approv[al]" of another lawyer acting as a lawyer, a defense that has no apparent basis in fact, no basis in law (unless she can establish an advice-of-counsel defense, which she cannot), and in any event fails under Federal Rule of Evidence 403. *See Atias*, 2017 WL 563978, at *3; *Tourre*, 950 F. Supp. 2d at 684.

Similarly, the defendant should be precluded from offering evidence or argument concerning Mr. Archibald's background, experience, or abilities—whether designed to cast him in a positive or a negative light—because none of that is relevant to her guilt, and all of it would likely lead to a trial within a trial.

## **CONCLUSION**

For the foregoing reasons, the Government's motions *in limine* should be granted.

DATED:     October 29, 2021
           New York, New York

                         Respectfully submitted,

                         DAMIAN WILLIAMS
                         United States Attorney

                  By: s/ Eli J. Mark
                         Eli J. Mark
                         Daniel C. Richenthal
                         Jonathan E. Rebold
                         Assistant United States Attorneys
                         (212) 637-2431/2109/2512
                         Alona Katz
                         Special Assistant United States Attorney