MORRISON | FOERSTER

250 WEST 55TH STREET
NEW YORK, NY 10019-9601

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI
SINGAPORE, TOKYO, WASHINGTON, D.C.

November 29, 2021

Writer's Direct Contact
+1 (212) 468.8049
CCohen@mofo.com

*By ECF and Hand Delivery*

The Honorable Lewis A. Kaplan
United Stated District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *United States v. Sylvia Ash*, 19 Cr. 678 (LAK)

Dear Judge Kaplan:

We respectfully submit this letter motion to request that the Court compel the government to produce certain materials, consistent with its obligations pursuant to *Giglio v. United States*, 405 U.S. 150 (1972) and *Brady v. Maryland*, 373 U.S. 83, 104 (1963), relating to the government's case agent, a Special Agent with the United States Department of Justice ("DOJ") assigned to the United States Attorney's Office for the Southern District of New York ("USAO SDNY") (the "Agent").[1]  As set forth more fully below, since our request is the product of the government's unwarranted delay in producing information that was uniquely in its possession and critical to the defense, we further request a brief adjournment of commencement of trial until Monday, December 6, 2021.[2]  This brief adjournment will provide Ms. Ash sufficient time to determine what, if any additional relief she may seek from the Court and allow her to learn the full scope of arguments and cross examination topics available to her at trial.

*Background*

On Sunday, November 28, 2021 at 10:06 p.m., the government produced a number of documents to Ms. Ash for the first time, including a piece of 3500 material identified as 3535-284, which was a one-line handwritten note (author unknown), dated November 28, 2021, stating "[Agent's initial] has an account w/ MCU."  A redacted copy of 3535-284 is attached hereto as Exhibit A.  At 11:37 p.m. that same night, the undersigned emailed the

---

[1] At the request of the government, we have anonymized the Agent for purposes of this filing.
[2] As the jury pool is expected at the Courthouse tomorrow morning, we leave it in the Court's discretion whether to move forward with jury selection tomorrow and then inform the jury that trial will begin on Monday morning.

MORRISON | FOERSTER

The Honorable Lewis A. Kaplan
November 29, 2021
Page Two

government and asked it to confirm that 3535-284 in fact meant that the Agent, who has served as the lead case agent in the above-referenced matter (and on the USAO SDNY's investigation of the Municipal Credit Union ("MCU") more generally), has an account with the MCU.

On November 29, 2021, at 9:12 a.m., counsel again requested confirmation of our interpretation of 3535-284 to which AUSA Mark responded at 9:29 a.m. "that is correct." The undersigned, in turn, responded at 11:48 a.m., stating Ms. Ash's position that the government's disclosure in 3535-284 was "woefully inadequate" and in violation of the government's disclosure obligations. Given the looming trial date, we further requested that by 1:00 p.m. today the government produce materials responsive to eleven specific requests (the "Requested Materials"), which sought additional information regarding the Agent's relationship with the MCU,.

The Requested Materials were as follows:

1. The type of account(s) that the Agent (or any member of his/her immediate family) holds at the MCU.

2. The date that any account identified in #1 was opened, and, if applicable, closed.

3. The average monthly balance in any account identified in #1 for 2017 through the present and any interest earned on any such account(s).

4. Whether the Agent (or any member of his/her immediate family) has taken out a loan of any type with the MCU.

5. When any loan identified in #4 was made to the Agent (or any member of his/her immediate family).

6. The amount and terms of any loan identified in #4.

7. Any communications between the Agent (or members of his/her immediate family) and any employee or representative of the MCU (other than in the Agent's official capacity connected to the MCU investigation/prosecutions).

8. Any benefits that the Agent (or members of his/her immediate family) received as a result as the Agent's membership with the MCU.

9. Whether the Agent (or any member of his/her immediate family, as identified in #1, #4, #7, or #8) has voted in any meetings of shareholders of the MCU or authorized any person to act for the Agent (or them) by proxy at any such meetings.

MORRISON | FOERSTER

The Honorable Lewis A. Kaplan
November 29, 2021
Page Three

> 10. When the Agent first disclosed to the USAO SDNY that the Agent (and any member of his/her immediate family, if applicable) holds an account at the MCU.
>
> 11. Any conflict of interest waiver sought by the Agent in connection with the MCU investigation.

