**MORRISON | FOERSTER**

250 WEST 55TH STREET
NEW YORK, NY 10019-9601

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI
SINGAPORE, TOKYO, WASHINGTON, D.C.

December 6, 2021

Writer's Direct Contact
+1 (212) 468.8049
CCohen@mofo.com

*By ECF and By Hand*

The Honorable Lewis A. Kaplan
United Stated District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *United States v. Sylvia Ash*, 19 Cr. 780 (LAK)

Dear Judge Kaplan,

      Counsel for Ms. Ash respectfully submits this letter to preclude the government from seeking introduce newly identified documents (marked as Government Exhibits 542-46), as well as Government Exhibits 517 and 526, and in further opposition to the government's December 1, 2021 fourth motion *in limine* (the "Dec. 1 Gov't Motion" (ECF No. 136)).  For the reasons set forth below, the government should be precluded from introducing evidence about the structure and functioning of the New York State Commission on Judicial Conduct (the "Commission"), certain state training materials, state judicial laws and regulations, and that Ms. Ash hypothetically could have faced professional sanctions for allegedly incomplete judicial disclosure forms (the "Disclosure Forms").

*Background and Recent Government Productions*

      As the Court is aware, in her October 29, 2021 motion *in limine*, Ms. Ash sought to preclude the introduction of any evidence relating to alleged judicial misconduct on the grounds that it would be unfairly prejudicial and result in a "mini-trial" before the jury that would result in unnecessary delay and be confusing for the jury.  (ECF No. 95 at 15.)

      At oral argument on November 18, 2021, the Court denied this motion ("[t]he question is is it coming in on the government's case? The answer to that is yes").  (Nov. 18, Tr. at 29:22-23.)  In so ruling, the Court noted "You have a form.  If the state system is anything like the federal system, there is probably an instruction sheet or some equivalent.  Maybe there isn't, but there's a form, and there is possibly some instruction, and there is her answer.  And there is the fact, whatever the fact turns out to be.  And it will be up to the jury to decide whether the form was ambiguous, whether the failure to disclose there means

MORRISON | FOERSTER

Honorable Lewis A. Kaplan
December 6, 2021
Page Two

anything. And the fact that 175 other people might have come to different conclusions is not a place we're going to go, nor is expert testimony or anything like that." (Nov. 18 Tr. at 28:19-29:3.)

     Based on this ruling, counsel for Ms. Ash limited her opening statement with respect to the Disclosure Forms to the argument that Ms. Ash may have made "mistakes on forms she needed to fill out as a state judge," (Nov. 30 Tr. at 47:13), and did not address the question of potential sanctions Ms. Ash might face or the nature thereof related to those forms. In contrast, during its opening statement on November 30, 2021, the government referred to things of value Ms. Ash had received from the Municipal Credit Union ("MCU"), and asserted that those items were the "same ones she had failed to list on the disclosure forms that she had to file as a judge. You will learn that her failure to do so could subject her to sanctions[.]" (Nov. 30 Tr. at 42:17-20.) Counsel for Ms. Ash objected to the reference to the forms subjecting Ms. Ash to sanctions and the Court sustained the objection. The Court then issued a limiting instruction to the jury, stating, "Ms. Ash is not charged with any crimes in her capacity as a state judge. There is no suggestion in the indictment that she violated her duties as a state judge. And you are to keep that in mind during this case." (Nov. 30 Tr. at 42:23-25 - 43:1-2.)

     On December 1, 2021, the government submitted its fourth motion *in limine*, (ECF No. 136), in which it sought leave to introduce evidence that Ms. Ash faced the possibility of professional sanctions as the result of her alleged errors on the Disclosure Forms. (ECF. No. 136 at 3.) Ms. Ash filed an opposition to this motion on December 2, 2021, again addressing the concern that the government's proffered evidence would be unfairly prejudicial and unnecessarily confusing to the jury. (ECF No. 137.)

