**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:19-cr-00780-LAK |
| Plaintiff, | |
| v. | |
| SYLVIA ASH, | |
| Defendant. | |

**DEFENDANT SYLVIA G. ASH'S MEMORANDUM OF LAW**
**IN SUPPORT OF HER MOTION FOR A NEW TRIAL**

Dated: New York, New York
      January 21, 2022

Respectfully Submitted,

MORRISON & FOERSTER LLP

By: */s/* Carrie H. Cohen
    Carrie H. Cohen
    Nathan D. Reilly
    Janie C. Buckley
    250 West 55th Street
    New York, NY 10019
    Telephone: (212) 468-8000
    Facsimile: (212) 468-7900
    Email: CCohen@mofo.com
          NReilly@mofo.com
          JBuckley@mofo.com

*Counsel for Defendant Sylvia G. Ash*

1

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................ 4

BACKGROUND ........................................................................................................... 4

APPLICABLE LAW ...................................................................................................... 7

ARGUMENT................................................................................................................. 8

I.      THE COURT'S EVIDENTIARY RULINGS DENIED MS. ASH A FAIR TRIAL........ 8

      A.     The Court Erred in Denying Ms. Ash's Suppression Motion............................... 8

      B.     The Court Should Have Excluded Evidence Relating to Ms. Ash's MCU
            Benefits ...................................................................................................... 9

      C.     Ms. Ash Was Unfairly Prejudiced by the Exclusion of Evidence Relating
            to Benefits Received by Other MCU Board Members ....................................... 11

      D.     The Court Erred in Permitting Evidence Relating Ms. Ash's Judicial
            Disclosure Forms and Resignation from the MCU Board................................. 12

      E.     Ms. Ash Should Have Been Permitted to Cross-Examine Agent Jackson
            Regarding His Business Dealings with the MCU................................................ 15

      F.     The Court Erred in Not Declaring a Mistrial Due to the Government's
            Disclosure Violation Relating to the Forensic Analyst....................................... 16

CONCLUSION................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Canova*,
    412 F. 3d 331 (2d Cir. 2005)...............................................................................7, 8

*United States v. Ferguson*,
    246 F. 3d 129 (2d Cir. 2001)....................................................................................8

*United States v. Lopac*,
    411 F. Supp. 2d 350 (S.D.N.Y. 2006)......................................................................8

*United States v. Pauling*,
    256 F. Supp. 3d 329 (S.D.N.Y. 2017)......................................................................8

*United States v. Sanchez*,
    969 F.2d 1409 (2d Cir. 1992)...................................................................................7

**Statutes**

18 U.S.C. § 3500..................................................................................................................17

**Other Authorities**

Fed. R. Crim. Proc. Rule 33.........................................................................................4, 7, 18

Fed. R. Evid. Rule 404(b) ...................................................................................................6

Defendant Sylvia G. Ash respectfully submits this Memorandum of Law in support of her motion for the Court to grant a new trial on all counts of the Superseding Indictment on which the jury returned a guilty verdict.

## PRELIMINARY STATEMENT

Ms. Ash hereby moves for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, which grants the Court broad discretion to set aside a verdict, such as the one here, that constitutes a manifest injustice.  In this case, the cumulative effect of certain evidentiary rulings made by the Court prior to and during trial, and the resulting presentation by the government at trial, unfairly prejudiced Ms. Ash and resulted in a verdict that is manifestly unjust.  Specifically, a new trial is warranted as a result of the following prejudicial pre-trial and trial rulings: (i) the denial of Ms. Ash's pre-trial motion to suppress statements and evidence; (ii) the refusal to permit Ms. Ash's counsel to cross-examine key government witnesses on certain evidence relevant to their bias and prior statements; and (iii) permitting the jury to consider a plethora of other bad act evidence and hear countless arguments from the government based on such evidence that were irrelevant to the charged conduct but that were unduly prejudicial to Ms. Ash.  Accordingly, for the reasons more fully set forth below, the Court should set aside the guilty verdicts against Ms. Ash and order a new trial.

## BACKGROUND

Ms. Ash was charged in a four-count superseding indictment (the "Superseding Indictment") stemming from an investigation by the United States Attorney's Office for the Southern District of New York ("SDNY") and the Manhattan District Attorney's Office ("DANY") (collectively, the "government") into instances of fraud and embezzlement at the Municipal Credit Union ("MCU") by former MCU Chief Executive Officer and President Kam

Wong ("Wong").  The Superseding Indictment charged Ms. Ash with one count of conspiring to

obstruct justice (Count One); two counts of obstruction of justice (Counts Two and Three); and

one count of making a material false statement to the federal government (Count Four).

