UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                        :

UNITED STATES OF AMERICA       :

                        :

       - *v.* -           :          S1 19 Cr. 780 (LAK)

                        :

SYLVIA ASH,              :

                        :

           Defendant.    :

                        :

------------------------------------------------------x

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA <u>IN OPPOSITION TO DEFENDANT SYLVIA ASH'S MOTION FOR A NEW TRIAL</u>

                                DAMIAN WILLIAMS
                                United States Attorney
                                Southern District of New York

Eli J. Mark
Daniel C. Richenthal
Jonathan E. Rebold
Assistant United States Attorneys

Alona S. Katz
Special Assistant United States Attorney

- Of Counsel -

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.     THE DEFENDANT'S RULE 33 MOTION IS MERITLESS ............................ 2

     A.     Legal Standard For a Rule 33 Motion ....................................................... 2

     B.     The Court Properly Denied the Defendant's Suppression Motion ........................ 4

     C.     The Court Properly Admitted Evidence of the Defendant's Receipt of Benefits from MCU and Wong ....................................................... 5

     D.     To the Extent the Court Precluded Evidence Relating to Benefits Received by Other MCU Board Members, Such Preclusion Was Proper .................................. 8

     E.     The Court Properly Admitted Evidence Relating to the Defendant's False Judicial Disclosure Forms and Resignation From MCU's Board as a Result of Her Violation of Judicial Ethics Rules ....................................................... 13

     F.     The Court Properly Precluded Evidence Relating to the Case Agent's Holding of an Account at MCU ....................................................... 18

     G.     The Court Properly Ruled That the Government Did Not Commit a Disclosure Violation ....................................................... 19

CONCLUSION ........................................................................................................... 21

i

## TABLE OF AUTHORITIES

*Boone v. United States*, No. 02 Cr. 1185 (JMF), 2017 WL 398386 (S.D.N.Y. Jan. 30, 2017) ...... 4

*Marchetti v. United States*, 390 U.S. 39 (1968) ................................................................. 15

*Norton v. Sam's Club*, 145 F.3d 114 (2d Cir. 1998) ............................................................. 4

*Palermo v. United States*, 360 U.S. 343 (1959) ................................................................. 19

*Parker v. Randolph*, 442 U.S. 62 (1979) .......................................................................... 8

*United States v. Artis*, 523 F. App'x 98 (2d Cir. 2013) ...................................................... 20

*United States v. Ash*, 464 F. Supp. 3d 621 (S.D.N.Y. 2020) ................................................ 4

*United States v. Barrett*, No. 10 Cr. 809 (KAM), 2012 WL 3229291 (E.D.N.Y. Aug. 6, 2012) ... 3

*United States v. Bell*, 584 F.3d 478 (2d Cir. 2009) ............................................................. 2

*United States v. Berg*, 710 F. Supp. 438 (E.D.N.Y. 1989) ................................................. 11

*United States v. Canova*, 412 F.3d 331 (2d Cir. 2005) ........................................................ 3

*United States v. Castro*, 669 F. Supp. 2d 288 (E.D.N.Y. 2009) ............................................ 3

*United States v. Costello*, 352 F.2d 848 (2d Cir. 1965) ..................................................... 15

*United States v. Ezeobi*, 517 F. App'x 35 (2d Cir. 2013) .................................................... 17

*United States v. Gambino*, 59 F.3d 353 (2d Cir. 1995) ....................................................... 2

*United States v. Gatto*, 986 F.3d 104 (2d Cir. 2021) ......................................................... 11

*United States v. Locascio*, 6 F.3d 924 (2d Cir. 1993) .......................................................... 3

*United States v. McCourty*, 562 F.3d 458 (2d Cir. 2009) .................................................. 2, 3

*United States v. Mejia*, 948 F. Supp. 2d 311 (S.D.N.Y. 2013) ......................................... 4, 13

*United States v. Morin*, 538 F. App'x 1 (2d Cir. 2013) ....................................................... 3

*United States v. Oldbear*, 568 F.3d 814 (10th Cir. 2009) .................................................. 11

*United States v. Pascarella*, 84 F.3d 61 (2d Cir. 1996) ..................................................... 16

*United States v. Pipola*, 83 F.3d 556 (2d Cir. 1996) ......................................................... 16

*United States v. Sanchez*, 969 F.2d 1409 (2d Cir. 1992) ................................................. 3, 4

*United States v. Schwartz*, 924 F.2d 410 (2d Cir. 1991) .................................................... 11

*United States v. Smith*, No. 08 Cr. 390 (BSJ), 2009 WL 4249120 (S.D.N.Y. Nov. 25, 2009) ....... 3

*United States v. Spencer*, 4 F.3d 115 (2d Cir. 1993) .......................................................... 3

*United States v. Tussa*, 816 F.2d 58 (2d Cir. 1987) ........................................................... 8

*United States v. Williams*, 205 F.3d 23 (2d Cir. 2000) ...................................................... 16

*United States v. Williams*, 930 F.3d 44 (2d Cir. 2019) ...................................................... 11

*United States v. Zagari*, 111 F.3d 307 (2d Cir. 1997) ........................................................ 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                   :

UNITED STATES OF AMERICA        :
                                     :

              - *v.* -                 :                     S1 19 Cr. 780 (LAK)
                                     :

SYLVIA ASH,                        :
                                     :

               Defendant.       :
                                     :

------------------------------------------------------x

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO DEFENDANT SYLVIA ASH'S MOTION FOR A NEW TRIAL**

      The Government respectfully submits this memorandum of law in opposition to the motion

for a new trial filed by defendant Sylvia Ash (the "defendant") (Dkt No. 158).

