

22 Cortlandt Street
Executive Office, 27th Fl.
New York, NY 10007
Tel.: (212) 238-3442
Email: kmarkland@nymcu.org

**Kyle Markland**
Chief Executive Officer

___

April 13, 2022

Hon. Lewis A. Kaplan, U.S.D.J.
U.S. District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY  10007

                Re:    *United States v. Sylvia Ash,*
                        <u>Crim. No. 19-cr-0780 (LAK)</u>

Dear Judge Kaplan:

      The Municipal Credit Union ("MCU" or the "Credit Union") submits this letter for the Court's consideration during the upcoming sentencing of Sylvia Ash, the former Chair of MCU's Board of Directors ("Ms. Ash" or the "defendant"). <u>Ms. Ash's sentencing is currently scheduled for Wednesday, April 20, 2022 at 3pm.</u>

      Mindful that this Court is obligated under 18 U.S.C. § 3553(a) to craft a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of the law, and in doing so, should consider "the nature and circumstances of the offense and the history and characteristics of the defendant," the Credit Union would like to provide the court with additional details on the defendant's tenure at MCU and the extent to which Ms. Ash's obstruction has contributed to the substantial financial and intangible costs incurred by MCU, its membership and its employees.

      First, some background on MCU.  MCU is New York State's oldest credit union. MCU is chartered by New York State and federally insured by the National Credit Union Administration ("NCUA").  MCU has approximately sixteen (16) branches located in New York City, Yonkers, and on Long Island with approximately 590,000 members (*i.e.*, depositors) and manages more than $4.2 billion in assets. MCU has been serving the financial needs of its members since 1916. The Credit Union was created with the mission of providing city employees with a way to save money at reasonable rates, and offers low-cost borrowing alternatives to its members. MCU's employees are dedicated to providing competitive products, reasonable rates, and services that truly invest and give back to the communities served by MCU.

      A credit union is owned co-operatively by its members, and MCU's core membership is made up of the hardworking municipal employees that help run this great city, including the NYPD, FDNY, Corrections Department, Department of Education, Health Department, MTA Transit, NYCHA and Sanitation Department, among others. The ordinary MCU

member deposits their full paycheck into their account and uses their money for basic needs: to buy food for their families; to purchase a new NYPD or FDNY uniform; or to pay off a loan for a necessary vehicle to travel to work. MCU is proud to serve this unique segment of the banking sector that needs credit and assistance.

On January 25, 2018, MCU was shaken when it was notified by the United States Attorney for the Southern District of New York ("USAO-SDNY") of potential misconduct and fraudulent activity committed by Kam Wong ("Mr. Wong") the then-President/Chief Executive Officer of the Credit Union. The New York State Department of Financial Services ("DFS") subsequently removed both of MCU's Supervisory Committee and the Board of Directors (the "Board") in May and June 2018, respectively, in response to concerns of severe deficiencies and weaknesses in the oversight of these governing bodies tasked with ensuring the financial health of the Credit Union. With their removal, the Credit Union was launched into first a governance by an Administrator and then several years of conservatorship, under MCU's federal regulator, the National Credit Union Administration ("NCUA"), appointed by MCU's state regulator, DFS.

It is with great pride that I share that MCU was just recently released from conservatorship in March 2022 after years of extensive time, money, and resources devoted to fixing the deficiencies caused in large part by the lack of oversight of the volunteer members who formerly served on MCU's governing bodies, including the Board of Directors, which Ms. Ash once chaired, and the Supervisory Committee.

Ms. Ash served on MCU's Board starting in May 2008 and became Chair of the Board of Directors in May 2015.  As the Court heard in detail during the trial in this matter, Ms. Ash was effectively forced to resign on August 15, 2016, due to conflict-of-interest concerns raised because of her then-position as a sitting New York State Supreme Court Justice in Kings County. Ms. Ash fought against these clear conflict-of-interest concerns and initially refused to resign from MCU's Board when they were raised.

During her tenure on MCU's Board, and long after her resignation, Ms. Ash was the recipient of tens of thousands of dollars in reimbursements and other benefits funded by the Credit Union because of her close relationship with the now incarcerated Mr. Wong, who funded her lifestyle and purchased her loyalty; an arrangement that led to why we are here today.  Incredibly, Ms. Ash now seeks to gain a benefit from this Court with her affiliation to numerous community organizations, many of which she caused MCU to "donate" thousands of dollars to in "charitable donations" with intention to promote herself – not MCU.[1]