At 1:01 p.m. today, AUSA Mark responded, denying that Ms. Ash was entitled to the Requested Materials. AUSA Mark further attached an additional piece of 3500 material for the Agent, 3535-285, which AUSA Mark represented was prepared prior to the undersigned's 11:48 a.m. email of today and appears to indicate that the Agent has an MCU account that was opened in approximately 2007 and, in addition, that the Agent has "one loan currently, since approx. 2016" and this loan "pre-dates the investigation."

In AUSA Mark's 1:01 p.m. email today, the government further requested that Ms. Ash inform the government by 3:00 p.m. today if she intended to make argument or elicit cross-examination relating to Agent's status as an MCU account holder and indicated that absent Ms. Ash's agreement to refrain from doing so, the government would seek Court intervention.[3]

At 6:04 p.m., the undersigned transmitted a letter to the government indicating that counsel remained willing to discuss the government's refusal to produce the Requested Materials but that, in the, absence of production of the Requested Materials by 6:30 p.m., Ms. Ash reserved the right to seek relief from the Court. The government responded via email at 7:26 p.m. that it was reviewing the request with supervisors in the Public Corruption Unit and that it expected "to be in a position to respond to your request later this evening (whether substantively or simply to confirm our previously stated position), and we also may file a motion with the Court, as we mentioned earlier."

*The Government's Disclosure Violations*

Since at least 2017, the government has been investigating fraud and financial misconduct at the MCU. Throughout that time, the Agent has served as the government's lead investigator on the case, participating in dozens and dozens of interviews, including with MCU employees past and present as well as Ms. Ash, and regularly serving as the affiant on sworn documents submitted to the court, including search warrant applications and criminal complaints, including the Complaint filed against Ms. Ash on October 4, 2019.

Notwithstanding this approximately four-year investigative history, the government disclosed for the first time, less than 36 hours before trial, that the Agent held an account with the MCU. No information was provided about the nature of the account, how long it

---

[3] A copy of the above email exchanges, in their entirety redacted to omit the Agent's identity, is attached hereto as Exhibit B and 3535-285 is attached hereto as Exhibit C.

MORRISON | FOERSTER

The Honorable Lewis A. Kaplan
November 29, 2021
Page Four

had been open or, indeed, anything more than its mere existence. Only after counsel for Ms. Ash requested additional information about the Agent's relationship with the MCU did the government disclose that in addition to the account, the Agent presently has an outstanding loan of an undisclosed amount with the MCU. Despite repeated requests, Ms. Ash has received no information about either the account or the nature or size of the loan other than the approximate year that the Agent opened the account and entered into the loan.

*The Government's Brady and Giglio Obligations*

The government's position that Ms. Ash is not entitled to the Requested Materials because they are not relevant to the Agent's credibility and bias—and the related implication that the Agent's relationship with the MCU and the Agent's failure to disclose the relationship in multiple sworn filings (and perhaps to the prosecution team and the USAO SDNY) is somehow irrelevant—is wholly without merit. Ms. Ash is entitled to have the government fulfill its disclosure obligations and respectfully requests that the Court compel the government to do so by producing the Requested Materials.

*Giglio v. United States*, 405 U.S. 150 (1972) and its progeny require the government to produce evidence that may be used to "impeach a Government witness." *United States v. Roberts*, 2001 WL 1602123, at *15 (S.D.N.Y. Dec. 14, 2001). *Brady v. Maryland*, 373 U.S. 83, 104 (1963) further requires the government to produce evidence that is "material" to a defendant's guilt or potential punishment. *Roberts*, 2001 WL 1602123, at *15. Here, the Agent's financial relationship with the MCU is highly material and constitutes impeachment material in numerous ways.[4] First, the Agent's status as an MCU member and account holder means the Agent potentially stood to benefit from any restitution awarded to the MCU as a result of the investigation or, alternatively, to be harmed by any failure to obtain such restitution. The Agent was, in effect, a potential victim of the crime the Agent was investigating. As such, the Agent's affiliation with the MCU is relevant to the Agent's potential bias in conducting the investigation.

Additionally, the Agent's failure to disclose the Agent's relationship with the MCU in numerous sworn documents filed with the court is directly relevant and probative of both the Agent's credibility and potential bias. Also, as discussed further below, the Agent's potential failure to comport with the DOJ's ethical guidelines and with federal statutes relating to conflicts of interest are further grounds for impeachment. This includes, for instance whether the Agent ever informed anyone at the USAO SDNY and/or DOJ about his/her financial relationship with the MCU in advance of or during his/her work on the MCU investigation and whether the Agent sought an ethics opinion or waiver on the matter.