     At the start of the trial day on December 2, 2021, the Court addressed the issue with the parties. The government indicated its intent to call Robert Tembeckjian, the Administrator and Counsel of the Commission, for the purpose of testifying that "judges have to file these financial disclosure forms, and that . . . false filings in those forms could subject a judge to sanctions." (Dec. 2 Tr. at 257:9-15.) When asked to identify the type of sanctions to which the government was referring, the government responded "[a]dministrative sanctions that could go up to including loss of a job." (Dec. 2 Tr. at 257:17-18.) The government further indicated that it would expect Mr. Tembeckjian to testify about his personal interactions with Ms. Ash as a result of her service on the Commission but did not provide any further detail. (Dec. 2 Tr. at 260:1-7.) Counsel for Ms. Ash renewed her objection and the Court reserved on the issue, noting "I'll deal with it when he's called. And I'm not going to deal with it now. And we're not going to have him testifying to the law." (Dec. 2 Tr. at 265:21-23.)

     On December 3, 2021, the government provided additional 3500 material for Mr. Tembeckjian, marked as 3582-12, which appears to reflect a December 3, 2021 conversation between him and the government. These notes reflect that Mr. Tembeckjian recalls meeting

ny- 23009102

MORRISON | FOERSTER

Honorable Lewis A. Kaplan
December 6, 2021
Page Three

with Ms. Ash in person to train her for a "little over an hour" on April 5, 2016 about the operating procedures and rules relating to the Commission and the source of the Commission's authority. The notes indicate that Mr. Tembeckjian believes Ms. Ash knew what the rules were, but otherwise provide no further elaboration and list no specific rule to which Mr. Tembeckjian believes Ms. Ash was aware in April 2016. The notes further reflect that Mr. Tembeckjian referenced the availability of certain publicly available resources.

Additionally, and of particular relevance, based on his 3500 materials, Mr. Tembeckjian does not appear to have had any discussions with Ms. Ash regarding how to complete the Disclosure Forms and does not appear to be aware of any specific training Ms. Ash received with respect to the Disclosure Forms. With respect to the potential sanctions a judge may face as a general matter, Mr. Tembeckjian noted only that a Family Court Judge in New York was recently removed for failure to report certain facts on financial disclosures forms.

The government also provided additional 3500 Material (3577-006) for Laura Smith, the Chief Counsel for the New York State Advisory Committee on Judicial Ethics (the "Committee"). In the newly provided 3500 Material, Ms. Smith described what she believed to be training provided to new judges although it is unclear whether disclosure forms are discussed during this training and the training appears to cover a variety of topics. The notes do not reflect that Ms. Smith is aware of any such training provided to Ms. Ash (who was not a new judge during the relevant time period) and previously produced notes of an interview of Ms. Smith from June 6, 2019 (3577-004) indicate that Ms. Smith has never met Ms. Ash.

At various times on Sunday, December 5, 2021 the government provided copies of five newly disclosed documents, which have been marked Government Exhibits 542-46 and which are attached hereto as Exhibit A-E. These documents are as follows: (1) a one page summary about the Commission for the Unified Court System (GX 542); (2) a copy of the Policy Manual for the Commission, dated June 2015 (GX 543); (3) a six page excerpt of the New York State Judicial Law (GX 544); (4) the "Conduct of Ethics for Members of the New York State Commission on Judicial Conduct" (GX 545); and (5) a 14 page document entitled "Rules of the Chief Administrative Judge" that sets forth Part 100 of the Rules on Judicial Conduct (GX 546). At 10:23 p.m. on December 5, the government additionally produced copies of the Policy Manual for the Commission, dated June 2015 and June 2016.

The government has indicated its present intent to seek to admit two of the above documents, Government Exhibit 545 on direct examination through Mr. Tembeckjian and Government Exhibit 546 on direct examination through Ms. Smith. Of course, the government may seek to admit the other documents on rebuttal or through other witnesses. Further, as described further below, the government proposes to offer through Ms. Smith a 2015 training presentation from the New York State Joint Commission on Public Ethics ("JCOPE") (marked for identification as GX 528).

ny- 23009103

MORRISON | FOERSTER

Honorable Lewis A. Kaplan
December 6, 2021
Page Four

Additionally, the government has indicated it will seek to introduce the August 11, 2016 "Administrator's Complaint" filed by the Commission against Ms. Ash and signed by Mr. Tembeckjian (the "Commission Complaint") (marked for identification as GX 517). The Commission Complaint states that an investigation of Ms. Ash was being commenced based on information "that Judge Ash chairs the board of the Municipal Credit Union, notwithstanding that the organization is engaged regularly in adversary proceedings in the courts of New York."