<u>Suppression Motion</u>

Prior to and in advance of trial, Ms. Ash made certain motions relating to the evidence

and arguments that should and should not be permitted at trial.  Specifically and as is relevant

here, on March 20, 2020, Ms. Ash moved to suppress, among other things, (1) certain statements

she made to the government, and (2) evidence obtained from an iPhone and Ms. Ash's email

accounts as violative of Ms. Ash's due process rights and her Fifth Amendment right against

self-incrimination and, with respect to her email accounts, because the evidence constituted

"fruits of the poisonous tree."  (ECF No. 34 (the "Suppression Motion").)  On June 2, 2020, the

Court denied the Suppression Motion in its entirety.  (ECF No. 47.)  Specifically, the Court held

that Ms. Ash's statements to law enforcement officials were not coerced because, regardless of

any failure to adhere to Department of Justice ("DOJ") policy and regardless of any knowledge

of Ms. Ash's prior counsel's unwaivable conflict of interest, the government's actions did not

rise to a level of misconduct that "shocked the conscience" and thus did not require suppression.

Further, the Court held that the iPhone and email evidence was lawfully obtained because Ms.

Ash's production of the iPhone was not compelled and thus her right against self-incrimination

was not implicated.  As to the email evidence, the Court found that there has been no violation of

Ms. Ash's right in obtaining the information used to secure the email search warrants and, as such that, there was no "'poisonous tree' of which any evidence was fruit." (ECF No. 47.)

Motions in Limine

In advance of trial, on October 29, 2021, the parties submitted simultaneous motions *in limine* seeking certain pre-trial rulings as to the admissibility of certain testimony and evidence pursuant to, among other things, Rule 404(b) of the Federal Rules of Evidence. (ECF Nos. 95, 96.) After hearing oral arguments on November 18, 2021, (ECF No. 110), the Court granted the government's motion, over Ms. Ash's objection, to admit evidence and argument concerning the following: (i) Ms. Ash's receipt of benefits from the MCU and Wong; (ii) Ms. Ash's purported "concealment of benefits she received from MCU on her annual judicial financial disclosure forms;" and (iii) advice to resign her position on the MCU Board of Directors (the "MCU Board") given to her by the New York State Commission on Judicial Conduct (the "Commission") and the Advisory Committee on Judicial Ethics (the "Committee"). (*See* ECF No. 118; November 18, 2021 Transcript ("Nov. 18. Tr.") at 26:2-3; 29:23; 34:8.) In addition, the Court initially reserved decision on the government's motions to preclude Ms. Ash from introducing evidence as to whether "other MCU Board members and Supervisory Committee members similarly misappropriated money from MCU," but subsequently granted that motion as well. (Nov. 18 Tr. at 26:6-8.)

Evidentiary Rulings at Trial

Trial commenced on November 30, 2021 and the presentation of evidence concluded on December 8, 2021. The government presented testimony from twelve witnesses, including LaVale Jackson, a Special Agent with the United States Attorney's Office, who was the case agent on the investigation, and Boris Vestfrid, a forensic analyst employed by the DANY High-

Tech Analysis Unit.  As more fully set forth below, the Court denied Ms. Ash's motion to cross-examine Agent Jackson on the government's eleventh-hour disclosure of the fact that Agent Jackson was an MCU account holder and had an outstanding loan with the MCU during the pendency of the investigation.  (ECF No. 133; Trial Transcript ("Tr.") at 61:7-11.)  The Court also denied Ms. Ash's motion for a mistrial due to the government's failure to disclose a script of questions for Mr. Vestfrid that were based on the government's trial preparation sessions with him (and thus constituted Rule 3500 materials) until days after the completion of Mr. Vestfrid's testimony.  (ECF No. 140; Tr. at 772:4-6.)