**PRELIMINARY STATEMENT**

      On December 13, 2021, following an approximately seven-day jury trial, the defendant

was convicted of conspiring to obstruct justice, in violation of 18 U.S.C. § 371 (Count One);

obstruction of justice, in violation of 18 U.S.C. § 1512(c) (Count Three); and making a false

statement to federal investigators, in violation of 18 U.S.C. § 1001 (Count Four).  The defendant

was acquitted of obstruction of justice, in violation of 18 U.S.C. § 1519 (Count Two).  The

defendant now moves to overturn the jury's verdict.

      In her brief, the defendant argues that the Court erred in multiple, material ways:

(1) denying her pre-trial motion to suppress certain evidence; (2) admitting evidence related to the

defendant's receipt of benefits from Municipal Credit Union ("MCU"); (3) precluding evidence

relating to benefits received by other MCU board members; (4) admitting evidence relating to the

defendant's false filing of annual judicial disclosure forms and that she was asked to resign from

MCU's board because her board service violated judicial ethical rules; (5) precluding her cross-

1

examination of the case agent regarding a personal bank account and loan he had with MCU that predated this case; and (6) failing to declare a mistrial because of a purported disclosure violation related to a forensic analyst's testimony.  (Defendant's Memorandum of Law in Support of Her Motion for a New Trial ("Def. Mem.") (Dkt. No. 162).)  The defendant's motion is meritless.

Every one of her claims was briefed by the parties previously, all were also argued orally, and all were rejected by the Court.  In many cases, the claims failed for multiple, independent reasons.  They still do.  In short, the defendant's motion is, at its core, a motion for reconsideration.  But the defendant offers no reason to conclude that the Court erred, much less a sufficient basis to find that she meets the demanding standard required to displace a jury's verdict.  None of the claims she raises present a concern, let alone a "real concern," that an innocent person was convicted.  *See, e.g.*, *United States v. Bell*, 584 F.3d 478, 483 (2d Cir. 2009) (per curiam).  Nothing of the sort occurred in this case.

## ARGUMENT

## I.      THE DEFENDANT'S RULE 33 MOTION IS MERITLESS

### A.  Legal Standard For a Rule 33 Motion

Federal Rule of Criminal Procedure 33 provides, in relevant part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "The defendant bears the burden of proving that [s]he is entitled to a new trial under Rule 33[.]"  *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).  Because motions for a new trial are strongly disfavored, "the standard for granting such a motion is strict," *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995), and it should be granted only in "extraordinary circumstances," *McCourty*, 562 F.3d at 475 (internal quotation marks omitted).  *See also United States v. Zagari*, 111 F.3d 307, 322 (2d Cir. 1997); *United States*

*v. Locascio*, 6 F.3d 924, 949 (2d Cir. 1993); *United States v. Spencer*, 4 F.3d 115, 118 (2d Cir. 1993).  The "ultimate test [in deciding a Rule 33 motion] is whether letting a guilty verdict stand would be a manifest injustice . . . . There must be a real concern that an innocent person may have been convicted." *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005) (internal quotation marks omitted); *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992).  In short, a new trial should not be granted where "[i]t . . . cannot be said . . . that the evidence preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Sanchez*, 969 F.2d at 1415 (internal quotation marks omitted) (reversing grant of new trial based on trial court's determination that government witnesses gave perjured testimony).

Typically, "evidentiary rulings that form the basis of [a] Rule 33 motion"—as the defendant raises here—"do not evince the kind of 'exceptional circumstances' suggesting 'a real concern that an innocent person may have been convicted,'" and therefore rarely, if ever, give rise to such relief.  *See United States v. Morin*, 538 F. App'x 1, 2-3 (2d Cir. 2013) (quoting *McCourty*, 562 F.3d at 475); *see also, e.g.*, *United States v. Smith*, No. 08 Cr. 390 (BSJ), 2009 WL 4249120, at *8 (S.D.N.Y. Nov. 25, 2009) (rejecting defendant's attempt to "use Rule 33 as a vehicle to relitigate evidentiary rulings with which he disagrees"); *United States v. Castro*, 669 F. Supp. 2d 288, 293-94 (E.D.N.Y. 2009) (same); *United States v. Barret*, No. 10 Cr. 809 (KAM), 2012 WL 3229291, at *28-29 (E.D.N.Y. Aug. 6, 2012) (denying a Rule 33 motion where defendants "merely appear[] to 'use Rule 33 as a vehicle to relitigate evidentiary rulings with which [they] disagree[].'" (quoting *Smith*, 2009 WL 4249120, at *8)).  That is because the pertinent question on a Rule 33 motion is not whether there was error in an evidentiary ruling, but whether there is "manifest injustice" and a real concern that an innocent person may have been convicted.  *See, e.g.*, *United States v. Mejia*, 948 F. Supp. 2d 311, 319 (S.D.N.Y. 2013) ("Even if the Court erred in excluding

3

the hearsay testimony, Defendant still has not . . . demonstrated that it would be a 'manifest injustice' to let the verdict stand under Rule 33." (quoting *Sanchez*, 969 F.2d at 1414)).