I joined the Credit Union as Chief Executive Officer in 2020 while the Credit Union was still in conservatorship. I learned of Mr. Wong's legacy of exploitation – the weaknesses in MCU's controls that were carefully implemented so that he could commit his crimes, and his appointment of persons in positions of leadership who failed to value compliance, ethics, and morals, but were more concerned with their own personal gain and the benefits they received from their positions. I learned how Mr. Wong rewarded those who kept their heads down and did not raise concerns about his conduct or other irregularities, and how he curated relationships with those who would be complicit in his malfeasance so that he could further his schemes. Ms. Ash is one of these individuals – she conspired with Mr. Wong, not only to obstruct the federal investigation, but also to

---

[1] *See* Defendant Ash's April 8, 2022 Sentencing Memo at 17-23. (Doc. 173).

obstruct the internal investigation that an outside law firm was conducting of the systemic looting of MCU by those who were entrusted to protect it. Ms. Ash financially benefitted from the culture created by Mr. Wong and that she received financial benefits from his looting of the Credit Union.

It is clear that Ms. Ash was loyal to Mr. Wong because of their quid-pro-quo relationship: he funded her lifestyle, even long after she resigned from her position with MCU, and she ultimately covered up his malfeasance. It is not surprising, although it is almost unbelievable, that when questioned by federal law enforcement agents about Mr. Wong's activity in 2018, Ms. Ash provided false statements and undertook unlawful activities to protect her benefactor. And shockingly, even now, Ms. Ash self-servingly claims that she did not "meaningfully hinder" the prosecution of Mr. Wong and Mr. Guagliardo.[2]

Ms. Ash's obstruction not only harmed herself, but also harmed the Credit Union and the membership she promised to serve. When Ms. Ash lied to federal agents and concealed evidence from the federal investigation, she prolonged the government's already complex and intricate investigation into Mr. Wong's activity. Ms. Ash's misrepresentations required MCU to undertake a new branch of an already complex internal investigation – this time specifically into Ms. Ash's activities while a Board member, Chair of the Board, and her conduct following her Board service. Her obstruction forced MCU to expend substantial funds in attorneys and forensic vendor costs in responding to numerous Grand Jury subpoenas throughout the government investigation. Indeed, the Credit Union received at least six Grand Jury subpoenas that requested documents and information specifically related to Ms. Ash, which required the use of specialized forensic vendors to cull documents, attorneys to review documents for responsiveness, privilege determinations and production, as well as forensic accountants to quantify the full range of loss attributed to Ms. Ash's greed. Additionally, MCU expended significant time and funds responding to document requests from both the government and defense counsel before and during Ms. Ash's trial, and in preparing MCU employees to testify at Ms. Ash's trial, the latter of which resulted in the employees' time away from their jobs, and stress, and anxiety they experienced through preparation and testimony in federal court.

To repair the defendant's wrongs, outside lawyers, vendors and consultants have been engaged to correct the questionable policies, procedures and practices implemented at MCU during Ms. Ash's tenure on the Board and Chairmanship of the Board, costing the Credit Union significant additional financial expenditures. MCU was directly harmed by Ms. Ash's conspiracy and obstruction.

Not only did Ms. Ash wipe her Apple iPhone X in an effort to destroy and conceal evidence that had been sought from her by federal Grand Jury subpoenas, but she also simultaneously wiped her Apple iPhone X to destroy and conceal evidence that had been sought from her by MCU's outside counsel as part of the internal investigation and by MCU's then-CEO, Norman Kohn. Indeed, multiple attempts were made by MCU – at MCU's unfortunate financial detriment – to obtain Ms. Ash's electronic devices, including the MCU-owned Apple iPhone X that she wiped, and related documents and information as required for Grand Jury subpoena compliance. As an example, attached to this statement is a letter that was sent to Ms. Ash on July 13, 2018 from Mr. Kohn, requesting for a third time all of the electronic devices issued to Ms. Ash by MCU or any of its current or former employees

---

[2] *See* Defendant Ash's April 8, 2022 Sentencing Memorandum at 23. (Doc. 173).

or representatives, including from Mr. Wong.[3] In that letter, as Ms. Ash was explicitly instructed not to wipe, delete, reset, factory restore, image, or copy any of MCU's devices, an instruction that was also contained in the prior two letters. As we all know, Ms. Ash did not follow that instruction in either this letter or the two prior letters from MCU. And, when the iPhone X was finally obtained from Ms. Ash, MCU expended additional e-discovery costs to discover that the iPhone X had in fact been wiped.