---

[4] As a not-for-profit institutions, credit unions such as the MCU do not have shareholders. Instead, profits are returned to account holders (called "members") through, for instance, more favorable interest rates and lower fees for services or dividends for certain types of accounts. *See, e.g.*, "About MCU" webpage at: https://www.nymcu.org/aboutmcu/what-is-a-credit-union.aspx.

MORRISON | FOERSTER

The Honorable Lewis A. Kaplan
November 29, 2021
Page Five

Finally, as the Agent's testimony about, *inter alia*, Ms. Ash's statements to the government is expected to be a central part of the government's trial evidence, questions about the Agent's credibility plainly impact issues of guilt and thus implicate *Brady*.

The government's *de minimis* disclosures raise more questions than they answer. For instance, 18 U.S.C. § 208 sets forth prohibitions for executive branch employees' involvement in, among other things, "investigation[s]" and "arrest[s]" relating to an organization in which they have a financial interest. Similarly, 5 C.F.R 2635.101(b) also identifies that a basic obligation of public service is that "[e]mployees shall not hold financial interests that conflict with the conscientious performance of duty." Moreover, the DOJ Manual, Section 1-4.020 directs DOJ employees to contact designated ethics officials for "advice or approval" when the employee is "as to participate in a matter that might cause a reasonable person to question or his or her impartiality." Additionally, DOJ Manual Section 1.4.100 directs employees to the DOJ's website regarding conflicts of interests "[f]or information concerning financial and personal conflicts of interest." That DOJ website states as follows: "[a]n employee is prohibited from participating in any matter in which he has a financial interest."[5] Given all these potential violations of federal law and DOJ policy, the Requested Information is particularly subject to disclosure under *Giglio*, *Brady*, and their progeny.

*Prejudice to Ms. Ash*

By its refusal to provide the Requested Materials (and its suggestion that it might seek the Court's intervention to limit counsel's argument about or cross examination of the Agent about the Agent's account and loan at the MCU), the government is exacerbating a problem of its own creation and thereby denying Ms. Ash her right to present a legally appropriate defense. The government has known about the Agent's relationship with the MCU for the entirety of its four year investigation.[6] Yet, an incredibly barebones disclosure of the relationship was first made less than 48 hours before trial was set to commence. Now, instead of seeking to immediately rectify its disclosure failure, the government has doubled-down on the misplaced belief that Ms. Ash has no right to information that (a) is plainly in the government's possession and (b) is required to be disclosed under *Brady* and *Giglio*.

In the absence of the Requested Materials, Ms. Ash is severely prejudiced both in her ability make an opening argument and to cross examine the Agent. The government's position seems to be, in effect, that it can correct its disclosure violations by refusing to acknowledge that they exist. Yet, as a result of its belated disclosure of the Agent's financial ties to the MCU and an unwillingness to provide any but the most rudimentary information,

---

[5] https://www.justice.gov/jmd/conflicts
[6] The government has refused to inform counsel when the assigned Assistant United States Attorneys learned about the Agent's financial relationship with the MCU and thus the undersigned does not know if the prosecution team first learned of the conflict last night, November 28. But, obviously the Agent, an employee of USAO SDNY and DOJ, has been aware of the relationship throughout the duration of the investigation.

MORRISON | FOERSTER

The Honorable Lewis A. Kaplan
November 29, 2021
Page Six

the government is in violation of its disclosure obligations and Ms. Ash's ability to defend herself at trial is critically and severely diminished.

    Accordingly, Ms. Ash respectfully requests that the Court order the government to produce the Requested Materials immediately and that the Court grant a brief adjournment of the commencement of trial, until Monday, December 6, 2021, to permit Ms. Ash to review those materials and determine what, if any, additional information the defense may require, as well as what, if any, further applications to make to the Court.

*Conclusion*

    For all of the foregoing reasons, we respectfully request the Court direct the government to produce the Requested Materials immediately and the Court adjourn the commencement of trial in this matter until December 6, 2021.

Respectfully submitted,

Carrie H. Cohen

cc:    Counsel of record (via ECF)