*Evidence of the Judicial Commission's Scope and Function Is Inadmissible*

The government appears to contemplate that Mr. Tembeckjian will provide testimony relating to the function of the Commission and the scope of conduct within its purview. Such testimony will go well beyond the more circumscribed inquiry of whether Ms. Ash's allegedly false statements on the Disclosure Forms were inaccurate. An overview of the Judicial Commission's conduct would invite speculation as to if and how Ms. Ash's purportedly incorrect Disclosure Forms would be sanctioned by the Commission. His testimony about the scope and function of the Commission also is essentially not relevant but highly prejudicial.

The unfair prejudice to Ms. Ash from the government's proposed course of action would not be merely speculative. Counsel for Ms. Ash has made opening arguments and planned her defense based on the understanding that, while the Court was prepared to allow in the Disclosure Forms, her trial would not become a proxy for judicial disciplinary proceedings. By endeavoring to move beyond the introduction of the Disclosure Forms to the scope and function of the Commission as well as the issue of potential sanctions for failure to properly complete disclosure forms as addressed below, the government is effectively placing her judicial conduct – conduct for which she is not charged - at the center of the trial with the added prejudice that she violated her judicial rules of conduct, perhaps in a multitude of ways. It should not be permitted to do so.

*Evidence of Possible Sanctions Related to Judicial Forms Is Inadmissible*

The government's proposed testimony of Mr. Tembeckjian and the exhibits it may seek to admit similarly pose a significant risk of unfair prejudice and confusion to the jury. While counsel understands the Court's ruling that Mr. Tembeckjian will not be permitted to testify about what legal standards apply, the government appears to seek to elicit testimony from him regarding recent sanctions issued by the Commission in the area of financial disclosure. This risks precisely the type of judicial misconduct trial to which Ms. Ash has repeatedly objected and about which the Court has previously indicated it will not permit.

Additionally, Mr. Tembeckjian's example, identified for the government as reflected in 3582-12, of a Family Court Judge who recently was removed by the Commission makes plain the unfairly prejudicial and confusing nature of such testimony. A review of the

MORRISON | FOERSTER

Honorable Lewis A. Kaplan
December 6, 2021
Page Five

Commission's public annual reports (the "Annual Reports") since 2014, reflects that a Family Court Judge in Broome County (the "Family Court Judge") was removed by the Commission on or about February 14, 2020 after an adjudication process of approximately 18 months.  Of note, in addition to failing to file timely and accurate financial disclosure records, the Family Court Judge was charged with, among other things, sexually harassing court staff members, asking his court secretary and court attorney to perform services unrelated to their official duties, improperly engaging in the practice of law, and failing to accurately disclose his income to the New York state tax authorities.  (2021 Commission Annual Report, Appendix F.)  The Family Court Judge also previously been censured by the Commission.  (2021 Annual Report, Appendix F at 208.)

Further, a review of the Annual Report for 2014 through 2021[1] reflects the disparate and fact-specific nature of sanctions with respect to financial disclosure issues.  In certain years, the Commission appears to report no disciplinary issues with respect to financial disclosures.  In other years, judges, who were not publicly identified, received "cautions" for failing to file a financial disclosure statement in a time manner.  (*See, e.g.,* 2020 Annual Report (6 judges cautioned); 2018 Annual Report (3 judges cautioned); and 2015 Annual Report (3 judges cautioned).)  In the 2014 Annual Report, the Commission noted it was imposing, for the first time, public discipline in the form of "censure" for a single failure to file a financial disclosure statement because the judge at issue failed to respond to multiple inquire letters from the Commission.  (2014 Annual Report at 25-26.)