Rule 29 Motion and Verdict

On December 7, 2021, at the close of the government's case-in-chief, Ms. Ash's motion for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure was denied.  (Tr. at 744:7.)  Following the close of evidence on December 8, 2021, Ms. Ash renewed her Rule 29 motion, which the Court again denied.  (Tr. at 826:23.)  The jury received the Court's instructions on December 8, 2021 and, following deliberations, returned a verdict on December 13, 2021. Ms. Ash was found not guilty as to Count Two of the Superseding Indictment and guilty with respect to Counts One, Three, and Four of the Superseding Indictment.  On December 22, 2021, Ms. Ash filed a timely notice of motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

**APPLICABLE LAW**

A new trial may be granted "if the interest of justice so requires."  Fed. R. Crim. Proc. Rule 33(a).  "By its terms, Rule 33 confers a broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice."  *United States v. Sanchez,* 969 F.2d 1409, 1413 (2d Cir. 1992); *see also United States v. Canova,* 412 F. 3d 331,

348 (2d Cir. 2005) (a court has "broad discretion in ruling on a new trial motion") (internal

quotation marks omitted).  In exercising that discretion, a court "is not required to view the

evidence in the light most favorable to the government."  *United States v. Lopac,* 411 F. Supp. 2d

350, 359 (S.D.N.Y. 2006).  It must instead "examine the entire case, take into account all facts

and circumstances, and make an objective evaluation."  *United States v. Ferguson,* 246 F. 3d

129, 134 (2d Cir. 2001); *see also United States v. Pauling,* 256 F. Supp. 3d 329, 339 (S.D.N.Y.

2017).

As part of the analysis, the Court "may itself weigh the evidence and the credibility of

witnesses."  *Canova*, 412 F.3d at 348; *see also Lopac,* 411 F. Supp. 2d at 359.  It "must be

satisfied that competent, satisfactory and sufficient evidence in the record supports the jury

verdict." *Ferguson,* 246 F. 3d at 134 (internal quotation marks omitted).  "[A]fter weighing the

evidence," the Court may grant relief based on a "contrary view" of the jury verdict. *Id*. at 133.

"The ultimate test . . . is whether letting a guilty verdict stand would be a manifest injustice." *Id.*

at 134 (affirming grant of new trial); *see also Canova*, 412 F.3d at 349 (internal quotation marks

omitted).

## ARGUMENT

I.   **THE COURT'S EVIDENTIARY RULINGS DENIED MS. ASH A FAIR TRIAL**

A.   **The Court Erred in Denying Ms. Ash's Suppression Motion**

At trial, the government presented extensive evidence and argument relating to emails

obtained, pursuant to search warrants, from accounts belonging to Ms. Ash (the "Ash Emails").

(*See, e.g.*, GX 300; 304; 751; 754; Tr. 450:2-6; 703:6-15; 709:7-11.)  The government also

presented evidence and arguments relating to Ms. Ash's purported "wiping" of an iPhone in her

possession.  (*See, e.g.*, GX 208; 272; 552; Tr. at 43:11-14; 201:3-5; 221:25-222-8; 319:18-

320:13; 321:3-25; 876:21-24; 909:17-22; 990:1-4.)  Further, Agent Jackson testified at length

about statements that Ms. Ash made to the government during her multiple voluntary interviews with agents and prosecutors.  (Tr. at 151:13-157-7; 162-14-164:10; 164:20-165:20; 191:22-202:18.)  As part of the Suppression Motion, Ms. Ash unsuccessfully sought to prevent the government's use of all of this evidence.[1]

The importance of the evidence that Ms. Ash sought to suppress to the government's case at trial, namely, the Ash Emails, the iPhone, and her statements, is readily apparent from the government's presentation at trial.  The government's evidence about which of the Ash Emails had been deleted, the timing of those alleged deletions, and her actions relating to the iPhone, coupled with her statements to Agent Jackson on those topics, were critical to the government's case.  More specifically, this evidence was central to the conduct alleged in Counts Three and Four of the Superseding Indictment, which related to the production of materials (or lack thereof) and purportedly false statements about those materials.  There can be no question that the government heavily relied on all of the evidence that the Court erroneously declined to suppress.  Such reliance significantly prejudiced Ms. Ash and resulted in manifestly unjust convictions.