### B.  The Court Properly Denied the Defendant's Suppression Motion

On June 2, 2020, this Court, in a written, published opinion, denied the defendant's motion to suppress (1) all evidence based on or derived from an MCU-issued iPhone X that Kam Wong provided to her, and that she voluntarily returned to MCU; (2) all evidence obtained by search warrants executed on two of the defendant's personal email accounts; and (3) statements made by the defendant in voluntary interviews on April 6, 2018, June 8, 2018, and July 9, 2018. *United States v. Ash*, 464 F. Supp. 3d 621 (S.D.N.Y. 2020).  The defendant asserts that this decision was in error.  (Def. Mem. 9.)  But she offers no cogent basis, let alone a new and persuasive basis, for why this Court should reconsider its prior, detailed ruling.  Instead, in a footnote, she simply "incorporates herein as if fully set forth herein all arguments previously advanced in support of [her] Suppression Motion."  (*Id.* at n.1.)  By asserting error in a footnote, without discussion, the defendant not only fails to demonstrate error, but also has waived her claim for a new trial premised on such alleged error.  *See, e.g.*, *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived . . . ."); *see also Boone v. United States*, No. 02 Cr. 1185 (JMF), 2017 WL 398386, at *2 n.1 (S.D.N.Y. Jan. 30, 2017) ("[T]he old adage that 'if at first you don't succeed, try again' does not apply to litigation in federal court.").

In any event, the defendant fails to demonstrate that, even if there were error in the Court's decision (which there was not), a new trial is warranted.  The defendant's claim to the contrary is premised on her assertion that "the government heavily relied on all of the evidence that the Court . . . declined to suppress."  (Def. Mem. 9.)  However, while the Government relied on certain such evidence, the jury's verdict was amply supported by other, overwhelming evidence of the

defendant's guilt, of which she did not seek suppression, including her false statements during her first voluntary interview on March 1, 2018; her text messages obtained from her Apple iCloud account; her text messages obtained from the phone seized incident to her arrest; her text messages obtained from phones used by Wong and Joseph Guagliardo; testimony from current and former MCU employees; and records obtained from MCU, among other things.[1]

### C. The Court Properly Admitted Evidence of the Defendant's Receipt of Benefits from MCU and Wong

The defendant next argues that a new trial is warranted because the Court admitted "evidence relating to [the defendant's] receipt of benefits from the MCU and Wong," including "attendance of baseball games at MCU Park [], her travel to credit-union related conferences [], and receipt of Apple products as gifts from Wong []."  (Def. Mem. 9-10.)  Rehashing arguments that she previously made, which this Court previously considered and rejected, she argues that this evidence "was inflammatory and irrelevant," because there was "ample evidence . . . that [the defendant] had a friendship with Wong," and that the evidence "compromised the fairness of the

---

[1]    Although the defendant sought to suppress evidence from search warrants of two of her email accounts as "fruits of the poisonous tree" (Dkt No. 34-1, at 14-16), the defendant did not seek to suppress materials obtained from other search warrants, including of her iCloud account, of other individuals' phones, of her residence, and of her phone that was seized incident to arrest. Any suppression claim now is untimely and in any event without merit.

As she has previously, the defendant also asserts, without citation or elaboration, that the investigation she is alleged to have obstructed, in connection with which the pertinent search warrants were obtained, was conducted by both the Government and "the Manhattan District Attorney's Office." (Def. Mot. 4.) That is incorrect (and in any event irrelevant to the defendant's motion). As the Government previously informed the defendant, including in writing, and as is apparent from both the record and discovery, the New York County District Attorney's Office previously had a separate investigation pertaining to MCU, which did not target the defendant. In or about June 2018, Assistant District Attorney Alona Katz was appointed a Special Assistant U.S. Attorney, and the New York County District Attorney's Office's separate investigation related to MCU ceased.

trial by creating an inference for the jury that [the defendant] was on trial for conduct with which she was not charged." (*Id.* at 10.)  The defendant is wrong.

Evidence of the defendant's receipt of benefits was admissible for a variety of reasons, including that it was direct evidence of her concealment of evidence and obstruction of justice, of the nature and corrupt relationship she had with Wong, and of her motive to commit the charged offenses.  (*See* Gov't Mots. *in Limine* (Dkt. No. 96), at 12-14.)  In short, contrary to the defendant's conclusory assertion, the evidence of her receipt of benefits from Wong and MCU was offered to and did demonstrate not that the defendant had a mere "friendship with Wong" (Def. Mem. 10), but that the defendant had a transactional (and, in many ways, corrupt) relationship with Wong, and a motive to conceal what she had done.  As the Court recognized in granting the Government's motion *in limine* to admit this evidence, Wong's provision of benefits to the defendant demonstrated that she "had economic and other self-interests in seeing to it that what was going on at the credit union did not become known to authorities." (11/18/21 Tr. 18.)  In addition, as the Court explained, "the fact that she didn't produce the documents to the grand jury [] that evidence, the receipt of the benefits, is at least circumstantially probative of a belief on her part that there was something wrong with getting them." (*Id.* at 20.)  The evidence at trial amply supported these rulings.  (*See, e.g.*, GX 360-U (Guagliardo texting the defendant about investigation of MCU conference expenditures).)