Furthermore, Ms. Ash not only obstructed the federal investigation, but Ms. Ash also contributed to Mr. Wong's fraudulent activity for which he is now serving a substantial prison sentence. On January 22, 2018, just one day before MCU received its first subpoena regarding Mr. Wong's malfeasance, Mr. Wong presented a false and misleading memorandum signed and authorized by Ms. Ash to a Board committee, which outlined a bogus arrangement allegedly entered into several years prior between Ms. Ash and Mr. Wong.[4] That false memorandum set forth an untrue statement that MCU would agree to provide Mr. Wong millions of dollars of cash in lieu of insurance payments for which Mr. Wong was not eligible to receive. Notably, during this time, Ms. Ash was in regular communication with Mr. Wong about picking up her brand-new Apple iPhone X gifted to her from Mr. Wong and paid for by the members of MCU. Days later, on January 25, 2018, Mr. Wong brazenly presented Ms. Ash's false memorandum to the entire Board of Directors in his attempt to ratify his criminal conduct.[5] Again, Ms. Ash caused MCU to expend additional funds, resources, and time to prove to federal and state regulators that the memorandum memorializing the arrangement was false, and in conducting its internal investigation into the facts at issue.

The investigative costs incurred by the Credit Union – both financial and intangible – would have been avoided had Ms. Ash cooperated with both the federal and internal investigations in the first place. Ms. Ash's lack of concern for MCU, and her decision to obstruct both the federal and internal investigations, resulted in additional expenses not only to the federal prosecutors at USAO-SDNY, but also to MCU itself. In MCU's case, the convicted offense (obstruction of justice) occurred before MCU invested time and money into the investigation of Ms. Ash.  The conduct underlying the conviction (lying to the government and hiding documentation) required MCU to invest time, efforts and substantial funds into investigating Ms. Ash and complying with subpoenas. As such, in MCU's case, the conduct (lying and concealing) within the charged offense (obstruction of justice) was the proximate and actual cause of the harm to MCU.

Additionally, at this juncture, it is important to mention that Ms. Ash was the recipient of lavish and improper perks funded by MCU's members while serving as a Board member, as Board Chair, and after her service on the Board concluded, including:

- tickets to numerous sporting events;
- various entertainment expenses, such as a Britney Spears concert;
- lavish meals;

---

[3] *See* Exhibit A, Letter to Sylvia Ash regarding "Return of MCU Devices and Materials: Third Request," dated July 13, 2018.
[4] *See* Exhibit B, "Memorandum from Kam Wong to Sylvia Ash regarding 'Long Term Disability Insurance for the CEO,'" dated June 8, 2015; *See* Exhibit C, "Fiscal Policy Committee Meeting Minutes," dated January 22, 2018; *See* Exhibit D, "Memorandum from Kam Wong to Sylvia Ash, signed by Sylvia Ash, regarding 'Long Term Disability Insurance for the CEO,'" dated January 22, 2018. MCU understands that the Defendant was acquitted of Count Two, but her conduct had additional collateral consequences for the Credit Union.
[5] *See* Exhibit E, "Board of Directors Meeting Insert," dated January 25, 2018.

- trips, airfare, and hotels for her and her guests, including her son, both domestically and abroad, to places such as the Greek Isles, Puerto Rico, Cuba, and Las Vegas;
- electronic devices, such as an iPhone X (received after she had resigned from the Credit Union);
- payment for personal utilities such as phone and cable bills; and
- an annual birthday party fully catered at a minor league baseball stadium (even after she had resigned from the Credit Union).

As mentioned above, Ms. Ash caused the Credit Union to "donate" thousands of dollars to many of the community organizations that she also was involved with – for events such as galas that Ms. Ash attended to promote herself, not the Credit Union. All of these expenses were funded by the Credit Union (and many approved by Ms. Ash's co-conspirator, Mr. Wong). As recipient of these reimbursements and benefits, Ms. Ash violated her fiduciary duty to the Credit Union and its hardworking members, and the Credit Union paid the cost.

A full accounting of MCU's request for Restitution is still occurring.

The defendant's crimes did not harm a faceless corporation, but instead harmed the hundreds of thousands of New York City municipal worker members who rely on the Credit Union for their financial security, and the hundreds of hardworking New Yorkers that the Credit Union employs. The defendant did not act in the best interest of the Credit Union's members – many of whom are police officers, teachers, firefighters, clerks, nurses, home health aides, taxi dispatchers, cemetery workers, social workers, or counselors – the defendant sought only to enrich and protect herself when faced with the consequences of her actions. Ms. Ash's loyalty to Mr. Wong was more valuable to her than her fiduciary obligations to the municipal worker members she promised to serve as first a member and then a Chair of MCU's Board of Directors.

To fulfill the goals set forth 18 U.S.C. § 3553(a), and achieve justice, MCU requests that the Court impose the strictest sentencing and highest restitution permitted under the law.

Please do not hesitate to contact me at any time with questions.

Very truly yours,

*Kyle Markland (Apr 13, 2022 14:26 EDT)*

Kyle Markland
Chief Executive Officer
Municipal Credit Union