The government's proffered evidence moves well beyond what the Court initially envisioned at the November 18, 2021 oral argument.  As the Annual Reports make plain, the sanctions available to the Commission, and how they are applied, is a highly fact intensive (and often multi-year) endeavor.  Whether a judge is removed, resigns, receives public censure or admonition, or is the recipient of a private "caution" or no discipline at all is imposed depends on a multiplicity of factors, including the nature of the judge's conduct, whether or not the judge had been previously been disciplined, and/or how the judge reacted to a chance to cure the alleged misconduct.  Here, were the government to place the Commission Complaint in evidence, the jury would be invited to engage in speculation about what sanction Ms. Ash may have received or will receive in the future, none of which is relevant to the charged crimes and all of which is highly prejudicial to Ms. Ash.

*The Commission Complaint Is Inadmissible*

The government's intent to place the Commission Complaint in evidence will necessarily cause confusion for the jury and thus should be precluded.  Notably, the Commission Complaint does not allege that Ms. Ash committed a disclosure violation.  Rather, it addresses concerns about a potential conflict of interest caused by Ms. Ash's service on the MCU Board of Directors.  This document may lead the jury to an incorrect

---

[1]  The Annual Reports are available at: https://cjc.ny.gov/Publications/AnnualReports.html.

ny- 23009105

MORRISON | FOERSTER

Honorable Lewis A. Kaplan
December 6, 2021
Page Six

inference that Ms. Ash misused her position on the bench to assist the MCU or otherwise engage in misconduct – precisely the issue that the Court made plain would <u>not</u> become the focus of Ms. Ash's trial. (Nov. 30 Tr. at 42:23-25 - 43:1-2.)

*Government Exhibits 528 and 546 Should Be Precluded*

The Court further should preclude Government Exhibits 528 and 546. As described above, these exhibits go well beyond the face of the Disclosure Forms and any purported misrepresentations contained therein. Furthermore, these proposed exhibits run directly contrary to the Court's clear directive that it, and it alone, will instruct the jury on the law.

Government Exhibit 528, which the government has indicated it will seek to admit during the testimony of Mr. Tembeckjian, is a 55 page PowerPoint presentation entitled "Comprehensive Ethics Training Course" prepared by the New York State Joint Commission on Public Ethics ("JCOPE") that indicates it is "effective September 10, 2015." (A copy of which is attached hereto as Exhibit F.[2]) As a threshold issue, the relevance of Government Exhibit 528 is unclear, as page 4 thereof notes that JCOPE oversees financial disclosures of executive and legislative branch employees, while making no note of any oversight function with respect to judicial officers. Moreover, Government Exhibit 528 is replete with statutory references, thereby creating, at a minimum, the impression for the jury that Mr. Tembeckjian was appearing as a legal authority and offering guidance on the law of New York State. As such, the government should be precluded from entering Government Exhibit 528 as it violates the Court's explicit directive with respect who will instruct the jury on the law. In addition, Government Exhibit 528 has no relevance here as the government offers no evidence that Ms. Ash attended that training course and the training does not appear to relate to the Disclosure Forms.

Similarly, the government proposes to place Government Exhibit 546 in evidence through Ms. Smith. Government Exhibit 546 is a copy of the New York Rules of the Chief Administrative Judge, which is simply part of Title 22 of the New York Administrative Code. Again, introducing this exhibit through Ms. Smith would run headlong into the Court's prohibition on others instructing on the jurors on the law. As such, the government should be precluded from introducing Government Exhibits 528 and 546.

---

[2] Mr. Tembeckjian's ability to authenticate Government Exhibit 528 is unclear, as he is not now, nor does he ever appear to have been an employee of JCOPE.

ny- 23009106

MORRISON | FOERSTER

Honorable Lewis A. Kaplan
December 6, 2021
Page Seven

*Conclusion*

For all of the foregoing reasons, we respectfully request that the Court preclude testimony and the introduction of related exhibits on the structure and functioning of the Commission, certain state training materials, state judicial laws and regulations, and potential professional sanctions associated with alleged misstatements on the Disclosure Forms.

Respectfully submitted,

/s/ Carrie H. Cohen

Carrie H. Cohen


cc:  Counsel of Record (via ECF)

ny- 23009107