**B.      The Court Should Have Excluded Evidence Relating to Ms. Ash's MCU Benefits**

The government's introduction of extensive evidence relating to Ms. Ash's receipt of benefits from the MCU and Wong was unfairly prejudicial and inflammatory.  The government sought to admit this evidence on multiple theories, arguing it constituted direct evidence of the charged conduct and that it was relevant to the nature of Ms. Ash's relationship with Wong and of her motive to conceal purportedly ill-gotten benefits.  (ECF No. 96 at 12-14.)  The Court

---

[1] Ms. Ash, for the purposes of this motion, hereby incorporates herein as if fully set forth herein all arguments previously advanced in support of the Suppression Motion (and supporting materials).  (ECF Nos. 36, 37, 45.) Similarly, Ms. Ash hereby incorporates as if fully set forth herein all arguments previously advanced orally and in writing that form the basis for the instant motion.

allowed the government to present evidence relating to Ms. Ash's receipt of benefits from the

MCU and Wong on the grounds that it constituted relevant evidence of her intent to engage in

purportedly obstructive conduct.  (Nov. 18 Tr. at 26:2-3, Tr. at 18:2-7.)  At trial, the government

elicited extensive and often cumulative evidence about, among other things, Ms. Ash's

attendance of baseball games at MCU Park, (Tr. at 87:2-11; 103:24-105:25; 108:4-109:10), her

travel to credit-union related conferences, (Tr. at 520:17-525:5), and receipt of Apple products as

gifts from Wong, (Tr. at 439:21-440:20).[2]  This evidence was inflammatory and irrelevant,

feeding the unfairly prejudicial and incorrect perception that Ms. Ash must have committed the

charged crimes because she had received items of value from a not-for-profit entity and a

convicted fraudster.  There was ample evidence in the record to establish that Ms. Ash had a

friendship with Wong – a fact that Ms. Ash did not dispute – such that the limited probative

value of admitting the benefits that Ms. Ash received from Wong to establish their relationship

was far outweighed by the unfair prejudice.  The government's introduction of Ms. Ash's receipt

of benefits from the MCU and Wong further compromised the fairness of the trial by creating an

inference for the jury that Ms. Ash was on trial for conduct with which she was not charged and

which was not illegal.  Moreover, the evidence relating to benefits more broadly painted for the

jury an incomplete and misleading picture of Ms. Ash as someone prone to misconduct or

wrongdoing – a misimpression that could not be cured by a limiting instruction.

---

[2]  Notably, in its pre-trial submission, the government described its expectation that it would offer evidence that many of the benefits that Ms. Ash had been given "violated MCU policy and/or were fraudulently obtained."  (ECF No. 96 at 9.)  The government effectively abandoned this position at trial, (Tr. at 983:8-11), as multiple witnesses, (Tr. at 113:18-23; 114:5-8; 116:22-25), and the MCU policy manual itself, (GX 400), made plain that Ms. Ash's receipt of benefits was consistent with MCU policy.

C.      **Ms. Ash Was Unfairly Prejudiced by the Exclusion of Evidence Relating to Benefits Received by Other MCU Board Members**

After erroneously permitting the government to introduce evidence, over Ms. Ash's objection, relating to certain benefits Ms. Ash had received from the MCU, the Court then precluded her from introducing evidence relating to benefits received by other MCU Board members and MCU employees.  (Nov. 18 Tr. at 15:9-26:8.)  The Court agreed with the government's position that such evidence was irrelevant to Ms. Ash's intent and thus inadmissible.  (*Id.*)  In effect, the Court compounded the unfair prejudice that Ms. Ash suffered in admitting irrelevant evidence of the MCU benefits she had received by then preventing her from placing those benefits in any larger and more accurate context.

As a result, the government's presentation of evidence, paired with Ms. Ash's inability to present evidence relating to benefits received by other members of the MCU Board, left the jury with the erroneous impression that Ms. Ash had uniquely obtained ill-defined and ill-gotten gains as an MCU Board member.  It similarly left the misimpression that Ms. Ash had maneuvered to be treated in an unusual or unique manner as an MCU Board member.  In contrast, had Ms. Ash been permitted to introduce evidence of benefits paid to other MCU Board members, it would have been highly probative of her efforts to rebut the inference about her that the government repeatedly argued at trial – namely, that Ms. Ash obstructed justice due to her desire to protect Wong and her belief that she had done something wrong in receiving MCU benefits.  (Tr. at 41:8-43:20; 874:13-875:16; 876:11-877:14.)  Had Ms. Ash been permitted to present evidence that the benefits Ms. Ash received were part of a broader and regular practice at the MCU, Ms. Ash could have more effectively contradicted the incorrect impression with which the jury was left – that the purportedly illicit "goodies" she received were a key component of her intent to obstruct the government.  (Tr. at 880:22-881-4.)  In the absence of this evidence, the jury was

11

left with a highly misleading impression – one which can only be corrected by vacating the

jury's verdict and ordering a new trial.