Moreover, the defendant fails to demonstrate unfair prejudice from the admission of evidence of these benefits, let alone such unfair prejudice as to warrant the extraordinary remedy of a new trial.  Tellingly, on the one hand the defendant states that the evidence was

"inflammatory" (Def. Mem. 10), and on the other hand she states that the evidence showed that the benefits were both fully appropriate and "consistent with MCU policy." (*Id.* at 10 n.2.)[2]

In any event, the defendant's assertion that this evidence created an "inference" that she "was on trial for conduct with which she was not charged" (*id.* at 10), is belied by common sense, by the Government's own arguments, and by the Court's instructions to the jury. The Government emphasized the limited and proper purposes for the evidence in its summation:

> [W]hen federal agents started investigating Kam Wong and misconduct at MCU, Sylvia Ash had something to hide. And not just something, something that mattered. As I expect Judge Kaplan will instruct you, the defendant is not charged in this case with any crime or misconduct related to her duties as a judge or her time as an MCU board member. That's not what this trial is about. But as I expect Judge Kaplan will instruct you, you may consider this evidence if you find the evidence informs what she did when in the conduct that she is charged with.
>
> Now, I want to be clear about a second thing. None of what I've said about what she did in receiving and hiding benefits or wanting to stay on MCU's board makes her a bad person. But to understand what happened here, you have to understand why she did what she

---

[2]     In a footnote, the defendant also asserts that the Government "effectively abandoned" "at trial" its stated intention to prove that "many of the benefits that [the defendant] had been given 'violated MCU policy and/or were fraudulently obtained.'" (Def. Mem. 10 n.2 (quoting Dkt. No. 96, at 9).) That assertion is both wrong and irrelevant.

The evidence demonstrated that many of the benefits the defendant received were inconsistent with MCU policy, including reimbursements for personal expenses, some of which were also double-billed. (*See, e.g.*, GX 754 (defendant wrote, regarding MCU paid-trip to the Mediterranean, that it was part of her "birthday celebration"); GX 761 (defendant's invitation to MCU paid-suite at MCU Park for her "birthday celebration"); Trial Tr. 693-94 (defendant's MCU reimbursements included cable, premium channels, phone, and internet).) The evidence also showed that the defendant received benefits *after* she was no longer a board member, including ones that she either lied to investigators about or covered up, such as her expenses for her October 2016 trip to Las Vegas. (*See, e.g.*, Tr. 197 (defendant's false statement to investigators that "MCU paid for the trip prior to her resigning from the board."); GX 463-N (MCU reimbursements of $2,736.40 and $1,113.54 for defendant's post-resignation trip to Las Vegas).)

In any event, evidence of these benefits was relevant and admissible regardless of whether the benefits were entirely appropriate and consistent with MCU policy—although they were not.

did.  You have to understand that Sylvia Ash wanted to hide what
she had done, and she chose to do that.  She chose to obstruct an
investigation.  And as my colleague said in her opening statement,
and I said a few minutes ago, that is why we're here.

(Trial Tr. 881.)

The Court then instructed the jury (without objection from the defendant) that:

the defendant is not on trial here for her performance as a board
member of the MCU.  She is not charged with any embezzlement.
You are not being asked to decide whether or not any benefits or
items of value she may have received from MCU or from Kam
Wong were unlawful or a breach of her duties as an MCU director.

. . . [E]vidence regarding benefits or items of value she may have
received was not offered for the purpose of proving that the
defendant had a propensity to engage in misconduct or criminal
behavior.  It was received as evidence of the background of the
charged conspiracy and to complete the narrative of the crimes
charged, as well as for your consideration of the defendant's motive,
knowledge, and intent with respect to what she has been charged
with in the indictment.  You may consider it only for those limited
purposes.

(Trial Tr. 1033-34.)  *See United States v. Tussa*, 816 F.2d 58, 68 (2d Cir. 1987) (limiting instruction

sufficient to preclude unfair prejudice to defendant); *see generally Parker v. Randolph*, 442 U.S.

62, 75 n.7 (1979) ("The 'rule'—indeed, the premise upon which the system of jury trials functions

under the American judicial system—is that juries can be trusted to follow the trial court's

instructions.").  The defendant's claim of unfair prejudice, in short, is irreconcilable with the

record.

**D.  To the Extent the Court Precluded Evidence Relating to Benefits Received by Other
MCU Board Members, Such Preclusion Was Proper**

The defendant next argues that a new trial is warranted because the Court allegedly

erroneously "precluded her from introducing evidence relating to benefits received by other MCU

Board members and MCU employees."  (Def. Mem. 11.)  In making this argument, the defendant

8

does not point to any specific evidence that she wanted to introduce but was not able to introduce. Instead, she cites the pretrial conference transcript in which the Court heard argument on certain motions *in limine*. (*Id.*)  At the conference, the Court stated, "I don't see how the fact that others were getting benefits really says anything at all about Ms. Ash's state of mind and motive" (11/18/21 Tr. 18), and that "her motive doesn't depend on her being singled out for special treatment" (*id.* at 20).   However, the Court did *not* preclude the defendant from offering any evidence.  Rather, the Court only precluded the defendant from opening on this topic, and reserved any further rulings:

> I will reserve decision, at least for now, on what, if anything, the defense will be permitted to offer.  I think I may be a lot better informed later on, maybe as late as the end of the government's case.  And so in the absence of a favorable ruling from me to the defense on this point, the defense is not to open on the everybody-else-did-it theory.