> **D.      The Court Erred in Permitting Evidence Relating Ms. Ash's Judicial Disclosure Forms and Resignation from the MCU Board**

The government also was permitted, over Ms. Ash's objection, to introduce unfairly

prejudicial and irrelevant information about Ms. Ash's purported failure to disclose benefits she

had received from the MCU on her annual financial disclosure statements filed with the New

York State Unified Court System (the "Disclosure Statements").  (Tr. at 261:1-276:17; 543:1-

547:6; 605:2-617:1.)  The Court further allowed the government to introduce evidence relating to

Ms. Ash's resignation from the MCU Board, including testimony of Robert Tembeckjian from

the Commission and Laura Smith from the Committee.  (Tr. at 573:3-15; 580:8-585:6; 618:16-

631:25.)  In advancing the arguments for admitting this conduct, which the Court credited, the

government claimed the Disclosure Statements should be admitted because they were

(i) "inextricably intertwined" with the rest of the evidence; (ii) relevant to Ms. Ash's relationship

with Wong; and (iii) tended to show that Ms. Ash knew that the benefits she received from the

MCU and/or Wong were, "at a minimum, inappropriate."  (ECF No. 96 at 16.)  The government

similarly argued that the circumstances surrounding Ms. Ash's interactions with the Commission

and the Committee (and her resignation from the MCU Board) would demonstrate the lengths

she went to preserve her position on the MCU Board (and the related benefits).  (ECF No. 96 at

20.)  Such proof would, in turn, the government claimed, be relevant to Ms. Ash's intent to

obstruct the government and aid Wong.  (*Id.*)

The government's presentation of evidence at trial made plain that none of the proffered

reasons for admitting the Disclosure Statements was accurate.  The lack of inter-connectivity is

particularly evident given that the government introduced Disclosure Statements for multiple

years (2014-2018), (GX 530-534), which either pre-dated the government's investigation of the MCU or Ms. Ash or, conversely, post-dated her time on the MCU Board.  With respect to the Disclosure Statements that pre-date the investigation, Ms. Ash's purported errors on publicly available Disclosure Statements are of extremely minimal value in determining her intent, years later, when dealing with the government's investigation that began in 2018.  And, with respect to her Disclosure Statements for 2017 and 2018, after she had left the MCU Board, the evidentiary value is, again, sparse.  There was little motive to hide benefits she received as an MCU Board member when, as a former Board member, she would not be receiving them in the future.

Similarly, as described above, the evidence at trial established that the benefits Ms. Ash received from MCU were consistent with MCU policy and that she had received an opinion from the Committee in 2008 that there was no bar to her joining the MCU Board.  (Tr. at 621:19-622:22; 802:16-806:10.)  As such, the evidence relating to the Disclosure Statements did not establish that Ms. Ash knew or should have known that the benefits she was receiving from the MCU were "at a minimum, inappropriate."  (ECF No. 96 at 16.)  Finally, as noted above, the government provided substantial evidence at trial, including numerous text messages, demonstrating Ms. Ash's friendship with Wong – a relationship that her counsel acknowledged and did not dispute in both opening and closing arguments as well as on cross-examination of witnesses.  (Tr. at 47:9-25; 50:9-17; 52:1-18; 922:10-21; 939:16-940:12; 941:14-22; 949:11-950:18.)

The Disclosure Statements and the circumstances surrounding her resignation from the MCU Board thus were of minimal, if any, relevance to the conduct with which Ms. Ash was charged in the Superseding Indictment.  Yet the admission of those documents and the testimony of Mr. Tembeckjian and Ms. Smith about the Disclosure Statements (in the case of Mr.

Tembeckjian) and their conversations with Ms. Ash (as to both witnesses) was incredibly and

unfairly prejudicial to Ms. Ash. Additionally, despite the Court's repeated instruction to the jury

that Ms. Ash was not charged with any conduct relating to her service as a New York State judge

(Tr. at 558:11-559:3; 611:25-612:13), Mr. Tembeckjian was permitted to testify about topics

related to judicial service and ethics that were unfairly prejudicial precisely because they did not

relate to the Disclosure Statements at all (or the charged conduct). For instance, Mr.