(*Id.* at 26; *see also id.* at 45 ("Item No. 8, which is other board members being on what I characterized as the gravy train, I think I've already said my piece on that.  I'm reserving on that. We'll see where we get."); 11/22/22 Order on *in Limine* Motions (Dkt. No. 118) (reiterating disposition of motions from oral argument and that the Court had "reserved" on the motions pertinent here).)  Subsequently the defendant filed a letter asking that she be permitted to offer certain excerpts of the MCU policy manual, and to make arguments concerning whether her receipt of benefits was consistent with that manual (Dkt. No. 117, at 1-3), to which motion the Government did not object.[3]

---

[3]     In responding to the defendant's request to offer the MCU policy manual, the Government requested "that, absent a specific further proffer, the defendant be precluded from offering any evidence or argument, including in her opening statement, concerning the receipt of benefits by other persons."  (Dkt. No. 121 at 3.)  The Court denied this request as "moot."  (Dkt. No. 130.)

Accordingly, at trial—and contrary to the conclusory framing of the defendant's motion—the jury was not left with the impression that the defendant alone received benefits from MCU. The defendant introduced, without objection, the MCU policy manual, which laid out MCU's policies and practices (DX B-1; *see also* Trial Tr. 803-805), and it was not disputed that, under that policy, MCU processed reimbursements and paid for conferences for other board members (*see, e.g.*, Trial Tr. 40 (Government opening statement: "Now, to be clear, you will hear that those expenses didn't necessarily violate MCU policy, but this case is not about MCU policy."); *id.* at 516-17 (Seeta Seepersaud testifying that, in her role as an accounts payable supervisor, she processed reimbursements for MCU board members).)  The defendant did not seek to offer other evidence on this point.  Indeed, in proffering the anticipated testimony of two defense witnesses, defense counsel explained that they were not attempting to offer evidence of "any benefits that [the witness] or other MCU executives, board members or employees received from Wong and/or the MCU."  (Trial Tr. 757 (as to Norman Kohn); *see also id.* at 746 (as to Nana Osei-Bonsu).)

To be sure, defense counsel also appeared to suggest that the basis for their declining to offer such evidence was a belief that the Court had ruled that the defendant could not present additional evidence of benefits received by other MCU board members.  (*See id.* at 746 ("Additionally, we are not seeking to elicit from him [Bonsu] any information about benefits that he received from the MCU consistent with the Court's prior order.").)  But the defendant never actually attempted to offer evidence of the kind that she now asserts was precluded by the Court, nor did she proffer an appropriate basis for the introduction of such evidence during trial.  In light of this record, there is substantial doubt, at a minimum, whether the defendant may now raise the claim that she presses, rather than one grounded only on the Court's preclusion of her raising this

topic in her opening statement.  *See, e.g.*, *United States v. Williams*, 930 F.3d 44, 64-65 (2d Cir. 2019) (claim waived where defendant made only a "general objection" to evidence).

In any event, even assuming *arguendo* that the defendant could make a broader claim, the claim fails.  Precluding evidence of the details of benefits received by other people without connecting such evidence to the defendant's contemporaneous knowledge and/or intent would have been entirely appropriate, because without such a connection, evidence of such details would have been both irrelevant and highly confusing and distracting to the jury.  As the Court recognized, "the fact that others were getting benefits" does not "really say[] anything at all about [the defendant's] state of mind and motive."  (11/18/21 Tr. 18.)[4]  This statement was well-grounded in both the record and the law.  *See, e.g.*, *United States v. Gatto*, 986 F.3d 104, 129 (2d Cir. 2021) ("[T]hat others are engaging in improper behavior does not make it lawful."); *United States v. Oldbear*, 568 F.3d 814, 821 (10th Cir. 2009) (affirming preclusion of evidence in embezzlement case as to how persons other than the defendant used funds because "only [the defendant's] actions and state of mind were material to her guilt"); *cf. United States v. Berg*, 710 F. Supp. 438, 445 (E.D.N.Y. 1989) (testimony concerning the "custom of other arms dealers in complying with arms export laws" precluded on the ground that such evidence was irrelevant to the state of mind of the defendants), *aff'd in part, rev'd in part on other grounds sub nom. United States v. Schwartz*, 924 F.2d 410 (2d Cir. 1991).

---

[4]   That was particularly the case here, where the defendant is a lawyer and a judge and, as the Court recognized, "lawyers pretty well understand that the payment by an employer of personal expenses is wrong unless it is a fully informed decision to do so, authorized by somebody who is unconflicted and has the power to authorize it."  (11/18/21 Tr. 22.)  So, "she is in that respect not similarly situated to everybody else, or at least to several of the others."  (*Id.*)

Finally, again, the defendant fails to demonstrate unfair prejudice as a result of the (purported) evidentiary ruling that she challenges, much less such sufficient unfair prejudice to warrant a new trial.  As an initial matter, contrary to the implicit premise of the defendant's claim, the benefits she received were not comparable to those that others received, including because she received substantial benefits *after* she had to resign from MCU (and also none of the other board members was a judge and thus should not have been serving on MCU's board in the first place). In any event, the defendant's assertion that the jury was left "with the erroneous impression that [the defendant] had uniquely obtained ill-defined and ill-gotten gains as an MCU Board member" (Def. Mem. 11) is both unsupported and unsupportable.  The Government never argued that the defendant "uniquely" and unlike any others received "ill-gotten" benefits, and the defendant, as noted above, offered into evidence the MCU policy manual, cross-examined MCU witnesses, and argued that this evidence showed that all of her benefits were received properly:

> The tickets, the gifts of the phones, that was not wrong, that was how the board operated, that is how Wong ran the MCU.  Nothing that Ms. Ash needed to hide, nothing that Ms. Ash thought was wrong, no reason to try to lie to the government to cover up things that were not wrong, things that were done pursuant to board policy. All those reimbursement[s] of her expenses, the strategic planning conference that the board took every year at Las Vegas, the other conference that Ms. Ash — you saw on the MCU policy — was allowed to attend of a credit union conference.  The cable bills, the cell phone bills, the transport back and forth, $50 for every meeting — all of that was MCU policy, that was all permissible.  There's no way that any of those reimbursements could have been what motivated Ms. Ash, because they were all done pursuant to board policy.  Her expenses were all submitted with the receipts; you were shown those by the government.  You heard Ms. Seepersaud tell you, Ms. Lambert in accounting approved all of those, reviewed them all, and then they went to Ms. Seepersaud to check.  There's nothing wrong with any of that reimbursement. That was how MCU ran.  You may not think it was good.  It may not be good.  But to Ms. Ash, that was how the board ran, and there was nothing wrong with it.  So none of that, ladies and gentlemen, gives her a motive to

> lie to the federal government when they come to ask her about a
> memo she signed for Wong.

(Trial Tr. 925; *see also id.* at 928-31.)  Indeed, the defendant makes this same argument about the

evidence at trial in her brief.  (*See* Def. Mem. 10 n.2 ("multiple witnesses, (Tr. at 113:18-23; 114:5-

8; 116:22-25), and the MCU policy manual itself, (GX 400), made plain that [the defendant's]

receipt of benefits was consistent with MCU policy").)  In short, even assuming *arguendo* that the

Court erred in precluding unidentified evidence of the details of benefits received by other people

(and the Court neither so ruled nor would such a ruling have been in error), the defendant still

would not be entitled to a new trial.  *Cf., e.g.*, *Mejia*, 948 F. Supp. 2d at 319 ("Even if the Court

erred in excluding the hearsay testimony, Defendant still has not . . . demonstrated that it would be

a manifest injustice to let the verdict stand[.]" (internal quotation marks omitted)).

### E.   The Court Properly Admitted Evidence Relating to the Defendant's False Judicial Disclosure Forms and Resignation From MCU's Board as a Result of Her Violation of Judicial Ethics Rules

The defendant next argues that a new trial is warranted because the Court should not have

admitted evidence of her "failure to disclose benefits she had received from the MCU on her annual

financial disclosure statements filed with the New York State Unified Court System," and

"evidence relating to [the defendant's] resignation from the MCU Board, including testimony of

Robert Tembeckjian from the Commission and Laura Smith from the Committee."  (Def. Mem.

12.)  The defendant asserts that this evidence was "unfairly prejudicial" because it left the jury

with the "misimpression that [the defendant] had engaged in unethical judicial misconduct because

she failed to strictly adhere to the regulatory framework," and "served to conflate issues of her

judicial conduct with the unrelated conduct with which she was charged in the Superseding

Indictment." (*Id.* at 14-15.)  As explained in the Government's Motions *in Limine*, and previously orally argued before the Court, the defendant's claim fails for multiple reasons.

*First*, the evidence of the defendant's concealment on her judicial disclosure forms of gifts, benefits, and items of value she received from Wong and MCU was relevant to show that the defendant—at the time she received them—wanted to hide those benefits, strongly suggesting that she understood that they were, at a minimum, inappropriate, which both shed light on the relationship she had with Wong and provided relevant background to her efforts to conceal these gifts from the federal investigation.  (Gov't Mots. *in Limine* 15-16.)  In addition, the evidence was admissible under Rule 404(b), because it demonstrated that, even if the defendant did not think that the benefits were in any way improper, as she appears to assert in her brief (Def. Mem. 13), she still had a motive to hide them from the federal grand jury investigation, since she had failed repeatedly to disclose them in the past.  (*See* Gov't Mots. *in Limine* 16.)

*Second*, the evidence relating to the defendant's repeatedly having been advised to resign from MCU's board by Ms. Smith and later by Mr. Tembeckjian and the circumstances of her eventual resignation was relevant to demonstrate that her statements to federal investigators about the circumstances of her resignation were misleading (*see* Trial Tr. 195-96), and that the defendant intentionally, and with criminal intent, omitted material information in an attempt to demonstrate that she had acted appropriately in holding and then resigning from her position on MCU's board. (*See* Gov't Mots. *in Limine* 19; *see also* Gov't Opp'n to Def. Mots. (Dkt. No. 103) 8-9.)  In addition, the evidence of the circumstances of the defendant's resignation from MCU's board was relevant because it demonstrated the defendant's contemporaneous belief in the wrongfulness of the benefits she received from Wong and MCU and how close she was to Wong and vice-versa— so close that (1) even after she was initially advised to resign from MCU's board, she did not, and

(2) even after she was forced to resign for serving on the board, she continued to seek and request benefits, gifts, and items of value from Wong, and that Wong continued to authorize them.  (*See id.*)  Further, the evidence was relevant because it demonstrated that the defendant had a motive to obstruct the federal investigation.  (*See* Gov't Mots. *in Limine* 20.)  The fact that the defendant went to such great lengths to maintain her position on MCU's board, and her ability to receive gifts, benefits, and items of value from MCU, helped to demonstrate why she would agree to assist Wong to cover-up his criminal conduct and seek to frustrate the investigation of misconduct at MCU, so that the investigation would not uncover both Wong's misconduct and her own.  (*See id.*)  Similarly, the evidence helped to demonstrate her motive and intent in concealing from the grand jury evidence of her gifts, benefits, and items of value she had received, and that the concealment was not a mistake or accident.  (*See id.*)