Tembeckjian testified about certain training Ms. Ash received as a member of the Commission –

training which did not touch on how to appropriately fill out and submit the Disclosure

Statements. He was also permitted to testify about the Commission's "investigation" of how

often the MCU appeared in New York State courts, and what he knew about the circumstances

surrounding Ms. Ash's resignation from the MCU Board – again topics unrelated to the

Disclosure Statements or the charged conduct. (Tr. at 592:3-594:22; 620:25-631:25.) Similarly

prejudicial was Ms. Smith's testimony and the admission of a copy of New York State Rules on

Judicial Conduct. (Tr. 557:2; GX 546.) Notwithstanding the Court's limiting instructions when

a copy of Part 100, Judicial Conduct of New York Rules of the Chief Administrative Judge was

received in evidence through Ms. Smith, (GX 546; Tr. at 557-59) through Ms. Smith, it

reinforced the message to the jury that this trial was, in fact, about Ms. Ash's purported judicial

misconduct. This unfair inference was further bolstered by Ms. Smith's subsequent testimony

about a single telephone call with Ms. Ash related to Ms. Ash's service on (and resignation from)

the MCU Board. (Tr. 581-584.) Thus, the jury was left with the unfairly prejudicial

misimpression that Ms. Ash had engaged in unethical judicial misconduct because she failed to

strictly adhere to the regulatory framework and the purported advice given to her by Ms. Smith.

For all of the foregoing reasons, the presentation of evidence relating to the Disclosure Statements, any errors therein, and the circumstances of Ms. Ash's resignation from the MCU Board in 2016 collectively served to conflate issues of her judicial conduct with the unrelated conduct with which she was charged in the Superseding Indictment.  Notwithstanding the Court's limiting instructions, the evidence admitted on these issues was unfairly prejudicial and served to make the trial precisely what the Court unsuccessfully sought to prevent, a referendum on Ms. Ash's conduct as a judge.

### E.        Ms. Ash Should Have Been Permitted to Cross-Examine Agent Jackson Regarding His Business Dealings with the MCU

As set forth in Ms. Ash's November 29, 2021 letter to the Court, (ECF No. 132), late Sunday evening, on the eve of trial, the government provided one page of 3500 material that disclosed for the first time that Agent Jackson, who always was going to be and was a witness at trial, was an account holder at the MCU, (*id.*), and subsequently disclosed, after a demand for additional information by Ms. Ash, that Agent Jackson also had an outstanding personal loan with the MCU.  (Tr. at 4:22-6:21; 7:23-8:4; 11:1-8; 20:19-25.)  Ms. Ash then sought additional discovery regarding this disclosure and indicated her intent to cross-examine Agent Jackson regarding, among other things, the extent of Agent Jackson's financial ties to the MCU and when those ties first were disclosed to the prosecutors assigned to the case.  (Tr. at 61:2-62:13.)  By letter dated November 30, 2021, the government opposed this application and sought to preclude cross-examination of Agent Jackson on this topic, (ECF No. 134), a position with which the Court ultimately agreed.   (Tr. at 61:2-62:13.)

There can be no serious question that Agent Jackson was a crucial witness for the government at trial, testifying to, among other things, statements that Ms. Ash made to the government.  Ms. Ash's purported admissions and alleged misstatements were central to the

15

charges against her as both an alleged overt act in the conspiracy charged in Count One and

serving as the basis as a standalone false statements charge in Count Four.  The significance of

his testimony was further highlighted in closing arguments, where the government argued that in

certain instances, Ms. Ash's statements (as testified to by Agent Jackson) were admissions of

obstructive conduct and, in other instances, that those statements were material false statements.

(Tr. at 907:11; 908:11-18; 909:10-910:1; 915:8-25; 916:12-22; 917:9-22.)  Accordingly, the

Court's bar to cross-examination on Agent Jackson's bias and the circumstances under which

Agent Jackson disclosed information relating to that bias was significantly and unfairly

prejudicial to Ms. Ash.  Cross-examination regarding Agent Jackson's financial dealings with the

MCU (and the circumstances surrounding his disclosure thereof to the assigned prosecutors) was

potentially relevant to, among other things, Agent Jackson's compliance with DOJ conflict of

interest policies and whether his financial dealings with the MCU was discussed, for instance, in

advance of Agent Jackson serving as an affiant on judicial applications in connection with the

investigation.  The Court's decision to bar cross-examination on this topic unfairly prejudiced

Ms. Ash by significantly impeding her counsel's ability to probe the credibility and potential bias

of a key government witness.  This error alone warrants a new trial.