In her brief, the defendant again asserts that much of the evidence of her false filings of judicial disclosure forms and the circumstances of her resignation are irrelevant because that conduct predated the charged conspiracy. (Def. Mem. 12-13.)  The defendant's assertion is legally flawed because it assumes that the only evidence that is relevant and thus admissible, even when a conspiracy is charged, is that which concerns conduct undertaken during the period of the conspiracy.  The law, for good reason, has long been to the contrary.  *See generally United States v. Costello*, 352 F.2d 848, 854 (2d Cir. 1965) ("Evidence of an act (or a statement offered other than for its truth) has no special evidentiary hurdle to overcome and, whether the act is by a coconspirator or third person and whether it occurs during the period of a conspiracy or not, the evidence is admissible so long as the act is probative of a crime charged against a defendant and the evidence is not excludable on some special ground."), *rev'd on other grounds sub nom.*, *Marchetti v. United States*, 390 U.S. 39 (1968); *see also United States v. Williams*, 205 F.3d 23,

33-34 (2d Cir. 2000) (affirming admission of prior act evidence involving co-conspirators "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed" (internal quotation marks omitted)); *United States v. Pascarella*, 84 F.3d 61, 73 (2d Cir. 1996) (other act evidence admissible "to show the background of a conspiracy or the development of a relationship of trust between the participants"); *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case.").

The defendant also argues with respect to her false judicial filings "for 2017 and 2018, after she had left the MCU Board, the evidentiary value is . . . sparse," because "[t]here was little motive to hide benefits she received as an MCU Board member when, as a former Board member, she would not be receiving them in the future." (Def. Mem. 13.)  However, as discussed above, even though she was no longer an MCU Board member at the time she filled out the judicial disclosure forms for 2017 and 2018, she still received benefits from MCU and Wong in those years, and she still failed to disclose those benefits.  (*See, e.g.*, GX 901 (on August 5, 2017, the defendant used MCU Park costing $1,740.82); GX 235 (on January 25, 2018, the defendant's calendar entry reflected "Received iPhoneX as belated Birthday/Christmas gift from Kam"); GX 251-V (in January 2018, Wong texted with the defendant, offering her an iPhone X and AirPods); GX 769 (on January 20, 2018, Wong's assistant gave the defendant Nets tickets).)  The defendant's failure to report these benefits (just like the benefits she received while an MCU board member) similarly sheds light on her relationship with Wong, and on her motive to hide her benefits from the grand jury and federal investigators.

16

Lastly, the defendant's assertion that the evidence was "unfairly prejudicial" (Def. Mem. 14-15)—which even if accurate, without more, would not be enough to grant her motion—again is belied by the record. The defendant asserts that the evidence she challenges "collectively served to conflate issues of her judicial conduct with the unrelated conduct with which she was charged in the Superseding Indictment." (*Id.* at 15.) However, the Court's limiting instructions and jury charge repeatedly focused the jury on the appropriate purposes for which the jury was to consider this evidence. The Court instructed:

> You must remember always that Ms. Ash is not charged in this case with any crime in relation to the discharge of her duties as a judge of the State of New York. And you may not convict her of anything at all in this case on the basis that you think she violated her duties as a judge, nor may you consider any evidence that you may think proves or suggests that she violated, or may have violated, her duties as a judge, as evidence that she's a person who has a propensity to engage in misconduct or criminal behavior.

> But that is not to say that the fact that Ms. Ash was a state court judge during the period that concerns you in this case is entirely irrelevant. You're entitled to consider any evidence concerning Ms. Ash's knowledge, obligations, actions, and inactions as a judge insofar as you find that the evidence sheds light on her motive, her knowledge, and her intent in doing what she's been charged with in the indictment, to whatever extent she did what's charged in the indictment, and you may consider this evidence for no other purpose.

(Trial Tr. 558; *see also id.* at 612, 1032-33.) Likewise, as discussed above, the Government in its summation emphasized the limited and appropriate purpose of the evidence (*see, e.g.*, Trial Tr. 881), further undermining that the defendant suffered any unfair prejudice, much less that a new trial is warranted. Indeed, that the jury "returned a mixed verdict," not convicting on a count, "demonstrates the jury was not confused" by the proper purpose of this evidence. *United States v. Ezeobi*, 517 F. App'x 35, 36 (2d Cir. 2013) (internal quotation marks omitted)).

**F.  The Court Properly Precluded Evidence Relating to the Case Agent's Holding of an Account at MCU**

The defendant next argues that a new trial is warranted because the Court precluded evidence and cross-examination of the case agent having a personal account and a personal loan with MCU, both of which predated the investigation.  (Def. Mem. 15-16.)  The defendant failed before trial, and fails again now, to demonstrate a relevant and appropriate basis for what she sought.  In her brief, the defendant suggests that the agent having a small personal account at MCU would somehow be relevant to bias, but she continues to offer no basis at all to support that position (much less for the Court to find that this issue was so important that there is a risk that an innocent person was convicted).  As the Court recognized:

> Insofar as the man is a borrower from the credit union, I haven't heard anything that suggests that that benefits him in any way that could be relevant.  He was a borrower before the investigation, he is a borrower now, and where I come from, borrowers owe the bank.  The bank doesn't owe the borrowers.  The bank doesn't pay the borrower interest on the loan.  The borrower pays the bank.  So that piece of it at a practical level I'm not impressed with yet.
>
> Now, the fact that he is a member, which is analogous to be being a depositor in a savings and loan, well, that's different.  Because if you are a depositor in a savings and loan, at least when I was a boy, you got interest.  Now what you get is a penny a year.  But you understand the point.  So I get that.
>
> But, I understand, also, and I don't hear a challenge to the proposition, that depositors in, also known as members of, federally insured credit unions have no financial risk whatsoever in the event even of a collapse and bankruptcy is not the right word, but everyone will understand what I mean of the credit union, up to $250,000.  And we're told that the balance in this account was $7,000 now, and likely was lower during the period of the investigation.
>
> So, I don't get the practicality of the argument.  I get the rhetoric, I get the conclusions you want, but I just don't understand the practicality of it.