      F.      **The Court Erred in Not Declaring a Mistrial Due to the Government's Disclosure Violation Relating to the Forensic Analyst**

On December 7, 2021, the government disclosed at the start of the trial day, (Tr. at 681-

685), that it had failed to make certain disclosures with respect to Jeremy Rosenman, a Special

Agent with the United States Attorney's Office, who was scheduled to testify that day, and as to

Mr. Vestfrid, who had completed his testimony on December 2, 2021.  More specifically, the

government disclosed for the first time that it had not produced the "scripts" it had emailed to

these witnesses, which effectively identified all the questions that the government planned to ask

each witness on direct examination.  Counsel for Ms. Ash noted that the materials appeared to have been prepared in the course of preparation of these witnesses and that the witnesses' answers were effectively converted into questions, thereby enabling the government to disclose extremely limited 3500 materials as to those witnesses.  (Tr. at 711:9-18.)  While the government disclosed the scripted materials in advance of the testimony of Agent Rosenman, the disclosure as to Mr. Vestfrid occurred days after his testimony had been completed.  Ms. Ash thus moved for a mistrial or, in the alternative, for the dismissal of the Superseding Indictment based on the failure to disclose the "scripts" as there was no way to remedy the disclosure failure for Mr. Vestfrid.  (Tr. at 772.)  The Court denied that motion and found that the materials that the government had belatedly disclosed did not fall within the category of materials that the government was required to produce pursuant to 18 U.S.C. § 3500 and that the cross-examination of Agent Rosenman on the scripts had not been particularly effective.  (Tr. at 773-75.)  In making this ruling, the Court ignored the distinctions between the two witnesses.  Mr. Vestfrid was a key witness for the government and testified that he was personally responsible for the extraction and analysis of cellphone data that was central to the government's case.  (*See, e.g.*, Tr. at 315:7-11; 324:9-23; 335:22-336:11.)  The government also questioned Mr. Vestfrid significantly regarding the substance of various phone entries and messages.  (*See, e.g.* Tr. at 329:11-335:15; 348:15-363:14.)  In contrast, Agent Rosenman served as a summary witness for the government, through whom the government admitted third-party business records and summary charts.  (*See, e.g.*, Tr. 690:13-692-6; 699:7-700:12.)

As an initial matter, the government's failure to provide timely disclosures of its communications with Mr. Vestfrid about his testimony severely and unfairly prejudiced Ms. Ash.  The government was able to disclose extremely barebones 3500 material for Mr. Vestfrid

17

which, in turn, made it effectively impossible for defense counsel to identify potential

inconsistencies in his trial testimony precisely because the "scripted" materials – framed as

questions – made more extensive reports of his pre-trial preparation unnecessary.  Significantly,

Mr. Vestfrid gave extensive testimony on forensic extractions from various electronic devices,

(*see, e.g.*, Tr. at 329:7-335:19; 337:11-367:9), upon which the government relied heavily in

advancing the argument that Ms. Ash had deleted text messages and otherwise sought to obstruct

the investigation as charged in Counts One and Three of the Superseding Indictment.  (*See, e.g.*,

Tr. at 914:15-915-1.)  As such, Ms. Ash's failure to receive a complete disclosure of Mr.

Vestfrid's pre-trial statements on the subjects of his testimony was manifestly unjust and is a

sufficient basis for the Court to order a new trial.

**CONCLUSION**

For the foregoing reasons, Sylvia G. Ash respectfully requests that the Court set aside the guilty verdicts returned as to Counts One, Three, and Four of the Superseding Indictment and grant Ms. Ash a new trial on those counts pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

Dated: New York, New York
       January 21, 2022

Respectfully Submitted,

MORRISON & FOERSTER LLP

By: /s/ Carrie H. Cohen
    Carrie H. Cohen
    Nathan D. Reilly
    Janie C. Buckley
    250 West 55th Street
    New York, NY 10019
    Telephone: (212) 468-8000
    Facsimile: (212) 468-7900
    Email: CCohen@mofo.com
           NReilly@mofo.com
           JBuckley@mofo.com

    *Counsel for Defendant Sylvia G. Ash*