(Trial Tr. 11-12.)

The defendant also asserts that she should have been permitted to cross-examine the agent about his compliance with the Department of Justice conflict of interest policy and his candor with the prosecution team in advance of judicial applications made in connection with the investigation. (Def. Mem. 16.)   But as the Government already proffered to the defendant and the Court, including in writing, the agent did not violate any applicable conflict of interest policy, the agent was transparent and open with the prosecution team, and there is no basis whatsoever to find otherwise. (*See* Dkt. No. 134.)  As the Court stated, "I have seen nothing up to now that remotely suggests . . . the agent did anything wrong at least in his or her own mind." (Trial. Tr. 15.)

In any event, neither at trial nor now does the defendant even attempt to suggest that the case agent was not being truthful about statements the defendant made to him—which were made in the presence of others as well, was the central focus of his testimony, and were generally corroborated by contemporaneous notes and/or memoranda produced in discovery.

## G. The Court Properly Ruled That the Government Did Not Commit a Disclosure Violation

Finally, the defendant argues that a new trial is warranted because the Government did not disclose a list of questions—without answers—that it planned to ask Boris Vestrid, a forensic analyst, which questions were emailed to him, prior to testifying at trial.  (Def. Mem. 16.) However, as the Court ruled, and explained more than once, the list of questions did not fall under 18 U.S.C. § 3500 (the Jencks Act), nor was it discoverable on any other basis, and was similar in kind to routine witness preparation where the questions are reviewed orally, often more than once, with a witness before trial. (Trial Tr. 773 ("[T]here was no Jencks violation for the simple reason that a list of questions is not a statement of the witness.")); s*ee Palermo v. United States*, 360 U.S. 343, 352 (1959) (Jencks Act reaches "only those statements which could properly be called the

witness' own words"); *United States v. Artis*, 523 F. App'x 98, 101 (2d Cir. 2013) (document neither "signed or otherwise adopted or approved by" a witness nor that contains "a substantially verbatim recital of" the witness's words does not fall within the Jencks Act).   The defendant repeatedly referring in her brief to the list as a "script" (Def. Mem. 7) or "scripted" testimony (*id.* at 17, 18) does not turn it into something that it was not, as the Court recognized with respect to the same verbiage at trial.   (Trial Tr. 784 (Court: noting "use by defense counsel of the word 'script,' which, for reasons I expressed yesterday, I think was inaccurate and, in some respects, probably unintentionally, misleading.").)

The defendant now suggests, without any basis whatsoever, that the list of questions may have been prepared to avoid making more extensive reports of what the witness said.   (*See* Def. Mem. 17-18.)   That is false.   It is also nonsensical; the list was questions, not answers.   (Trial Tr. 785 (Court: "there's nothing of substance in the list of questions, absolutely nothing.").)   Nor is there any requirement under the Jencks Act to memorialize witness preparation.[5]

In any event, as the Court previously found, "[i]n no way is there any persuasive claim of any prejudice whatsoever" from the defendant not having the list of questions before Mr. Vestrid testified.   (*Id.* at 774.)   It was "obvious" to defense counsel—the lead of which were two experienced former federal prosecutors—that the Government would go over the questions it planned to ask the witness, and, after reviewing the list, the Court recognized "[t]here is absolutely nothing in this stuff that could have been used to any advantage whatsoever in cross-examination."

---

[5]     In making her argument, the defendant also omits that the Government provided expert disclosure for this witness (although it was not required to do so) describing the scope of his anticipated testimony, as well as his resume, prior trial testimony, and various emails and forensic reports he prepared in this matter.

(*Id.* at 785.)[6]  Accordingly, the defendant's request for a mistrial was "frivolous."  (*Id.*)  So too is the defendant's claim now.  Indeed, having had the list of questions for almost two months, the defendant *still* fails to explain how she could have usefully cross-examined the witness had she been provided it earlier, much less why such a cross-examination was so important that the only proper remedy for the alleged violation is a new trial.  The defendant's failure in this respect is not surprising for multiple reasons, including that the defendant did not attempt to attack Mr. Vestrid's credibility, presumably because his testimony basically entailed reading text messages that were located (or not located) on certain forensic extractions, provided to the defendant long before trial, from various electronic devices, and thus was irrefutable.

## CONCLUSION

For the foregoing reasons, the defendant's motion should be denied.

DATED:        February 11, 2022
              New York, New York

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney

                                    By: s/ Eli J. Mark
                                        Eli J. Mark
                                        Daniel C. Richenthal
                                        Jonathan E. Rebold
                                        Assistant United States Attorneys
                                        (212) 637-2431/2109/2512
                                        Alona S. Katz
                                        Special Assistant United States Attorney

---

[6]      As the Court noted with respect to the other witness who received a similar list of questions, Special Agent Jeremy Rosenman, the defendant had the list before he testified and "could have crossed him on it, and didn't in any meaningful respect."  (Trial Tr. 785.)